UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| ALBERT GUTKNECHT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE LOVESAC COMPANY, SHAWN NELSON, and DONNA DELLOMO,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**December 19, 2023** |

Plaintiff Albert Gutknecht ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding The Lovesac Company ("Lovesac" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Lovesac securities

between March 30, 2023 and August 16, 2023, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Lovesac designs, manufactures, and sells furniture, marketing its products primarily through the lovesac.com website, as well as through showrooms at top-tier malls, lifestyle centers, mobile concierges, kiosks, street locations, and in store pop-up-shops and shop-in-shops.  The Company also fulfills last mile product delivery services through logistics and transportation carriers.

3.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lovesac did not properly account for last mile shipping and freight expenses; (ii) accordingly, Lovesac's disclosure controls and procedures and internal control over financial reporting were ineffective and deficient; (iii) as a result of all the foregoing, Lovesac overstated its gross profit and operating and net income, as well as understated its shipping and handling costs and accrued freight and shipping expenses, in its previously issued financial statements; (iv) accordingly, Lovesac was likely to restate one or more of its previously issued financial statements; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

4.      On August 16, 2023, Lovesac disclosed in an SEC filing that, "[i]n June 2023, the Audit Committee (the 'Audit Committee') of the Board of Directors of [Lovesac] . . . commenced an internal investigation related to the recording of last mile shipping expenses, resulting from the discovery of a recorded journal entry in the quarter ended April 30, 2023 to capitalize $2.2 million

of shipping expenses that related to the fiscal year ended January 29, 2023." Lovesac further advised that, "[i]n addition to the aforementioned journal entry, the Company has identified through the investigation certain errors with the methodology used by the Company to calculate the accrual of its last mile freight expenses applicable to the Company's financial statements for the fiscal year ended January 29, 2023 and the thirteen weeks ended April 30, 2023 (the 'Prior Financial Statements')." Lovesac stated that, "as a result of the identified errors related to last mile freight expenses, the Company believes that previously reported operating income and net income were overstated by approximately $1.5 million to $2.5 million and $1.0 million to $2.0 million, respectively, for fiscal year 2023" and that "[w]hen aggregating this error with other estimated required correcting entries the Company believes that operating income and net income were overstated by approximately $2.0 million to $3.0 million and $1.5 million to $2.5 million, respectively, for the fiscal year ended January 29, 2023." In addition, Lovesac disclosed that it "believes that the identified errors related to the accrual methodology, together with the incorrectly recorded entry related to last mile freight expenses resulted in the overstatement of previously reported operating income and net income of less than $0.5 million, respectively, for the thirteen weeks ended April 30, 2023" and that "[w]hen aggregating these errors with other estimated required correcting entries the Company believes that operating income and net income were overstated by less than $0.5 million, respectively, for the thirteen weeks ended April 30, 2023."

5.     As a result of the foregoing errors, Lovesac concluded "that [its] financial statements for fiscal year 2023 included in the Company's Annual Report on Form 10-K for the fiscal year ended January 29, 2023, management's report on internal control over financial reporting for the fiscal year ended January 29, 2023, the associated audit report and report on internal control over financial reporting of the Company's independent registered public

accounting firm, Deloitte & Touche LLP . . . , and the Company's condensed financial statements included in the Company's Quarterly Report on Form 10-Q for the thirteen weeks ended April 30, 2023, should no longer be relied upon." Accordingly, Lovesac advised that it would restate the flawed financial statements in question.

6.      Following these disclosures, Lovesac's stock price fell $0.70 per share, or 2.95%, to close at $23.06 per share on August 17, 2023.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Lovesac is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

11.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Lovesac securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Lovesac is a Delaware corporation with principal executive offices located at Two Landmark Square, Suite 300, Stamford, Connecticut 06901.  Lovesac's common stock trades in an efficient market on the NASDAQ Stock Market ("NASDAQ") under the ticker symbol "LOVE".

