UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| ALBERT GUTKNECHT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE LOVESAC COMPANY, SHAWN NELSON, and DONNA DELLOMO,<br><br>Defendants. | Case No.  3:23-cv-01640-KAD<br><br>**February 20, 2024** |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ALBERT GUTKNECHT
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ........................................................................................................................ 4

      I.       GUTKNECHT SHOULD BE APPOINTED LEAD PLAINTIFF ......................... 4

              A.      Gutknecht Is Willing to Serve as Class Representative ............................ 5

              B.      Gutknecht Has the "Largest Financial Interest" in the Action .................. 6

              C.      Gutknecht Otherwise Satisfies the Requirements of Rule 23 .................... 7

              D.      Gutknecht Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses ............................................ 9

      II.      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ............................................................................................... 10

CONCLUSION.................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS),
2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018)...............................................................................9

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ................................................................................................9

*Galmi v. Teva Pharms. Indus.*,
302 F. Supp. 3d 485 (D. Conn. 2017)................................................................................6, 7, 8, 9

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)........................................................................................................6

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)................................................................................6

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) .................................................................................................10

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...........................................................................................6

*Janbray v. Canadian Solar, Inc.*,
272 F.R.D. 113 (S.D.N.Y. 2010) ...............................................................................................8

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
311 F.R.D. 373 (S.D.N.Y. 2015) .............................................................................................10

*Labul v. XPO Logistics, Inc.*, No. 3:18-CV-2062 (VLB),
2019 WL 1450271 (D. Conn. Apr. 2, 2019)...........................................................................6, 7

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
1997 WL 461036, (N.D. Ill. Aug. 6, 1997). .............................................................................6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
229 F.R.D. 395 (S.D.N.Y. 2004) ...............................................................................................6

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 .............................................................. *passim*

## **Rules**

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

Albert Gutknecht ("Gutknecht") respectfully submits this memorandum of law in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Gutknecht as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired The Lovesac Company ("Lovesac" or the "Company") securities between March 30, 2023 and August 16, 2023, both dates inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

PRELIMINARY STATEMENT

The Complaint in the above-captioned action (the "Action") alleges that Defendants defrauded investors in violation of the Exchange Act. Lovesac investors, including Gutknecht, incurred losses following the disclosure of the alleged fraud, which caused Lovesac's share price to fall sharply, damaging Gutknecht and other Lovesac investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Gutknecht purchased 20 Lovesac shares, expended $529 on these purchases, retained 20 of his Lovesac shares, and, as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $142 calculated on a first-in, first-out ("FIFO") basis, or $12 calculated on a last-in, first-out ("LIFO") basis, in connection with his transactions in Lovesac securities. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Exhibit ("Ex.") A. Accordingly, Gutknecht believes that he has the largest financial interest in the relief sought in this Action. Beyond his financial interest, Gutknecht also meets the applicable requirements of

1

Rule 23 because his claims are typical of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Action on behalf of the Class, Gutknecht has selected Pomerantz as Lead Counsel for the Class. Pomerantz is a nationally recognized securities class action firm that has recovered billions of dollars on behalf of investors, as detailed in its firm resume, and is well qualified to serve as Lead Counsel in this Action.

Accordingly, Gutknecht respectfully requests that the Court enter an Order appointing Gutknecht as Lead Plaintiff for the Class and approving his selection of Pomerantz as Lead Counsel for the Class.

STATEMENT OF FACTS

As alleged in the Complaint in the Action, Lovesac designs, manufactures, and sells furniture, marketing its products primarily through the lovesac.com website, as well as through showrooms at top-tier malls, lifestyle centers, mobile concierges, kiosks, street locations, and in store pop-up-shops and shop-in-shops. The Company also fulfills last mile product delivery services through logistics and transportation carriers.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lovesac did not properly account for last mile shipping and freight expenses; (ii) accordingly, Lovesac's disclosure controls and procedures and internal control over financial reporting were ineffective and deficient; (iii) as a result of all the foregoing, Lovesac overstated its gross profit and operating and net income, as well as understated its shipping and handling costs and accrued freight and shipping expenses, in