14.     Defendant Shawn Nelson ("Nelson") has served as Lovesac's Chief Executive Officer at all relevant times.

15.     Defendant Donna Dellomo ("Dellomo") served as Lovesac's Executive Vice President and Chief Financial Officer from before the start of the Class Period to June 30, 2023.

16.     Defendants Nelson and Dellomo are sometimes referred to herein collectively as the "Individual Defendants."

17.     The Individual Defendants possessed the power and authority to control the contents of Lovesac's SEC filings, press releases, and other market communications.   The Individual Defendants were provided with copies of Lovesac's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Lovesac, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then

materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

18.     Lovesac and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Lovesac designs, manufactures, and sells furniture, marketing its products primarily through the lovesac.com website, as well as through showrooms at top-tier malls, lifestyle centers, mobile concierges, kiosks, street locations, and in store pop-up-shops and shop-in-shops.  The Company also fulfills last mile product delivery services through logistics and transportation carriers.

### Materially False and Misleading Statements Issued During the Class Period

20.     The Class Period begins on March 30, 2023, the day after Lovesac filed a Form 10-K with the SEC during post-market hours, reporting the Company's financial and operational results for its fourth fiscal quarter and year ended January 29, 2023 (the "2023 10-K").  Among other results, the 2023 10-K reported a gross profit of $345.826 million, an operating income of $39.017 million, a net income of $28.242 million, shipping and handling costs of $158 million, and accrued freight and shipping expenses of $2.131 million for the Company's fiscal year ended January 29, 2023.

21.     With respect to Lovesac's treatment of shipping and freight expenses on its balance sheet, the 2023 10-K stated, in relevant part:

> Shipping and handling charges billed to customers are included in revenue. The Company recognizes shipping and handling expense as fulfillment activities (rather than a promised good or service) when the activities are performed. Accordingly, the Company records the expenses for shipping and handling activities at the same

time the Company recognizes revenue. Shipping and handling costs incurred are included in cost of merchandise sold and include inbound freight and tariff costs relative to inventory sold, warehousing, and last mile shipping to our customers. Shipping and handling costs were $158.0 million in fiscal 2023, $112.8 million in fiscal 2022, and $63.1 million in fiscal 2021.

Estimated refunds for returns are recorded using our historical return patterns, adjusting for any changes in returns policies and current product performance. The Company records estimated refunds for net sales returns on a monthly basis as a reduction of net sales and cost of sales on the statement of operations and an increase in inventory and customers return liability on the balance sheet. As of January 29, 2023 and January 30, 2022, we recorded a return liability of $4.5 million and $2.0 million within accrued expenses, and a corresponding asset for the net realizable value of inventory to be returned for $1.0 million and $0.4 million, respectively, in merchandise inventories on our Balance Sheet.

22.     With respect to Lovesac's disclosure controls and procedures, the 2023 10-K stated, in relevant part:

Our management, with the participation of [the Individual Defendants], has evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act) as of the end of the period covered by this Annual Report. *[The Individual Defendants] have concluded, based on their evaluation, that our disclosure controls and procedures were effective as of January 29, 2023.*

(Emphasis added.)

23.     With respect to Lovesac's internal control over financial reporting, the 2023 10-K stated, in relevant part:

Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rule 13a-15(f) and 15d-15(f) under the Exchange Act. The Company's internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles in the United States of America. The Company's internal control over financial reporting includes those policies and procedures that: (i) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Company; (ii) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles in the United States of America, and that receipts and expenditures of the Company are being made only in accordance

with authorizations of management and directors of the Company; and (iii) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the Company's assets that could have a material effect on the financial statements.

Management assessed the effectiveness of the Company's internal control over financial reporting as of January 29, 2023. In making this assessment, management used the criteria set forth in 2013 by the Committee of Sponsoring Organizations of the Tread way Commission (COSO) in "Internal Control-Integrated Framework." ***Based on management's assessment using the COSO criteria, management has concluded that the Company's internal control over financial reporting was effective as of January 29, 2023.*** The effectiveness of our internal control over financial reporting as of January 29, 2023 has been audited by Deloitte & Touche LLP, an independent registered public accounting firm, as stated in their attestation report, included in Part IV of this Annual Report on Form 10-K.