2

its previously issued financial statements; (iv) accordingly, Lovesac was likely to restate one or more of its previously issued financial statements; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

On August 16, 2023, Lovesac disclosed in a filing with the U.S. Securities and Exchange Commission that, "[i]n June 2023, the Audit Committee (the 'Audit Committee') of the Board of Directors of [Lovesac] . . . commenced an internal investigation related to the recording of last mile shipping expenses, resulting from the discovery of a recorded journal entry in the quarter ended April 30, 2023 to capitalize $2.2 million of shipping expenses that related to the fiscal year ended January 29, 2023." Lovesac further advised that, "[i]n addition to the aforementioned journal entry, the Company has identified through the investigation certain errors with the methodology used by the Company to calculate the accrual of its last mile freight expenses applicable to the Company's financial statements for the fiscal year ended January 29, 2023 and the thirteen weeks ended April 30, 2023 (the 'Prior Financial Statements')." Lovesac stated that, "as a result of the identified errors related to last mile freight expenses, the Company believes that previously reported operating income and net income were overstated by approximately $1.5 million to $2.5 million and $1.0 million to $2.0 million, respectively, for fiscal year 2023" and that "[w]hen aggregating this error with other estimated required correcting entries the Company believes that operating income and net income were overstated by approximately $2.0 million to $3.0 million and $1.5 million to $2.5 million, respectively, for the fiscal year ended January 29, 2023." In addition, Lovesac disclosed that it "believes that the identified errors related to the accrual methodology, together with the incorrectly recorded entry related to last mile freight expenses resulted in the overstatement of previously reported operating income and net income of less than $0.5 million, respectively, for the thirteen weeks ended April 30, 2023" and that "[w]hen

3

aggregating these errors with other estimated required correcting entries the Company believes that operating income and net income were overstated by less than $0.5 million, respectively, for the thirteen weeks ended April 30, 2023."

As a result of the foregoing errors, Lovesac concluded "that [its] financial statements for fiscal year 2023 included in the Company's Annual Report on Form 10-K for the fiscal year ended January 29, 2023, management's report on internal control over financial reporting for the fiscal year ended January 29, 2023, the associated audit report and report on internal control over financial reporting of the Company's independent registered public accounting firm, Deloitte & Touche LLP . . . , and the Company's condensed financial statements included in the Company's Quarterly Report on Form 10-Q for the thirteen weeks ended April 30, 2023, should no longer be relied upon."  Accordingly, Lovesac advised that it would restate the flawed financial statements in question.

Following these disclosures, Lovesac's stock price fell $0.70 per share, or 2.95%, to close at $23.06 per share on August 17, 2023.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Gutknecht and other Class members have suffered significant losses and damages.

ARGUMENT

I.    GUTKNECHT SHOULD BE APPOINTED LEAD PLAINTIFF

Gutknecht should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in this litigation to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class

4

members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). In addition, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Gutknecht satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

A.    Gutknecht Is Willing to Serve as Class Representative

On December 19, 2023, counsel for plaintiff in Action caused the statutorily required Notice of this Action to be published via *PR Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against Lovesac and other defendants, and which advised investors in Lovesac securities that they had until February 20, 2024—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Lieberman Decl., Ex. B.

5

Gutknecht has filed the instant motion pursuant to the Notice and has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Gutknecht satisfies the first requirement to serve as Lead Plaintiff of the Class.

B.    Gutknecht Has the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of his knowledge, Gutknecht has the largest financial interest of any Lovesac investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[1] these so-called *Lax* factors have been adopted and routinely applied by courts in the Second Circuit, including in this Judicial District. *See Galmi v. Teva Pharms. Indus.*, 302 F. Supp. 3d 485, 497 (D. Conn. 2017); *Labul v. XPO Logistics, Inc.*, No. 3:18-CV-2062 (VLB), 2019 WL 1450271, at *4 (D. Conn. Apr. 2, 2019); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-*8 (E.D.N.Y. Mar. 2, 2007).

---

[1] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).