(Emphasis added.)

24.     In addition, the 2023 10-K assured investors that, apart from Lovesac's purported remediation of a prior material weakness related to ineffective information technology general controls, "there were no changes in our internal control over financial reporting that occurred during the quarter ended January 29, 2023 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

25.     Appended as exhibits to the 2023 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified, *inter alia*, that the 2023 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by" the 2023 10-K, and that "the financial statements, and other financial information included in th[e 2023 10-K], fairly present in all material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in" the 2023 10-K.

26.     On June 9, 2023, Lovesac filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended April 30, 2023 (the "1Q24 10-Q").  Among other results, the 1Q24 10-Q reported a gross profit of $70.704 million and shipping and handling costs of $37.8 million for the Company's thirteen weeks ended April 30, 2023.

27.     With respect to Lovesac's treatment of shipping and freight expenses on its balance sheet, the 1Q24 10-Q stated, in relevant part:

> Shipping and handling charges billed to customers are included in revenue. The Company recognizes shipping and handling expense as fulfillment activities (rather than a promised good or service) when the activities are performed. Accordingly, the Company records the expenses for shipping and handling activities at the same time the Company recognizes revenue. Shipping and handling costs incurred are included in cost of merchandise sold and include inbound freight and tariff costs relative to inventory sold, warehousing, and last mile shipping to our customers. During the thirteen weeks ended April 30, 2023 and May 1, 2022, shipping and handling costs were $37.8 million and $34.9 million, respectively.
>
> Estimated refunds for returns and allowances are recorded using our historical return patterns, adjusting for any changes in returns policies. The Company records estimated refunds for net sales returns on a monthly basis as a reduction of net sales and cost of sales on the condensed statements of operations and an increase in inventory and customers returns liability on the condensed balance sheets. There was a returns allowance recorded on the condensed balance sheet in the amount of $2.1 million as of April 30, 2023 and $4.5 million as of January 29, 2023, which was included in accrued expenses and $0.5 million as of April 30, 2023 and $1.0 million as of January 29, 2023, associated with sales returns included in merchandise inventories.

28.     With respect to Lovesac's disclosure controls and procedures, the 1Q24 10-Q merely stated:

> Our management, with the participation of [the Individual Defendants], has evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the [Exchange Act], as of the end of the period covered by th[e 1Q24] 10-Q. Management recognizes that any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving their objectives and management necessarily applies its

judgment in evaluating the cost-benefit relationship of possible controls and procedures.

As reflected above, the 1Q24 10-Q failed to provide the Individual Defendants' conclusions on whether, based on their evaluation, the Company's disclosure controls and procedures were effective or ineffective for the thirteen weeks ended April 30, 2023.  The 1Q24 10-Q also remained silent with respect to the effectiveness or ineffectiveness of the Company's internal control over financial reporting for the same period.

29.     Notwithstanding the foregoing, the 1Q24 10-Q continued to assure investors that "[t]here were no changes in our internal control over financial reporting during the thirteen weeks ended April 30, 2023 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

30.     Appended as exhibits to the 1Q24 10-Q were substantively the same SOX certifications as referenced in ¶ 25 *supra*, signed by the Individual Defendants.