During the Class Period, Gutknecht: (1) purchased 20 shares of Lovesac common stock; (2) expended $529 on his purchases of Lovesac common stock; (3) retained 20 of his shares of Lovesac common stock; and (4) as a result of the disclosures of the fraud, incurred losses of approximately $142 calculated on a FIFO basis, or $12 calculated on a LIFO basis, in connection with his Class Period transactions in Lovesac securities.  *See* Lieberman Decl., Ex. A.  To the extent that Gutknecht possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

C.       Gutknecht Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff movant satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; rather, "[a]t this early stage in the litigation, the proposed lead plaintiff must only meet its prima facie burden of establishing its adequacy and typicality."  *Galmi*, 302 F. Supp. 3d at 505; *see also Labul*, 2019 WL 1450271, at *5 (same).  Moreover, "[t]ypicality and adequacy of representation are the only provisions of Rule 23 relevant to the determination of lead plaintiff under the PSLRA."  *Labul*, 2019 WL 1450271, at *5 (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88,

94 (S.D.N.Y. 2007), *on reconsideration in part sub nom. In re IMAX Sec. Litig.*, No. 06CIV6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009)); *see also Galmi*, 302 F. Supp. 3d at 505-06.

The typicality requirement of Rule 23(a)(3) "is satisfied by showing that each class member's claim 'arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Galmi*, 302 F. Supp. 3d at 505 (quoting *Janbray v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010)).  "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'"  *Janbay*, 272 F.R.D. at 120 (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

Gutknecht's claims are typical of those of the Class.  Gutknecht alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Lovesac, or by omitting to state material facts necessary to make the statements they did make not misleading.  Gutknecht, like other Class members, purchased Lovesac securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Lovesac's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class

members' interests are not antagonistic to one another; and (3) the plaintiff has sufficient interest in the outcome of the case to ensure vigorous advocacy." *Galmi*, 302 F. Supp. 3d at 505 (quoting *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015)); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011) (same); *Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, Gutknecht has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits his choice of Pomerantz to the Court for approval as Lead Counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  There is no evidence of antagonism or conflict between Gutknecht's interests and those of the Class.  Moreover, Gutknecht has submitted a signed Certification declaring his commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. C), and Gutknecht's financial interest demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.  Further demonstrating his adequacy, Gutknecht has submitted a signed Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class.  *See id.*, Ex. D.

> D.    Gutknecht Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Gutknecht as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)    will not fairly and adequately protect the interests of the class; or

> (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Gutknecht's ability and desire to fairly and adequately represent the Class has been discussed above.  Gutknecht is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class.  Accordingly, Gutknecht should be appointed Lead Plaintiff for the Class.

## II.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to Court approval.  *See id.* § 78u-4(a)(3)(B)(v).  The Court should only interfere with Lead Plaintiff's choice if necessary to "protect the interests of the class."  *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Gutknechthuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *see also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Gutknecht has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith.  *See* Lieberman Decl., Ex. E.  In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel.  *See id.*  For more than 85 years, Pomerantz has represented defrauded investors.  *See id.*  As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class

action involving a foreign issuer and the fifth largest class action settlement ever achieved in the

United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz,

including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*,

No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf

of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million

settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised

in the instant Action, Gutknecht's counsel, Pomerantz, has the skill, knowledge, expertise, and

experience that will enable the firm to prosecute this Action effectively and expeditiously. Thus,

the Court may be assured that by approving Gutknecht's selection of Pomerantz as Lead Counsel,

the members of the Class will receive the best legal representation available.

CONCLUSION

For the foregoing reasons, Gutknecht respectfully requests that the Court issue an Order:

(1) appointing Gutknecht as Lead Plaintiff for the Class; and (2) approving Gutknecht's selection

of Pomerantz as Lead Counsel for the Class.

Dated: February 20, 2024       Respectfully submitted,

POMERANTZ LLP

*/s/ Emily C. Finestone*
Emily C. Finestone (Bar No. ct30250)
Jeremy A. Lieberman (admitted *pro hac vice*)
J. Alexander Hood II (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
efinestone@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Albert Gutknecht and Proposed Lead
Counsel for the Class*

11

CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2024, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Emily C. Finestone*
Emily C. Finestone

12