31.     The statements referenced in ¶¶ 20-30 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lovesac did not properly account for last mile shipping and freight expenses; (ii) accordingly, Lovesac's disclosure controls and procedures and internal control over financial reporting were ineffective and deficient; (iii) as a result of all the foregoing, Lovesac overstated its gross profit and operating and net income, as well as understated its shipping and handling costs and accrued freight and shipping expenses, in its previously issued financial statements; (iv) accordingly, Lovesac was likely to restate one or more of its previously issued financial statements; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

32.     On August 16, 2023, during post-market hours, Lovesac filed a current report (the "Current Report") on Form 8-K with SEC, disclosing that investors should no longer rely on the Company's previously issued financial statements contained in the 2023 10-K and 1Q24 10-Q. Notably, Lovesac disclosed that the Audit Committee of its Board of Directors had initiated an investigation into issues with the Company's financial statements based on "the discovery of a recorded journal entry in the quarter ended April 30, 2023"—*i.e.*, during the period covered by the 1Q24 10-Q—and yet failed to disclose this discovery in the 1Q24 10-Q.  Specifically, the Current Report stated, in relevant part:

> In June 2023, the Audit Committee (the "Audit Committee") of the Board of Directors of [Lovesac] commenced an internal investigation related to the recording of last mile shipping expenses, resulting from the discovery of a recorded journal entry ***in the quarter ended April 30, 2023*** to capitalize $2.2 million of shipping expenses that related to the fiscal year ended January 29, 2023. In addition to the aforementioned journal entry, the Company has identified through the investigation certain errors with the methodology used by the Company to calculate the accrual of its last mile freight expenses applicable to the Company's financial statements for the fiscal year ended January 29, 2023 and the thirteen weeks ended April 30, 2023 (the "Prior Financial Statements").

> In particular, as a result of the identified errors related to last mile freight expenses, the Company believes that previously reported operating income and net income were overstated by approximately $1.5 million to $2.5 million and $1.0 million to $2.0 million, respectively, for fiscal year 2023. When aggregating this error with other estimated required correcting entries the Company believes that operating income and net income were overstated by approximately $2.0 million to $3.0 million and $1.5 million to $2.5 million, respectively, for the fiscal year ended January 29, 2023. Additionally, the Company believes that the identified errors related to the accrual methodology, together with the incorrectly recorded entry related to last mile freight expenses resulted in the overstatement of previously reported operating income and net income of less than $0.5 million, respectively, for the thirteen weeks ended April 30, 2023. When aggregating these errors with other estimated required correcting entries the Company believes that operating income and net income were overstated by less than $0.5 million, respectively, for the thirteen weeks ended April 30, 2023.

On August 15, 2023, the Company, in consultation with the Audit Committee of its Board of Directors and outside advisors, reached a determination that the Company's financial statements for fiscal year 2023 included in the [2023 10-K], management's report on internal control over financial reporting for the fiscal year ended January 29, 2023, the associated audit report and report on internal control over financial reporting of the Company's independent registered public accounting firm, Deloitte & Touche LLP ("Deloitte"), and the Company's condensed financial statements included in the [1Q24 10-Q], should no longer be relied upon.

Accordingly, the Audit Committee, in consultation with the Company's management, has determined that the Prior Financial Statements will be restated. In addition, any previously issued or filed earnings releases, investor presentations or other communications describing the Prior Financial Statements and other related financial information covering these periods should no longer be relied upon. We are working diligently to complete the restatements and expect to file a Form 10-K/A that will include restated financial statements for the 2023 fiscal year end and the interim periods contained therein, as necessary, as well as a Form 10-Q/A that will include restated financial statements for the thirteen weeks ended April 30, 2023 (the "Restatements") promptly after completion of our analysis. Although the Audit Committee's internal investigation described above is substantially complete, there can be no assurance that the ongoing review will not result in further adjustments to the Company's financial statements.

(Emphasis added.)

33.     The Current Report further advised that Lovesac "is also evaluating the impact of the identified errors on its internal control over financial reporting and disclosure controls and procedures" and that "the Company expects it will likely result in one or more material weaknesses in the Company's internal control over financial reporting and that its disclosure controls and procedures were ineffective during the applicable periods related to the Prior Financial Statements."

34.     Following these disclosures, Lovesac's stock price fell $0.70 per share, or 2.95%, to close at $23.06 per share on August 17, 2023.

35.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**Post-Class Period Developments**

36.     On November 2, 2023, Lovesac filed an amendment to the 2023 10-K on Form 10-K/A with the SEC (the "2023 10-K/A"), reporting, *inter alia*, that gross profit was actually $343.651 million (as compared to the previously reported $345.826 million), operating income was actually $36.966 million (as compared to the previously reported $39.017 million), net income was actually $26.488 million (as compared to the previously reported $28.242 million), shipping and handling costs were actually $159.7 million (as compared to the previously reported $158 million), and accrued freight and shipping expenses were actually $4.432 million (as compared to the previously reported $2.131 million) for the Company's fiscal year ended January 29, 2023.

37.     As explained by Lovesac in the 2023 10-K/A:

The Audit Committee of the Board of Directors of Lovesac completed an independent investigation in August 2023 whereby the Company concluded $2.2 million of last mile shipping expenses relating to the fiscal year ended January 29, 2023 were improperly capitalized during the quarter ended April 30, 2023. Through this investigation, the Company also determined that the methodology used to estimate an accrual of last mile freight expenses at each period end was not accurate because the calculation did not use the correct number of shipments that were accepted by the shipper for delivery, but not yet invoiced to the Company. Management prepared a quantitative and qualitative analysis of these errors, along with certain other immaterial accounting errors, in accordance with the U.S. SEC Staff's Accounting Bulletin Nos. 99 and 108, Materiality, and concluded the aggregate impact of all the errors are material to the Company's previously reported interim, year-to-date, and annual financial statements as of and for the year ended January 29, 2023 and the Company's previously reported interim financial statements as of and for the three-month period ended April 30, 2023 and immaterial to the previously reported interim, year-to-date, and annual financial statements as of and for the year ended January 30, 2022 (collectively the "previously reported financial statements"). As a result, the accompanying financial statements as of and for the years ended January 29, 2023 and 2022, and

related notes hereto, have been restated or revised, as applicable, to correct these errors.

## SCIENTER ALLEGATIONS

38.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the Company's securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

40.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Lovesac securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Lovesac or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

42.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

43.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Lovesac;

- whether the Individual Defendants caused Lovesac to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Lovesac securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

45.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Lovesac securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Lovesac securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

46.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

47.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

48.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

49.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

50.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Lovesac securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Lovesac securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

51.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Lovesac securities. Such reports, filings, releases and statements were

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Lovesac's finances and business prospects.

52.     By virtue of their positions at Lovesac, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

53.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Lovesac, the Individual Defendants had knowledge of the details of Lovesac's internal affairs.

54.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of MARATHON. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Lovesac's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Lovesac securities was artificially inflated throughout the Class Period. In

ignorance of the adverse facts concerning Lovesac's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Lovesac securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

55.    During the Class Period, Lovesac securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Lovesac securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Lovesac securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Lovesac securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

56.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure

that the Company had been disseminating misrepresented financial statements to the investing public.

**COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

58.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59.     During the Class Period, the Individual Defendants participated in the operation and management of Lovesac, and conducted and participated, directly and indirectly, in the conduct of Lovesac's business affairs. Because of their senior positions, they knew the adverse non-public information about Lovesac's misstatement of income and expenses and false financial statements.

60.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Lovesac's financial condition and results of operations, and to correct promptly any public statements issued by Lovesac which had become materially false or misleading.

61.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Lovesac disseminated in the marketplace during the Class Period concerning Lovesac's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Lovesac to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Lovesac within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Lovesac securities.

62.     Each of the Individual Defendants, therefore, acted as a controlling person of Lovesac. By reason of their senior management positions and/or being directors of Lovesac, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Lovesac to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Lovesac and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

63.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Lovesac.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: December 19, 2023                    Respectfully submitted,

                                            POMERANTZ LLP

                                            */s/ Emily C. Finestone*
                                            Emily C. Finestone (Bar No. ct30250)

Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
efinestone@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*