## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ALBERT GUTKNECHT,**<br>**individually and on behalf of all others similarly**<br>**situated,**<br><br>                                        **Plaintiff,**<br><br>        v.<br><br>**THE LOVESAC COMPANY,** *et al.*,<br><br>                                        **Defendants.** | No. 3:23-cv-01640-KAD |

## STIPULATION OF SETTLEMENT

WHEREAS capitalized terms in this Stipulation of Settlement have the meanings ascribed to them in Section I below; and

WHEREAS, on December 19, 2023, Albert Gutknecht filed the above-captioned securities class action against The Lovesac Company ("Lovesac") and two of its present or former officers or directors alleging violations of the Exchange Act; and

WHEREAS, after a timely filed motion for appointment of lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, *et seq.*, the Court appointed Susan Cooke Peña as Lead Plaintiff and The Rosen Law Firm, P.A. as Lead Counsel and Faxon Law Group, LLC as Liaison Counsel for the putative class on March 11, 2024; and

WHEREAS, on May 10, 2024, Lead Plaintiff filed the Complaint in the Action against Lovesac and two of its present or former officers or directors (Shawn Nelson and Donna Dellomo) asserting claims under the Exchange Act and Rule 10b-5 promulgated thereunder by the U.S.

Securities and Exchange Commission (the "SEC") on behalf of a class of all purchasers of Lovesac common stock between June 8, 2022, and August 16, 2023, inclusive; and

WHEREAS, after the Complaint was filed, Lead Counsel and Defendants' Counsel began discussing the prospect of settling the Action, taking into account (among other factors) the strengths and weaknesses of the Complaint's claims and the amount of potentially recoverable damages; and

WHEREAS, on May 29, 2024, the Settling Parties reached an agreement in principle on the primary terms of a settlement, which was subject to various conditions; and

WHEREAS the Settling Parties negotiated the full terms of a settlement, with such negotiations resulting in the execution of this Stipulation of Settlement and its exhibits; and

WHEREAS, throughout the pendency of the Action and the Settlement negotiations, Lead Plaintiff and Defendants have consulted with various experts, including individuals with expertise in estimating potential damages in cases involving allegations of securities-law violations, and have been represented by competent counsel with experience in securities lawsuits such as this Action; and

WHEREAS Lead Plaintiff asserts that the claims the Complaint alleges have merit and that the evidence developed through Lead Counsel's investigation and evaluation of the facts and law relating to the claims and potential damages alleged in this Action supports those claims; and

WHEREAS Lead Plaintiff and Lead Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Action through trial and appeals; and

WHEREAS Lead Plaintiff and Lead Counsel have also accounted for the uncertain outcome and the risk of any litigation, especially in complex actions such as the Action, as well as

2

the difficulties and delays inherent in such litigation, and are mindful of the inherent problems of proof and the possible defenses to the claims alleged in the Action, including a loss-causation defense; and

WHEREAS, based on their evaluation, Lead Plaintiff and Lead Counsel believe that the Settlement set forth in this Settlement Agreement confers immediate substantial monetary benefits upon the Settlement Class and is in the best interests of Lead Plaintiff and the Settlement Class; and

WHEREAS this Stipulation, whether or not consummated, any proceedings relating to any settlement, or any of the terms of any settlement, whether or not consummated, shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of Lead Plaintiff of any infirmity in the claims she brought in this Action; and

WHEREAS Defendants do not concede any wrongdoing or liability in connection with any facts or Claims that have been, could have been, or could be alleged in the Action, but they nevertheless prefer that the Action be settled and dismissed because the proposed Settlement would, among other things:  (*i*) bring to an end the substantial expense, burdens, and uncertainties associated with continued litigation of the asserted Claims; (*ii*) finally put to rest those Claims and the underlying matters; and (*iii*) confer substantial benefits upon Defendants, including avoidance of further disruption of the management and operation of Lovesac's business due to the pendency and defense of the Action; and

WHEREAS this Settlement Agreement, the offer of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed to be an admission by Defendants or the other Releasees, or any of them individually, of any wrongdoing or liability; and

WHEREAS, except as otherwise provided in this Settlement Agreement, this Settlement Agreement shall not be admissible in any judicial, administrative, or other proceeding or cause of action as an admission of liability or for any purpose other than to enforce the terms of this Settlement Agreement;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned, including Lead Plaintiff (individually and in her representative capacity) and Defendants, by and through their duly authorized counsel, that, subject to the Court's approval and such approval's becoming Final, (*i*) the Action and the matters raised in it are hereby settled and compromised as to Defendants, and (*ii*) the Action will be dismissed with prejudice as to Defendants based upon the terms and conditions set forth in this Settlement Agreement, including, among other things, that, as set out in the Releases, the Released Class Claims will be released as to the Releasees, and the Released Releasees' Claims will be released as to the Releasors.

## I.   DEFINITIONS

A.    As used in this Settlement Agreement, the following terms have the meanings set forth herein:

1.    "Action" means the securities class action now pending in this Court and captioned *Gutknecht v. The Lovesac Company*, Case No. 3:23-cv-01640-KAD (D. Conn.).

2.    "Affiliate" or "Affiliated" means such persons or entities as are defined in 17 C.F.R. Part 210.1-02(b).

3.    "Approval Order" means the order to be entered by the Court finally approving the Settlement and dismissing the Complaint and all Claims in the Action as contemplated in Section XIII of this Settlement Agreement, which order the Settling Parties shall ask the Court to enter substantially in the form set out as Exhibit B.

4

4.    "Attorneys' Fees and Expenses Application" means the motion for fees and expenses to be made by Lead Counsel as set out in Section X below.

5.    "Attorneys' Fees and Expenses Award" means the amount that the Court awards to Lead Counsel on behalf of all Plaintiff's Counsel to compensate for Plaintiff's Counsel's fees and expenses in connection with investigating, prosecuting, and/or settling the Action, as provided for in Section X below.

6.    "Authorized Claimant" means a Settlement Class Member (or the representative of such Settlement Class Member, including agents, administrators, executors, heirs, predecessors, successors, Affiliates, or assigns) whose claim for recovery from the Net Settlement Amount has been allowed pursuant to the terms of this Settlement Agreement.

7.    "Business Day" means a day other than a Saturday, Sunday, or Legal Holiday.

8.    "CAFA" means the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d) and 1715.

9.    "Claim" or "Claims" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees, and any losses whatsoever, whether in law, in admiralty, or in equity, and whether based on any United States federal, state, or common-law right of action or foreign statutory or common-law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or to be created in the future, including Unknown Claims.

10. "Claim Form" means the form, as approved by the Court, that Settlement Class Members will use to submit claims under the procedures set out in this Settlement Agreement, which form the Settling Parties shall ask the Court to approve substantially as set out as Exhibit G.

11. "Claims Administrator" means, subject to Court approval and appointment in the Preliminary Approval Order, Strategic Claims Services, which Lead Counsel will retain to provide all Court-approved notices to Settlement Class Members, to process Proofs of Claim, and generally to administer the Settlement.

12. "Class Period" means the period from June 8, 2022, through August 16, 2023, inclusive.

13. "Complaint" means the Amended Class Action Complaint filed in the Action on May 10, 2024.

14. "Complete Bar Order" means the bar order, the text of which is set forth in paragraph 19 of the Approval Order (Exhibit B).

15. "Confidentiality Agreement" means the Confidentiality Agreement in the form entered into by Lead Plaintiff and Defendants, a copy of which is attached as Exhibit H.

16. "Controlling Interest" means an interest in an entity where such interest is sufficient to allow the interest holder directly or indirectly to direct or cause the direction of the management and policies of the entity, whether through the ownership of voting shares, by contract, or otherwise. Any disputes as to whether Lovesac or any other Releasee has a Controlling Interest in an entity or whether an entity has a Controlling Interest in Lovesac or any other Releasee shall, solely for purposes of determining whether a Controlling Interest exists under this Settlement Agreement, be submitted to the Court for final, binding resolution, and the party claiming that the

6

interest is a Controlling Interest for purposes of this Settlement Agreement shall bear the burden of proof as to that issue.

17.     "Court" means the United States District Court for the District of Connecticut.

18.     "Defendants" means Lovesac, Shawn Nelson, and Donna Dellomo.

19.     "Defendants' Counsel" means Proskauer Rose LLP.

20.     "Due-Diligence Discovery" means the information that Lovesac will provide to Lead Plaintiff as described in Section II below.

21.     "Escrow Account" means the account described in Section III into which the Settlement Amount shall be paid.  The Escrow Account shall be treated for tax purposes as a Qualified Settlement Fund, as described below.

22.     "Escrow Agent" means Strategic Claims Services or its appointed agent(s), which shall act as escrow agent for the Escrow Account.

23.     "Exchange Act" means the Securities Exchange Act of 1934, as amended.

24.     "Execution Date" means the date by which this Settlement Agreement has been executed by all Settling Parties.

25.     "Fairness Hearing" means the hearing at or after which the Court will make a final decision, pursuant to Fed. R. Civ. P. 23, as to whether this Settlement Agreement is fair, reasonable, and adequate to settle the Settlement Class Members' Claims against Defendants and the other Releasees and whether the Court should approve the proposed Settlement; *provided* that the Fairness Hearing shall be scheduled for a date that is no fewer than one hundred twenty-five (125) days following the Preliminary Approval Date.  It is within the Court's discretion to hold the Fairness Hearing in person, telephonically, or by videoconference.

26.    "Family Members" means an individual's father, mother, grandfather, grandmother, sister, brother, spouse/partner, son, and/or daughter, and any other person living in, or a member of, such an individual's household.

27.    "Final" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final:

      a.    if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any potential extension of time) has expired;

      b.    if any appeal is taken therefrom, on the date on which all appeals therefrom – including petitions for rehearing or reargument, petitions for rehearing en banc, petitions for certiorari or any other form of review, and any related appeals or petitions, including as to any appeal bond – have been finally disposed of, such that the time to appeal therefrom (including any potential extension of time) has expired, in a manner resulting in an affirmance of the relevant order or judgment.

28.    "Final Settlement Date" means the date on which the Approval Order and the Judgment become Final.

29.    "GAAP" means generally accepted accounting principles in the United States.

30.    "Investment Decision" means any decision regarding an investment in Lovesac Securities during the Class Period, including a decision to hold such securities during the Class Period.

31.    "Judgment" means the Judgment entered by the Court as contemplated in Section XIII of this Settlement Agreement, which Judgment the Settling Parties shall ask the Court to enter substantially in the form set out as Exhibit C.

32. "Lead Counsel" means The Rosen Law Firm, P.A.

33. "Lead Plaintiff" means Susan Cooke Peña, in her individual capacity and as representative of the Settlement Class.

34. "Legal Holiday" means New Year's Day, the observance of the Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Juneteenth, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas Day, and any other day designated as a federal observed holiday.

35. "Long Notice" means the notice, as approved by the Court and as described in Section V and in the Preliminary Approval Order, that informs potential Settlement Class Members of the Settlement contemplated by this Settlement Agreement, which notice the Settling Parties shall ask the Court to approve substantially in the form set out as Exhibit E.

36. "Lovesac" means The Lovesac Company.

37. "Lovesac Affiliate" means any Affiliate, holding company, or subsidiary of Lovesac, and any other person or entity affiliated with Lovesac through direct or indirect ownership of Lovesac shares.

38. "Lovesac Securities" means common stock issued by Lovesac.

39. "Net Settlement Amount" means the Settlement Fund *less* (*i*) any Tax Expenses paid or owing, (*ii*) any Notice and Administrative Expenses paid or owing, and (*iii*) the Attorneys' Fees and Expenses Award and the PSLRA Award.

40. "Nominees" means brokerage firms, banks, and other institutions that hold Lovesac Securities in street name or other similar fashion for the benefit of other persons or entities.

41.     "Notice and Administrative Expenses" means any and all expenses (other than Plaintiff's Counsel's fees and expenses) associated with the administration of the Settlement contemplated by this Settlement Agreement, including the Claims Administrator's fees and expenses and all other fees and expenses associated with (*i*) printing and sending the Postcard Notice, Long Notice, and Claim Form to potential Settlement Class Members, (*ii*) publishing the Summary Notice, (*iii*) assisting Settlement Class Members with filing Claim Forms, (*iv*) processing Claim Forms, (*v*) setting up and maintaining a toll-free telephone number for potential Settlement Class Members to call, (*vi*) operating a settlement website, and (*vii*) distributing the Net Settlement Amount, as well as (*viii*) any reasonable costs, fees, and expenses incurred in connection with the Escrow Account.

42.     "Notice Date" means the date on which the Claims Administrator (*i*) mails or emails the Postcard Notice to all identifiable potential Settlement Class Members known to Lead Counsel or the Claims Administrator at that time, (*ii*) notifies Nominees about the proposed Settlement so that the Nominees can either send individual Postcard Notice to beneficial owners who are potential Settlement Class Members or provide the names and addresses (and email addresses, where available) of those beneficial owners to the Claims Administrator, which will then mail or email the Postcard Notice to them, and (*iii*) uploads onto its website the Postcard Notice, the Long Notice, and the Claim Form. The Notice Date shall be no later than twenty-eight (28) days after the Preliminary Approval Date and at least sixty (60) days before the deadline for objecting to or opting out of the proposed Settlement.

43.     "Notice Program" means the program for informing potential Settlement Class Members about the proposed Settlement, including the Postcard Notice, the Long Notice,

the Claim Form, the Summary Notice, and the manner of delivering and publishing such notices or forms.

44.    "Operative Facts" means those facts and circumstances that provide the factual predicate for the claims asserted in the Action and shall include the following to the extent they provide the bases for the claims asserted in the Action:

a.    financial reporting and conformance (or alleged nonconformance) with GAAP, including in connection with accounting for costs of shipping and handling expenses (including last-mile freight expenses), accounting for leases, recognition of revenue, accounting for inventory and costs of goods sold, income taxes, and classification of cash flows and balance-sheet assets;

b.    statements or reports of gross profit, operating income, receivables, net sales, rebates, inventory, equity-based compensation expenses, current and deferred income taxes, net income, net income per diluted share, current assets, total assets, current liabilities, total liabilities, stockholder equity (including earnings per share), and cash flows;

c.    internal controls over accounting, financial reporting, and disclosures, including any risk warnings relating to those controls;

d.    information technology general controls in the area of user access, including any statements about the remediation of such controls;

e.    information technology general controls in the area of segregation of duties to information technology systems that support financial reporting, including any statements about the remediation of such systems;

f.    Lovesac's accounting and finance functions and teams, including the staffing, personnel, turnover, supervision, monitoring, competence, and operations of those

11

functions and teams, and including any alleged problems involving preparation or compiling of financial information, collection of sales information, handling and processing of payables and receivables (including commissions, utility bills, and rents), and closing out books at the end of a period;

        g.     any disclosures, statements, representations, communications, or omissions – whether in SEC filings or Sarbanes-Oxley certifications, at industry or investor conferences, or in analyst meetings, earnings calls, or otherwise – about business operations, financial results, revenue recognition, business strategy, pricing, customers' needs, contingencies, legal matters, and internal controls over financial reporting, including any alleged failure to disclose that purported misconduct was materially misstating Lovesac's business, operations, and financial results;

        h.     audits or reviews of Lovesac's financial statements, including communications with auditors;

        i.     Lovesac's restatement, correction, or revision of previously issued financial statements;

        j.     any statements or alleged omissions about the alleged conduct and/or topics described in Sections I.A.44.a-i above;

        k.     any alleged inflation or decline in the price of Lovesac Securities during the Class Period that was related to or arose out of the alleged conduct and/or topics described in Sections I.A.44.a.-j above;

        l.     any Claims under Exchange Act §§ 10(b) and/or 20(a) and/or SEC Rule 10b-5 arising out of the alleged conduct and/or topics described in Sections I.A.44.a-j above during the Class Period;

m.      any Claims related to sales of Lovesac Securities by any Releasees during the Class Period, including any Claims under Exchange Act §§ 10(b), 20(a), or 20A or SEC Rule 10b-5 relating to such sales, to the extent that such Claims are related in any way to the alleged conduct and/or topics described in Sections I.A.44.a-j above; and

n.      Releasees' knowledge or alleged disregard of the purported conduct described in Sections I.A.44.a-j above.

45.      "Plaintiff's Counsel" means Lead Counsel; Faxon Law Group, LLC, Liaison Counsel for Lead Plaintiff and the Settlement Class; and Schall Law Firm, additional counsel.

46.      "Plan of Allocation" means the terms and procedures for allocating the Net Settlement Amount among, and distributing it to, Authorized Claimants as the Court shall approve. Lead Plaintiff shall ask the Court to approve a Plan of Allocation substantially in the form set out in the Long Notice (Exhibit E).

47.      "Postcard Notice" means the notice, as approved by the Court and as described in Section V and in the Preliminary Approval Order, that Lead Counsel will cause the Claims Administrator to disseminate to potential Settlement Class Members informing them of the Settlement contemplated by this Settlement Agreement, which notice the Settling Parties shall ask the Court to approve substantially in the form set out as Exhibit D.

48.      "Preliminary Approval Date" means the date on which the Preliminary Approval Order is entered on the Court's docket.

49.      "Preliminary Approval Order" means the order concerning, among other things, preliminary approval of the proposed Settlement, certification of the Settlement Class solely for settlement purposes, provision of notice of the proposed Settlement, administration of

13

the proposed Settlement, and scheduling of the Fairness Hearing, which order the Settling Parties

shall ask the Court to enter substantially in the form set out as Exhibit A.

50.    "PSLRA" means the Private Securities Litigation Reform Act of 1995, as

codified in the Exchange Act.

51.    "PSLRA Award" means the amount that the Court awards to Lead Plaintiff

pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), to compensate her for her reasonable costs and

expenses directly relating to the representation of the Settlement Class.

52.    "PSLRA Award Application" means the application by which Lead

Plaintiff shall seek a PSLRA Award, as provided for in Section XI below.

53.    "PSLRA Contribution Bar Order" means the statutory bar order, the text of

which is set forth in paragraph 18 of the Approval Order (Exhibit B), to be entered by the Court

pursuant to Section 21D(f)(7)(A) of the Exchange Act.

54.    "Qualified Settlement Fund" means a fund within the meaning of Treasury

Regulation § 1.468B-1.

55.    "Released Class Claims" means each and every Claim that (*i*) arises from

or relates to the Action (including all Claims alleged in the Complaint) and is asserted against the

Releasees or (*ii*) could have been or could be asserted against any of the Releasees in connection

with or relating directly or indirectly to any of the Operative Facts or any alleged statements about,

mischaracterizations of, or omissions concerning them, whether arising under any federal, state,

or other statutory or common-law rule or under any foreign law, in any court, tribunal, agency, or

other forum, if such Claim arises out of or relates to the purchase or other acquisition of Lovesac

Securities, or to any other Investment Decision, during the Class Period; *provided, however*, that

the term "Released Class Claims" does not include (and will not release or impair) any claims to enforce this Settlement Agreement.

56.    "Released Releasees' Claims" means each and every Claim that has been, could have been, or could be asserted in the Action or in any other proceeding by any Releasee, including Defendants and their successors and assigns, or his, her, or its respective estates, heirs, executors, agents, attorneys (including in-house counsel, outside counsel, and Defendants' Counsel), beneficiaries, accountants, professional advisors, trusts, trustees, administrators, and assigns, against Lead Plaintiff, any other Settlement Class Members, or any of their respective attorneys (including, without limitation, Plaintiff's Counsel), including their successors and assigns, or his, her, its, or their respective estates, heirs, executors, agents, attorneys (including in-house counsel and outside counsel), beneficiaries, accountants, professional advisors, trusts, trustees, administrators, and assigns, and that arises out of or relates in any way to the initiation, prosecution, or settlement of the Action or the implementation of this Settlement Agreement; *provided, however*, that the term "Released Releasees' Claims" does not include (and will not release or impair) any claims to enforce the Settlement Agreement.

57.    "Releasee" means each and every one of, and "Releasees" means all of, (*i*) Lovesac, (*ii*) Lovesac Affiliates, (*iii*) each of Lovesac's and Lovesac Affiliates' current and former officers (including Mr. Nelson and Ms. Dellomo), directors, employees, agents, representatives, any and all in-house counsel and outside counsel (including Defendants' Counsel), advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers, and any entities in which Lovesac or any Lovesac Affiliate has or had a

15

Controlling Interest or that has or had a Controlling Interest in Lovesac or any Lovesac Affiliate, and (*iv*) for each of the foregoing Releasees, (*y*) to the extent the Releasee is an entity, each of its current and former officers, directors, employees, agents, representatives, any and all in-house counsel and outside counsel (including Defendants' Counsel), advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers, and any entities in which any Releasee has or had a Controlling Interest or that has or had a Controlling Interest in the Releasee and (*z*) to the extent the Releasee is an individual, each of his or her Family Members, estates, heirs, executors, beneficiaries, trusts, trustees, agents, representatives, attorneys, advisors, administrators, accountants, consultants, assigns, assignees, representatives, partners, successors-in-interest, insurance carriers, and reinsurers.

58.     "Releases" means the release provisions in Section IX below.

59.     "Releasor" means each and every one of, and "Releasors" means all of, (*i*) Lead Plaintiff, (*ii*) all other Settlement Class Members, and (*iii*) for each of the foregoing Releasors, (*y*) to the extent the Releasor is an entity, each of its current and former officers, directors, employees, agents, representatives, any and all in-house counsel and outside counsel, advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers, and any entities in which any Releasor has or had a Controlling Interest or that has or had a Controlling Interest in the Releasor and (*z*) to the extent the Releasor is an individual, each of his or her Family Members, estates, heirs, executors, beneficiaries, trusts,

trustees, agents, representatives, attorneys, advisors, administrators, accountants, consultants, assigns, assignees, representatives, partners, successors-in-interest, insurance carriers, and reinsurers.

60.    "Settlement" means the settlement contemplated by this Settlement Agreement.

61.    "Settlement Agreement" means this Stipulation of Settlement and all accompanying exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

62.    "Settlement Amount" means six hundred fifteen thousand dollars ($615,000.00).

63.    "Settlement Class" or "Settlement Class Members" means, for purposes of this Settlement, all persons and entities who purchased or otherwise acquired Lovesac common stock during the Class Period.  Excluded from the Settlement Class are:

a.    such persons or entities who submit valid and timely requests for exclusion from the Settlement Class;

b.    such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against one or more of the Releasees arising out of or related to the Released Class Claims; and

c.    Lovesac and (*i*) all officers and directors of Lovesac during the Class Period (including Shawn Nelson and Donna Dellomo), (*ii*) Lovesac's Affiliates, subsidiaries, successors, and predecessors, (*iii*) any entity in which Lovesac or any other Defendant has or had during the Class Period a Controlling Interest, and (*iv*) for the individuals

17

identified in subpart(s) (*i*), (*ii*), and/or (*iii*), their Family Members, legal representatives, heirs, successors, and assigns.

64.    "Settlement Fund" means the Settlement Amount, plus any interest that has accrued on the Settlement Amount on deposit in the Escrow Account.

65.    "Settling Parties" means Lead Plaintiff (on behalf of herself and the Settlement Class Members) and Defendants.

66.    "Summary Notice" means the notice described in Section V, which notice the Settling Parties shall ask the Court to approve substantially in the form set out as Exhibit F.

67.    "Supplemental Agreement" means the agreement entered into by the Settling Parties through their respective counsel that is referenced in Section XIV.D below. The Settling Parties agree to keep the Supplemental Agreement confidential and not to disclose it or file it with the Court unless (*i*) the Court otherwise orders or (*ii*) a dispute arises among the Settling Parties concerning the Supplemental Agreement's interpretation or application. If the Supplement Agreement must be provided to the Court, the Settling Parties shall seek leave to submit it *in camera* or to file it under seal.

68.    "Tax Expenses" means (*i*) all taxes on the income of the monies in the Escrow Account and (*ii*) any expenses and costs incurred in connection with the taxation of the Escrow Account (including expenses of tax attorneys and accountants).

69.    "Termination Threshold" means the threshold of requests for exclusion (as specified in the Supplemental Agreement) that gives rise to Defendants' right to terminate the Settlement Agreement pursuant to Section XIV.D.

70.    "Unknown Claims" means any and all Released Class Claims that Lead Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her, or its

18

favor at the time of the release of the Releasees, and any and all Released Releasees' Claims that any Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of the Releasors, which, if known by Lead Plaintiff, a Settlement Class Member, or a Releasee, might have affected his, her, or its decision concerning the Settlement. As to any and all Released Class Claims and Released Releasees' Claims, the Settling Parties stipulate and agree that, upon the Final Settlement Date, Lead Plaintiff and Defendants shall expressly waive, and each other Settlement Class Member, Releasor, and Releasee shall be deemed to have waived, and by operation of the Approval Order and the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or of any other country, or any principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Lead Plaintiff and Defendants acknowledge, and the other Settlement Class Members and Releasees by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Class Claims and Released Releasees' Claims was specifically considered and bargained for and was a key element of the Settlement.

        B.      Capitalized Terms

        1.      Capitalized terms used in this Settlement Agreement, but not defined above, shall have the meaning ascribed to them in this Settlement Agreement.

## II.    DUE-DILIGENCE DISCOVERY

        A.      Subject to the provisions of the Confidentiality Agreement, Lovesac will provide Lead Counsel with reasonable Due-Diligence Discovery regarding the claims in the Complaint to

allow Lead Plaintiff and Lead Counsel to determine whether the proposed Settlement is fair, reasonable, and adequate.

B.     Due-Diligence Discovery shall consist of documents relevant to the claims in the Complaint.

C.     Due-Diligence Discovery will begin following entry of the Preliminary Approval Order and shall continue for a period of forty-five (45) days.

D.     Due-Diligence Discovery may be used only in accordance with the terms of the Confidentiality Agreement and solely for the purpose of assessing whether the proposed Settlement is fair, reasonable, and adequate, and for no other purpose.

E.     Subject to Sections XIV and XV below, if the Due-Diligence Discovery contemplated by this Section II causes Lead Plaintiff and Lead Counsel reasonably and in good faith to conclude that the proposed Settlement Agreement is not fair, reasonable, and adequate, Lead Plaintiff will have the right to terminate this Settlement Agreement within ten (10) days following the conclusion of the Due-Diligence Discovery.

III.    **TERMS AND CONDITIONS OF THE SETTLEMENT**

A.     **Payment of Settlement Amount**

1.     Lovesac will pay or cause to be paid the Settlement Amount into the Escrow Account within ten (10) Business Days following the Preliminary Approval Date.

2.     If the Settlement Amount is not paid into the Escrow Account within twelve (12) Business Days following the Preliminary Approval Date, Lead Counsel shall notify Defendants' Counsel that the payment has not occurred, and Lovesac shall have three (3) Business Days to comply or obtain compliance with the obligation to pay the Settlement Amount into the Escrow Account. If payment still has not occurred after the additional period of three (3) Business Days, Lead Plaintiff may, subject to Section XV below, terminate this Settlement Agreement.

B.    **Escrow Account**

1.    Within five (5) Business Days following the Execution Date, Lead Counsel and Defendants' Counsel shall establish the Escrow Account.

2.    From its inception until the Final Settlement Date, the Escrow Account shall be under the joint control of Lead Counsel and Defendants' Counsel.

3.    As of the Final Settlement Date, the Escrow Account shall be under the sole control of Lead Counsel.

4.    The Escrow Agent shall (*i*) administer the Escrow Account, (*ii*) invest the Settlement Amount in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, and (*iii*) reinvest the proceeds of those instruments as they mature in similar instruments at their then-current market rates. The Escrow Agent shall bear all risks related to the investment of the amounts in the Escrow Account made in accordance with the guidelines set forth in this paragraph.

5.    The Escrow Agent shall disburse proceeds of the Escrow Account only (*i*) before the Final Settlement Date, by an order of the Court or upon the written instruction of both Lead Counsel and Defendants' Counsel and (*ii*) as of and after the Final Settlement Date, upon the written instruction of Lead Counsel; *provided, however*, that, before the Final Settlement Date, Lead Counsel may withdraw up to one hundred twenty-five thousand dollars ($125,000.00) for the Claims Administrator's fees and expenses without first consulting with or obtaining written instruction from Defendants' Counsel.

6.    If the Settlement Agreement is terminated as provided in this Settlement Agreement, the Escrow Agent shall, within ten (10) Business Days following receipt of written notice of such termination from Defendants' Counsel, return all monies then held in the Escrow

Account (including any interest that has accrued) to Lovesac or as instructed by Defendants' Counsel; *provided* that, before returning the monies pursuant to this Section III.B.6, Lead Counsel shall advise Defendants' Counsel of any outstanding Notice and Administrative Expenses that are in progress or due for payment, and, upon the written consent of Defendants' Counsel (which consent shall not be unreasonably withheld), the Escrow Agent shall pay such expenses from the Escrow Account.

7. This is not a claims-made settlement. Upon the occurrence of the Final Settlement Date, and subject to Section XV below, no portion of the Settlement Amount shall revert to Lovesac or any other Defendant, and no Defendant, Releasee, or any other person or entity who or that paid any portion of the Settlement Amount shall have any right to the return of the settlement money paid into the Escrow Account, or any portion thereof, for any reason whatsoever, including, without limitation, the number of Claim Forms submitted, the collective amount of Recognized Claims of Authorized Claimants under the Plan of Allocation, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Amount.

8. The Escrow Account and the funds it contains shall be deemed and considered to be *in custodia legis* of the Court and shall remain subject to the Court's jurisdiction until such time as they shall be distributed pursuant to this Settlement Agreement and/or further order(s) of the Court.

C. **Qualified Settlement Fund**

1. All necessary steps to enable the Escrow Account to be treated as a Qualified Settlement Fund for tax purposes shall be taken, including the timely filing by the Claims Administrator of all elections and statements required for tax purposes pursuant to Treas. Reg.

§§ 1.468B-0 through 1.468B-5, or any other relevant statutes, regulations, or published rulings now or hereafter enacted or promulgated, for all taxable years of the Escrow Account, beginning with the date of its establishment. The Claims Administrator shall be the "administrator" of the Qualified Settlement Fund for tax purposes under Treas. Reg. §§ 1.460B-0 through 1.468B-5, shall file or cause to be filed on a timely basis any required federal, state, and local tax returns, and shall cause any taxes due on the income of the Qualified Settlement Fund and any other Tax Expenses to be paid from the Escrow Account. The Settling Parties agree that the Escrow Account shall be treated as a Qualified Settlement Fund, as provided in Treas. Reg. §§ 1.468B-0 through 1.468B-5, from the earliest date possible, and hereby agree to any relation-back election required to treat the Escrow Account as a Qualified Settlement Fund from the earliest date possible. In no event shall Defendants have any responsibility whatsoever for filing elections, other required statements, or tax returns, or for paying the costs associated therewith, any taxes due, or the expenses of notice or administration of the Escrow Account. Lead Counsel and Defendants' Counsel shall cooperate to the extent necessary to comply with this Section III. Upon request by Lead Counsel, Lovesac shall promptly provide the statement described in Treasury Regulation § 1.468B-3(e).

2.      Upon request by Defendants' Counsel, the Claims Administrator shall promptly provide to Defendants' Counsel all information requested in connection with (*i*) any tax returns that Lovesac or any other Releasee must file or (*ii*) any other report or filing that Lovesac or any other Releasee must make concerning the Settlement Amount or any portion of it.

D.      **Distribution of the Net Settlement Amount**

1.      If the proposed Settlement becomes Final, the Net Settlement Amount shall be distributed pursuant to such Plan of Allocation as the Court approves.

2.      No person or entity shall have any Claim against Lead Plaintiff, Plaintiff's Counsel, the Claims Administrator, the Escrow Agent, or any of their agents, or against Defendants or any other Releasee (including Defendants' Counsel), relating to or arising out of any distributions or lack thereof made under any Court-approved Plan of Allocation, this Settlement Agreement, or orders of the Court.

3.      The Settling Parties understand and agree that, notwithstanding any other provision of this Settlement Agreement, a court-ordered or court-approved change to the Plan of Allocation shall not operate to modify, terminate, or cancel this Settlement Agreement or affect the finality of the Approval Order and the Judgment or any other orders entered by the Court giving effect or pursuant to this Settlement Agreement.

4.      Development of the Plan of Allocation shall be exclusively the responsibility of Lead Plaintiff and Lead Counsel.

5.      Defendants, the other Releasees, and their respective counsel, including Defendants' Counsel, shall have no role in, responsibility for, or liability as to or in connection with, and shall take no position on, (*i*) the Plan of Allocation, (*ii*) the form, substance, method, or manner of allocation, administration, or distribution of the Net Settlement Amount, (*iii*) any tax liability that a Settlement Class Member might incur as a result of this Settlement Agreement, or (*iv*) the result of any action taken pursuant to this Settlement Agreement, the administration or processing of claims (including determinations as to the validity of Claim Forms), the amounts of claims or distribution of the Net Settlement Amount, or (except as set out above) the maintenance of the Escrow Account as a Qualified Settlement Fund.

6.      If any balance remains in the Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise) after at least six (6) months from the date of initial

distribution of the Settlement Fund, Lead Counsel shall, if feasible and economical, redistribute such balance, after paying any amounts outstanding due to the Claims Administrator (including the costs of re-distribution) plus Tax Expenses and all other expenses associated with the re-distribution, among Authorized Claimants who have cashed their checks and who would receive at least $20.00 from such redistribution. Any balance that still remains in the Settlement Fund after re-distribution(s) and that cannot feasibly or economically be reallocated to Authorized Claimants after payment of Notice and Administrative Expenses, Tax Expenses, and attorneys' fees and expenses shall be contributed to non-sectarian, not-for-profit charitable organization(s) serving the public interest, designated by Lead Plaintiff, and approved by the Court.

7. Settlement Class Members shall look solely to the Net Settlement Amount for settlement and satisfaction of all Released Class Claims and only to the extent expressly provided by this Settlement Agreement, the Court-approved Plan of Allocation, or an order of the Court. Under no circumstances will any of the Settling Parties or any Releasee be responsible for the payment of any fees, costs, expenses, or other funds associated with or arising out of the Settlement contemplated by this Settlement Agreement other than as provided herein.

E. **Implementation of the Plan of Allocation**

1. All cash distributions to Authorized Claimants shall be paid from the Net Settlement Amount pursuant to a Plan of Allocation approved by the Court.

2. The Plan of Allocation is not a necessary term of this Settlement Agreement, and this Settlement Agreement is not conditioned on the approval of any particular plan of allocation.

3.      To receive a cash distribution from the Net Settlement Amount pursuant to any approved Plan of Allocation, a Settlement Class Member must be an Authorized Claimant pursuant to the procedures set out in this Settlement Agreement or by order of the Court.

4.      Unless otherwise authorized by the Court, each Settlement Class Member who wishes to receive a distribution from the Net Settlement Amount must complete and submit a Claim Form, as directed in the Postcard Notice, Long Notice, Summary Notice, and Claim Form. The Claim Form must be postmarked or received no later than the date stated in the Claim Form (unless otherwise allowed by Lead Counsel or the Court), must be sent to the address stated in the Claim Form, and must be accompanied by adequate supporting documentation as described in the Claim Form.

5.      The Claim Form must be executed subject to the penalties of perjury pursuant to 28 U.S.C. § 1746.

6.      The validity of each submitted Claim Form will initially be determined by the Claims Administrator in accordance with the Plan of Allocation approved by the Court.  The Claims Administrator shall advise the Settlement Class Member in writing if it determines to reject the claim.  Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive, in the interests of achieving substantial justice, what Lead Counsel deems to be formal or technical defects in any Claim Forms submitted.  Lead Counsel, its designees or agents, Lead Plaintiff, Defendants' Counsel, Defendants, the other Releasees, and their counsel shall not have any liability arising out of any such determinations.  Persons who timely submit a Claim Form that is deficient or otherwise rejected shall be afforded a reasonable time (at least twenty (20) days) to cure such deficiency if it appears to be potentially curable.

7.    If any Settlement Class Member whose claim has been rejected in whole or in part desires to contest such rejection, the Settlement Class Member must, within twenty (20) days after the date of such rejection, submit to the Claims Administrator a notice and statement of reasons explaining the Settlement Class Member's grounds for contesting the rejection, along with any supporting documentation.  If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

8.    Each Settlement Class Member or other claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her, or its claim, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure; *provided, however*, that such investigation and discovery shall be limited to that claimant's status as a Settlement Class Member and the validity and amount of the claimant's claim.  No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of claims.

9.    Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account to the extent necessary (as required by Court order); and (c) if the Final Settlement Date has occurred, directing payment of the Net Settlement Amount to Authorized Claimants from the Escrow Account.

10.    Payment pursuant to the Class Distribution Order shall be final and conclusive against all Claimants.  All Settlement Class Members whose claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement

27

Amount, but otherwise shall be bound by all terms of this Settlement Agreement and the Settlement, including the terms of the Approval Order and Judgment, to be entered in this Action and the Releases provided for herein and therein.

11.     The administration of the Escrow Account and the Net Settlement Amount, and decisions on all disputed questions of law and fact concerning the validity of any Claim Form or regarding the rejection or amount of any claim, shall remain under the jurisdiction of the Court. All Settlement Class Members and Settling Parties expressly waive trial by court or jury (to the extent any such right might exist) and any right of appeal or review as to the Court's determinations. Any Settlement Class Member pursuing a dispute shall be responsible for his, her, or its own costs, including attorneys' fees, incurred in pursuing the dispute.

12.     The Net Settlement Amount shall not be distributed to Authorized Claimants until the Final Settlement Date has occurred.

13.     Unless otherwise ordered by the Court or otherwise provided for herein, any Settlement Class Member who fails to submit a valid and timely Claim Form shall be barred from receiving a distribution from the Net Settlement Amount, but shall nevertheless be bound by the Release and all proceedings, orders, and judgments in the Action even if he, she, or it has pending, or subsequently initiates, any litigation, arbitration, or other proceeding, or has any Claim, against any or all of the Releasees that is a Released Class Claim.

IV.   **CLAIMS ADMINISTRATOR**

A.     As provided in the Preliminary Approval Order, the Claims Administrator shall assist Lead Plaintiff and Lead Counsel in administering and implementing the Settlement contemplated by this Settlement Agreement. Lovesac shall cooperate in the administration of the Settlement Agreement to the extent reasonably necessary to effectuate its terms (but not including

any acts that the Claims Administrator, Lead Plaintiff, and/or Lead Counsel are required to undertake pursuant to this Settlement Agreement).

B.    The Claims Administrator shall perform various tasks as directed by Lead Counsel, including: (*i*) printing the Postcard Notice, Long Notice, and Claim Form and mailing or emailing them to potential Settlement Class Members and Nominees as described in Section V below, (*ii*) arranging for publication of the Summary Notice, (*iii*) posting the Postcard Notice, Long Notice, Claim Form, and other documents relevant to the Settlement and the Action on a website for the Settlement, (*iv*) answering written inquiries from potential Settlement Class Members and/or forwarding such inquiries to Lead Counsel, (*v*) providing additional copies of the Postcard Notice, Long Notice, and Claim Form, upon request, to Nominees and potential Settlement Class Members, (*vi*) receiving and maintaining any potential Settlement Class Members' requests for exclusion from the Settlement, (*vii*) receiving and processing Claim Forms from Settlement Class Members, (*viii*) mailing or causing to be mailed to Authorized Claimants their distributions under the Plan of Allocation, (*ix*) operating a toll-free telephone number with access to operators to answer inquiries from potential Settlement Class Members and/or to forward such inquiries to Lead Counsel, and training staff members and operators about the proposed Settlement and the Plan of Allocation, and (*x*) otherwise administering and implementing this Settlement Agreement.

C.    As ordered by the Court in the Preliminary Approval Order, the Claims Administrator shall establish, and staff with representatives knowledgeable about this Settlement Agreement and the Plan of Allocation, a toll-free telephone number for responding to inquiries from potential Settlement Class Members about this Settlement Agreement and any issues relating to the Action.

D.      Except as otherwise set out in this Settlement Agreement, all administration expenses associated with implementing the Settlement, including the Claims Administrator's fees and expenses, will be paid from the Settlement Amount in the Escrow Account.

E.      Defendants have not had any involvement in, and shall not have any liability for, the selection of the Claims Administrator.

V.    **NOTICE PROVISIONS**

A.    **Individual Notice**

1.      Subject to the requirements of the Preliminary Approval Order, and in accordance with all applicable laws, Lead Counsel shall cause the Claims Administrator to mail by first-class mail, or email, a copy of the Postcard Notice to all potential Settlement Class Members who can be identified through reasonable efforts, including by review of depositary institutions' records and any other inquiries conducted by the Claims Administrator.  The Claims Administrator will also mail by first-class mail a copy of the Long Notice and the Claim Form to those potential Settlement Class Members who request them.

2.      By no later than five (5) Business Days following the entry of the Preliminary Approval Order, Lovesac shall, at its own cost, provide or cause its transfer agent(s) to provide to the Claims Administrator lists of all persons and entities that purchased Lovesac Securities during the Class Period, so that the Claims Administrator can provide notice to such potential Settlement Class Members.  To the extent practicable, the shareholder lists shall be in electronic form (such as Excel) and shall contain the names and addresses (and, if available, email addresses) of all potential Settlement Class Members who can be identified through reasonable efforts from Lovesac's and/or its transfer agents' records.

3.      The Claims Administrator shall send the Postcard Notice by first-class mail or email on or before the Notice Date to all potential Settlement Class Members known to Lead

Counsel or the Claims Administrator as of that date. The Claims Administrator shall promptly send the Postcard Notice by first-class mail or email to other potential Settlement Class Members who become known to Lead Counsel or the Claims Administrator after the Notice Date.

4.      The Claims Administrator shall notify Nominees about the proposed Settlement on or before the Notice Date so that the Nominees can either mail or email Postcard Notices to beneficial owners who are potential Settlement Class Members or provide the names of those beneficial owners to the Claims Administrator, which will then mail or email Postcard Notices to those potential Settlement Class Members, as more fully described in paragraph 17 of the Preliminary Approval Order.

5.      The Claims Administrator will post the Long Notice and Claim Form on its website by no later than the Notice Date.

B.      **Summary Notice**

1.      Subject to the requirements of the Preliminary Approval Order, and in accordance with all applicable laws, the Claims Administrator shall cause a copy of the Summary Notice to be published one time over a newswire that distributes nationally in the United States (*e.g.*, GlobeNewswire, PRNewswire) within ten (10) calendar days after the Notice Date and at least fifty (50) calendar days before the deadline for objecting to or opting out of the proposed Settlement.

C.      **CAFA Notice**

1.      No later than ten (10) calendar days following the filing of this Settlement Agreement with the Court, Defendants shall cause notice to be provided to United States federal and state officials if and to the extent required by CAFA. Lovesac is solely responsible for the costs of the CAFA notice and administering the CAFA notice. At least seven (7) calendar days

before the Fairness Hearing, Defendants shall cause to be served on Lead Counsel and filed with the Court proof, by affidavit or declaration, regarding compliance with CAFA's notice requirements.

2. The Settling Parties shall request a schedule for the Fairness Hearing that is consistent with the notice periods prescribed in CAFA. The Settling Parties agree that any delay by Defendants in timely serving the CAFA notice will not provide grounds for delay of the Fairness Hearing or entry of the Approval Order or Judgment.

D. **Notice Costs**

1. All expenses incurred in connection with the provision of the Postcard Notice and Long Notice and the publication of the Summary Notice will be paid from the Settlement Amount.

2. Lovesac shall be solely responsible for the costs associated with providing CAFA notice, if any.

VI. **COMMUNICATIONS REGARDING THE SETTLEMENT**

A. Subject to Section VI.B below, and except to the extent any disclosures have already been made, no further disclosure of the Settlement or its terms will be made by the Settling Parties, Lead Counsel, or Defendants' Counsel before the Settlement Agreement is submitted to the Court for preliminary approval.

B. Notwithstanding Section VI.A above, nothing shall prevent Lovesac from determining, in its sole discretion, to disclose the Settlement and/or its terms before the Settlement Agreement is filed with the Court for preliminary approval or to make whatever disclosures it believes are required or appropriate, including in its SEC filings or to its regulators, stock exchanges, attorneys, accountants, and insurers; *provided, however*, that Lovesac shall inform

Lead Counsel in advance of any such public disclosure made before the Settlement Agreement is filed with the Court.

C.     Each Settling Party shall have the opportunity to review any other Settling Party's press release(s) (if any), and any press releases or public statements (other than court filings, including the PSLRA notices) issued by Lead Plaintiff or Lead Counsel concerning the proposed Settlement or Lovesac must be approved by Lovesac, which approval shall not be unreasonably withheld.

D.     The Settling Parties shall cooperate in good faith to ensure that any media statements regarding the Settlement are balanced, fair, accurate, and nondisparaging.

E.     The Settling Parties, Lead Counsel, and Defendants' Counsel agree that they will refrain from asserting that the Action was brought or defended in bad faith.

F.     Except as provided in the Postcard Notice, Long Notice, and Summary Notice or in court filings in support of Court approval of this Settlement, the Settling Parties, Lead Counsel, and Defendants' Counsel agree that none of them will comment publicly on the merits of the Claims or defenses asserted in the Action except in the most general terms in the context of supporting or commending the Settlement terms; *provided, however,* that nothing in this Section VI shall preclude Releasees from denying liability. Nothing in this Settlement Agreement shall prevent Lovesac (or other Releasees) from announcing the existence of the Settlement and its potential impact (if any) on Lovesac's financial performance, as Lovesac may deem appropriate for securities-law purposes (including in SEC filings or press releases). Nor shall this Settlement Agreement prevent Lovesac (or other Releasees) from publicly stating, including but not limited to in response to questions from investors, analysts, customers, or others, that it denies Lead

Plaintiff's allegations, would assert defenses in the Action, and has entered into the Settlement to avoid the further expense and distraction of continued litigation.

G.      Lovesac retains the right to communicate with its shareholders in the normal course of business.

## VII.   REQUESTS FOR EXCLUSION

A.      Any potential Settlement Class Member who wishes to be excluded from the Settlement Class must mail by first-class mail, or otherwise deliver, a written request for exclusion to the Claims Administrator at the address provided in the Postcard Notice, Long Notice, or Summary Notice, which exclusion request must be received no later than sixty (60) days after the Notice Date and at least thirty-five (35) days before the Fairness Hearing, or as the Court may otherwise direct. A list of the persons and entities who have validly and timely requested exclusion from the Settlement Class shall be provided by the Settling Parties to the Court at or before the Fairness Hearing.

B.      A potential Settlement Class Member's request for exclusion must include the following information: (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) email address, if available, (*v*) a statement that the potential Settlement Class Member wishes to request exclusion from the Settlement Class in *Gutknecht v. The Lovesac Company*, No. 3:23-cv-01640-KAD (D. Conn.), (*vi*) the number of shares of Lovesac Securities held as of opening of trading on June 8, 2022, and purchased or otherwise acquired and/or sold during the Class Period, (*vii*) price(s) paid or value at receipt, and, if sold, the sales price(s), (*viii*) the date of each such transaction involving each such security, and (*ix*) the signature of the person or entity requesting exclusion or an authorized representative. A request for exclusion shall not be effective unless it provides all the

required information as described above and is received within the time stated above, or is otherwise accepted by the Court.

      C.     Unless otherwise ordered by the Court, any Settlement Class Member who does not submit a timely written request for exclusion as provided by this Section VII shall be bound by the Release and by all proceedings, orders, and judgments in the Action, even if he, she, or it has pending or subsequently initiates any litigation, arbitration, or other proceeding, or has any other Claim, against any or all of the Releasees relating to any of the Released Class Claims.

      D.     Lead Plaintiff agrees that she will not request exclusion from the Settlement Class or the Settlement.

## VIII.  OBJECTIONS TO SETTLEMENT

      A.     Any Settlement Class Member who wishes to object to the fairness, reasonableness, or adequacy of this Settlement Agreement, to any term(s) of this Settlement Agreement, to the Plan of Allocation, to the Attorneys' Fees and Expenses Application, and/or to the PSLRA Award Application must both serve on Lead Counsel and Defendants' Counsel and file with the Court a statement of his, her, or its objection(s); *provided, however*, that a potential Settlement Class Member who requests exclusion from the Settlement Class shall not be entitled to submit an objection. Any such objection must be received by Lead Counsel, Defendants' Counsel, and the Court by no later than sixty (60) days after the Notice Date and at least thirty-five (35) days before the Fairness Hearing, or as the Court may otherwise direct.

      B.     The Settlement Class Member's statement of objection must state the specific reason(s), if any, for each objection, including any legal support the Settlement Class Member wishes to bring to the Court's attention and any evidence the Settlement Class Member wishes to introduce in support of such objection and must state whether the objection applies only to the

objector, to a specific subset of the Settlement Class, or to the entire Settlement Class. In addition to the reason(s) for the objection, an objection must also include the following information about the Settlement Class Member: (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) email address, if available, (*v*) number of shares of Lovesac Securities held as of opening of trading on June 8, 2022, and purchased or otherwise acquired and/or sold during the Class Period, (*vi*) price(s) paid or value at receipt, and, if sold, the sales price(s), (*vii*) the date of each such transaction involving each such security, and (*viii*) account statements verifying all such transactions.

C.      Any Settlement Class Member may file an objection on his, her, or its own, or through an attorney hired at the Settlement Class Member's own expense. If a Settlement Class Member hires an attorney to represent him, her, or it in connection with filing an objection, the attorney must both serve on Lead Counsel and Defendants' Counsel and file with the Court a notice of appearance. Subject to the requirements of the Preliminary Approval Order, any such notice of appearance must be received by Lead Counsel, Defendants' Counsel, and the Court by no later than sixty (60) days after the Notice Date and at least thirty-five (35) days before the Fairness Hearing, or as the Court may otherwise direct.

D.      Any Settlement Class Member who files and serves a written objection pursuant to this Section – and, unless otherwise ordered by the Court, only such Settlement Class Members – may appear at the Fairness Hearing, either directly or through counsel hired at the Settlement Class Member's expense, to object to the fairness, reasonableness, or adequacy of this Settlement Agreement, to any term(s) of this Settlement Agreement, to the Plan of Allocation, to the Attorneys' Fees and Expenses Application, or to the PSLRA Award Application. Settlement Class Members or their attorneys intending to make an appearance at the Fairness Hearing must both serve on Lead Counsel and Defendants' Counsel and file with the Court a notice of intention

to appear. Any such notice must be received by Lead Counsel, Defendants' Counsel, and the Court by no later than sixty (60) days after the Notice Date and at least thirty-five (35) days before the Fairness Hearing, or as the Court may otherwise direct. The Court has discretion to allow appearances at the Fairness Hearing either in person, by telephone, or by videoconference.

      E.      Any Settlement Class Member who fails to comply with any of the provisions of this Section VIII shall waive and forfeit any and all rights he, she, or it might otherwise have to appear separately at the Fairness Hearing and/or to object to this Settlement Agreement, the Plan of Allocation, the Attorneys' Fees and Expenses Application, or the PSLRA Award Application, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders, and judgments in the Action.

## IX.    RELEASE AND WAIVER

      A.      Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section IX.D below, on and after the Final Settlement Date, Lead Plaintiff and all other Settlement Class Members (whether or not a Claim Form has been executed and/or delivered by or on behalf of any such Settlement Class Member), on behalf of themselves and all other Releasors, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged:

      1.      all Released Class Claims against each and every one of the Releasees;

      2.      all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements

or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) this Settlement Agreement or its implementation, (*iii*) the Settlement terms and their implementation, (*iv*) the provision of notice in connection with the proposed Settlement, and/or (*v*) the resolution of any Claim Forms submitted in connection with the Settlement; and

        3.      all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Plaintiff's Counsel or any other counsel representing Lead Plaintiff or any other Settlement Class Member in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its Settlement, except to the extent otherwise specified in this Settlement Agreement.

        B.      Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section IX.D below, on and after the Final Settlement Date, each and every Releasee, including Defendants' Counsel, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged each and all Releasors, including Lead Counsel, from any and all Released Releasees' Claims, except to the extent otherwise specified in this Settlement Agreement.

        C.      Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section IX.D below, on and after the Final Settlement Date, Plaintiff's Counsel, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, and assigns, and any person or entity claiming by, through, or on behalf of any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged,

shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged Defendants, Defendants' Counsel, and all other Releasees from any and all Claims that relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) this Settlement Agreement or its implementation, or (*iii*) the Settlement terms and their implementation.

D.      Notwithstanding Sections IX.A, IX.B, and IX.C above, nothing in the Approval Order or the Judgment shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of this Settlement Agreement, the Approval Order, or the Judgment.

E.      The releases and waivers contained in this Section were specifically considered and bargained for and are essential elements of this Settlement Agreement.

X.      **ATTORNEYS' FEES AND EXPENSES**

A.      Lead Counsel will submit to the Court for approval an Attorneys' Fees and Expenses Application in which Lead Counsel will apply for a collective award of attorneys' fees to Plaintiff's Counsel and for payment or reimbursement of Plaintiff's Counsel's litigation expenses incurred in the Action. Lead Counsel's Attorneys' Fees and Expenses Application is not the subject of any agreement between Defendants and Lead Plaintiff other than as set forth in this Settlement Agreement.

B.      The Attorneys' Fees and Expenses Award will be paid to Lead Counsel as set out in this Section X.

C.      Any Attorneys' Fees and Expenses Award shall be paid to Lead Counsel solely from the Settlement Amount immediately after the Court has entered both the Approval Order and the Attorneys' Fees and Expenses Award, notwithstanding the existence of any timely filed

objections thereto, or potential for appeals therefrom, or collateral attack on the Settlement or any part thereof; *provided, however,* that Plaintiff's Counsel jointly and severally must return the amount of the Attorneys' Fees and Expense Award (plus any interest earned on it) to the Escrow Account (or to Lovesac if the Escrow Account has been closed) within twenty (20) Business Days if (*i*) the Settlement is terminated after payment has been made or (*ii*) as a result of any objection, appeal, or further proceedings on remand, or successful collateral attack, the Attorneys' Fees and Expenses Award is reduced or reversed and such order reducing or reversing the award has become Final. No Releasee shall have any responsibility for, or liability relating to, any obligation of Lead Counsel to make appropriate refunds or repayments to the Escrow Account (including any interest that must be refunded).

D.    An Attorneys' Fees and Expenses Award is not a necessary term of this Settlement Agreement and is not a condition of the Settlement embodied herein. Any objection to or appeal from such Award will not affect the finality of the Settlement or the Approval Order or Judgment. Neither Lead Plaintiff nor Lead Counsel may cancel or terminate the Settlement based on the Court's or any appellate court's ruling with respect to the Attorneys' Fees and Expenses Application.

E.    No Releasee shall be liable or obligated to pay any fees, expenses, costs, or disbursements to, or incur any expense on behalf of, any person or entity (including Lead Plaintiff and Lead Counsel), directly or indirectly, in connection with the Action or this Settlement Agreement, except as expressly provided for in this Settlement Agreement. No Releasee shall have any responsibility or liability for payment of any such fees or expenses beyond the obligation to cause the Settlement Amount to be paid.

F.     Lead Counsel shall allocate the attorneys' fees portion of the Attorneys' Fees and Expenses Award among Plaintiff's Counsel (and any other counsel they deem appropriate) in a manner that they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action. No Releasee shall have any responsibility whatsoever in connection with the allocation of the Attorneys' Fees and Expenses Award between or among Plaintiff's Counsel or any other counsel purporting to represent any Settlement Class Member, or any counsel asserting a right to receive a portion of the Attorneys' Fees and Expenses Award or any other amount of attorneys' fees or expenses in connection with this Action.

## XI.    PSLRA AWARD

A.     Lead Plaintiff may submit a PSLRA Award Application to the Court for approval, which PSLRA Award Application will take into account the time spent by Lead Plaintiff in pursuing the Action (including, without limitation, the time spent consulting with Lead Counsel and reviewing documents, filings, and factual materials in the Action) as well as any other expenses incurred by Lead Plaintiff directly related to her representation of the Settlement Class.

B.     Any PSLRA Award made to Lead Plaintiff shall be paid to her from the Settlement Amount immediately after the Court has entered both the Approval Order and the PSLRA Award, notwithstanding the existence of any timely filed objections thereto, or potential for appeals therefrom, or collateral attack on the Settlement or any part thereof; *provided, however,* that Lead Plaintiff must return the amount of the PSLRA Award (plus any interest earned on it) to the Escrow Account (or to Lovesac if the Escrow Account has been closed) within twenty (20) Business Days if (*i*) the Settlement is terminated after payment has been made or (*ii*) as a result of any appeal or further proceedings on remand, or successful collateral attack, the PSLRA Award is reduced or reversed, and such order reducing or reversing the award has become Final.

XII.    **PRELIMINARY APPROVAL**

A.      Within twenty (20) days following the Execution Date, Lead Plaintiff shall move the Court for entry of the Preliminary Approval Order, which motion shall be unopposed by Defendants.

B.      Lead Plaintiff and Defendants stipulate to the certification of the Settlement Class and certification of Lead Plaintiff as representative of the Settlement Class and Lead Counsel as class counsel for the Settlement Class solely for the purpose of this proposed Settlement. If the proposed Settlement is not approved by the Court or is not consummated for any other reason, Defendants reserve the right to oppose certification of the Settlement Class, or any other class, and to oppose certification or appointment of Lead Plaintiff as representative of, and Lead Counsel as counsel for, the Settlement Class, or any other class, in the Action.

XIII.   **FINAL APPROVAL AND FINAL JUDGMENT**

A.      Lead Plaintiff and Defendants shall jointly request that the Court enter the Approval Order and the Judgment upon the Court's approval of the Settlement contemplated by this Settlement Agreement.

XIV.    **MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT**

A.      The terms and provisions of this Settlement Agreement may be amended or expanded by written agreement of the Settling Parties; *provided, however*, that, after entry of the Approval Order and the Judgment, Lead Counsel, on behalf of Lead Plaintiff and the Settlement Class, and Defendants' Counsel, on behalf of Defendants, may by written agreement effect any amendments, modifications, or expansions of this Settlement Agreement and its implementing documents (including all exhibits to this Settlement Agreement) without notice to or approval by the Court only if such changes are not materially inconsistent with the Approval Order and

Judgment and do not materially limit the rights of Settlement Class Members under this Settlement Agreement.

        B.    **Mutual Termination Rights**

        1.    Subject to Section XIV.B.2 below, this Settlement Agreement will terminate at the sole option and discretion of Defendants and/or Lead Plaintiff (on behalf of herself and the Settlement Class) if (*i*) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Settlement Agreement or the proposed Settlement that the terminating Settling Party reasonably and in good faith determines is material, including the terms of relief, the findings of the Court, the provisions relating to notice, the definition of the Settlement Class, the Complete Bar Order, the permanent injunction, and/or the terms of the Releases, or (*ii*) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Preliminary Approval Order, the Approval Order, or the Judgment that the terminating Settling Party reasonably and in good faith believes is material.  In any of the above circumstances, the terminating Settling Party must exercise the option to withdraw from and terminate this Settlement Agreement, as provided in this Section, no later than thirty (30) days after receiving actual notice of the event prompting the termination.

        2.    Notwithstanding the preceding Section XIV.B.1, neither Lead Plaintiff nor Lead Counsel may terminate this Settlement Agreement on the basis of the Court's order(s) addressing the Attorneys' Fees and Expenses Application and/or the PSLRA Award Application, or on the basis of any modification of the Attorneys' Fees and Expenses Award and/or the PSLRA Award by any appellate court(s).

C.    **Lead Plaintiff's Termination Rights**

       1.    In addition to the other termination rights described in Section XIV.B, Lead Plaintiff has the termination rights specified in Section II.E (concerning Due-Diligence Discovery) and Section III.A (concerning nonpayment of Settlement Amount) above.

D.    **Defendants' Termination Rights**

       1.    In addition to having the right to terminate this Settlement Agreement as provided in Section XIV.B above, and without limiting any other rights under this Settlement Agreement, Defendants may unilaterally withdraw from and terminate this Settlement Agreement if requests for exclusion are received from potential Settlement Class Members in an amount that meets or exceeds the Termination Threshold as set out in the Supplemental Agreement. Defendants must exercise any such right by no later than fourteen (14) calendar days before the Fairness Hearing.

       2.    The Claims Administrator shall promptly notify Lead Counsel and Defendants' Counsel of all requests for exclusion submitted by potential Settlement Class Members and shall also provide Lead Counsel and Defendants' Counsel with copies of any such requests for exclusion and the supporting information and documentation submitted by such persons or entities.

       3.    Lead Counsel shall have the right to communicate with any persons or entities that submit requests for exclusion. If any of those persons or entities withdraws his, her, or its request for exclusion such that the Termination Threshold is no longer met, Lead Counsel will immediately inform Defendants' Counsel, and the election termination (if made) will automatically become null and void and of no further effect.

E.    **Effect of Termination**

1.    If this Settlement Agreement is terminated in accordance with any provision of this Section XIV, the Settlement Agreement shall be withdrawn from, terminated, and deemed to be null and void, and the provisions of Section XV of this Settlement Agreement shall apply.

XV.    **GENERAL MATTERS AND RESERVATIONS**

A.    If an option to withdraw from and terminate this Settlement Agreement arises under this Settlement Agreement, (*i*) neither Defendants nor Lead Plaintiff will be required for any reason or under any circumstance to exercise that option, and (*ii*) if any Settling Party exercises the option to withdraw from or terminate the Settlement, the terminating Settling Party shall do so in good faith.

B.    If (*i*) this Settlement Agreement does not become Final or is otherwise terminated pursuant to its terms, (*ii*) the Releases do not become effective, or (*iii*) the Settlement does not become Final by operation of law, then:

1.    This Settlement Agreement shall be null and void and shall have no force or effect, and no party to this Settlement Agreement shall be bound by any of its terms, except as set out in this Section XV.B;

2.    This Settlement Agreement, all of its provisions, and all negotiations, statements, and proceedings relating to it (including the agreement in principle reached on May 29, 2024) shall be without prejudice to the rights of Defendants, any other Releasee, Lead Plaintiff, and any other Settlement Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Settlement Agreement, except with respect to the payment of such Tax Expenses and Notice and Administrative Expenses that have been actually expended or incurred as described in Sections III, IV, and V above;

3. Releasees expressly and affirmatively reserve all defenses, motions, and arguments as to all Claims that have been or might later be asserted in the Action, including any argument that the Action may not be litigated as a class action;

4. Lead Plaintiff and all other Settlement Class Members expressly and affirmatively reserve all motions as to, and arguments in support of, all Claims that have been or might later be asserted in the Action, including any argument concerning class certification;

5. Neither this Settlement Agreement nor the fact of its having been made shall be admissible or entered into evidence for any purpose whatsoever, with the exception of enforcement of this Section XV.B;

6. The terms and provisions of the Confidentiality Agreement as set out in Exhibit H shall continue in full force and effect, and the use of information obtained in Due-Diligence Discovery shall be governed by such Confidentiality Agreement;

7. All monies in the Escrow Account shall be returned to Lovesac as set out in Section III above;

8. Plaintiff's Counsel and Lead Plaintiff must return any payment of the Attorneys' Fees and Expenses Award or PSLRA Award in accordance with the terms of Sections X.C and XI.B above; and

9. Except as specifically provided herein, nothing in this Settlement Agreement shall create any obligation on the part of any Settling Party to pay any other Settling Party's fees or expenses.

C. All of the exhibits attached to this Settlement Agreement are incorporated by reference as though fully set forth herein.

D.      The Settling Parties intend that the Settlement Agreement shall be a final and complete resolution of all disputes that were, could have been, or could be asserted as to the Released Class Claims and the Released Releasees' Claims.  Accordingly, the Settling Parties agree not to assert in any forum that any conduct of Lead Plaintiff and/or Defendants, or any of them, in connection with this Action, the settlement of this Action, or any of the Released Class Claims or Released Releasees' Claims was in bad faith or was unreasonable.  No Settling Party shall assert any Claim that any other Settling Party violated Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Action, and the proposed Approval Order shall contain a statement reflecting the Settling Parties' compliance with Rule 11.

E.      The Settling Parties agree that the amount paid and the other terms of the Settlement Agreement were negotiated at arm's length in good faith by the Settling Parties and reflect an agreement that was reached voluntarily, after consultation with experienced legal counsel.

F.      Each Settling Party's counsel signing this Settlement Agreement represents that he or she is authorized to enter into this Settlement Agreement on behalf of his or her clients.

G.      Lead Plaintiff, through her duly authorized representative, represents that she (*i*) has agreed to serve as representative of the Settlement Class proposed to be certified herein, (*ii*) has consulted with Lead Counsel about the Action, this Settlement Agreement, and the obligations of a representative of the Settlement Class, (*iii*) supports the Settlement, and (*iv*) will remain in and not request exclusion from the Settlement Class and will serve as representative of the Settlement Class until the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that Lead Plaintiff cannot represent the Settlement Class.

47

H.      This Settlement Agreement and the Supplemental Agreement set forth the entire agreement among the Settling Parties as to their subject matter and may not be altered or modified except by a written instrument executed by all Settling Parties' counsel.  Lead Plaintiff and Defendants expressly acknowledge that there are no agreements, arrangements, or understandings among or between them concerning the subject matter of this Settlement Agreement other than those expressed or referred to in this Settlement Agreement and the Supplemental Agreement, and no Settling Party has relied upon any representation or warranty not set forth expressly herein or in the Supplemental Agreement; *provided further* that the terms of the Settlement Agreement supersede the agreement in principle reached on May 29, 2024.

I.      This Settlement Agreement shall be governed by and interpreted according to the laws of the State of New York, excluding its conflict-of-laws provisions, except to the extent that federal law requires that federal law govern.

J.      Any action arising under or to enforce this Settlement Agreement or the Supplemental Agreement shall be commenced and maintained only in the Court, which shall retain continuing, exclusive jurisdiction over all matters relating to the Settlement.

K.      Whenever this Settlement Agreement requires or contemplates that a Settling Party shall or may give notice to the other, notice shall be provided by email and/or next-day (excluding Saturday, Sunday, and Legal Holidays) express-delivery service as follows and shall be deemed effective upon such email transmission or delivery to the email address or street address, as the case may be, below:

1.    If to Defendants, then to:

> Jonathan E. Richman
> jerichman@proskauer.com
> Julia D. Alonzo
> jalonzo@proskauer.com
> Proskauer Rose LLP
> Eleven Times Square
> New York, NY 10036-8299
> Telephone:  (212) 969-3000

2.    If to Lead Plaintiff, then to:

> Jacob A. Goldberg
> jgoldberg@rosenlegal.com
> Leah Heifetz-Li
> lheifetz@rosenlegal.com
> The Rosen Law Firm, P.A.
> 101 Greenwood Avenue, Suite 440
> Jenkintown, PA  19046
> Telephone:  (215) 600-2817

L.    All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Settlement Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a Legal Holiday, or, when the act to be done is the filing of a paper in Court, a day on which weather conditions or other conditions have made the office of the Clerk of Court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.

M.    The Settling Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

N.    All Setting Parties agree that this Settlement Agreement and the Supplemental Agreement were drafted by counsel for the Settling Parties at arm's length and that no parol or

other evidence may be offered to explain, construe, contradict, or clarify their terms, the intent of the Settling Parties or their counsel, or the circumstances under which the Settlement Agreement and the Supplemental Agreement were made or executed. Nor shall there be any presumption for or against any Settling Party that drafted all or any portion of this Settlement Agreement or the Supplemental Agreement.

O.     This Settlement Agreement, the offer of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed as an admission by any of the Releasees of any wrongdoing or liability, which Releasees expressly deny. This Settlement Agreement is to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Complaint and of the Released Class Claims and the Released Releasees' Claims. In no event shall this Settlement Agreement, any of its provisions, or any negotiations, statements, or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or any other judicial, administrative, regulatory, or other proceeding, except a proceeding to enforce this Settlement Agreement. Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including Defendants, or as a waiver by Defendants of any applicable defense.

P.     No opinion or advice concerning the tax consequences of the proposed Settlement to individual Settlement Class Members or to any of the Settling Parties is being given or will be given by Defendants' Counsel and/or Lead Counsel; nor is any representation or warranty in this regard made by virtue of this Settlement Agreement. Settlement Class Members will be directed

50

to consult their own tax advisors regarding the tax consequences of the proposed Settlement and any tax reporting obligations they might have as to it. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

Q.      The Settling Parties, their successors and assigns, and their attorneys undertake to implement the terms of this Settlement Agreement in good faith and to use good faith in resolving any disputes that might arise in the implementation of the terms of this Settlement Agreement.

R.      The Settling Parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use all reasonable efforts to effect the prompt consummation of this Settlement Agreement and the proposed Settlement.

S.      This Settlement Agreement may be signed in counterparts, each of which shall constitute a duplicate original. Execution by email in electronic format (including .pdf format) shall be fully and legally binding on a Settling Party.

T.      All Releasees who are not Settling Parties are intended third-party beneficiaries who are entitled as of the Final Settlement Date to enforce the terms of the Releases set forth in this Settlement Agreement.

Agreed to as of this 30th day of July, 2024.

_Jacob A. Goldberg_
Jacob A. Goldberg
Leah Heifetz-Li
The Rosen Law Firm, P.A.
101 Greenwood Avenue
Suite 440
Jenkintown, PA  19046
(215) 600-2817
jgoldberg@rosenlegal.com
lheifetz@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the*
Settlement *Class*

Joel T. Faxon
Brittany S. Cates
Faxon Law Group, LLC
59 Elm Street #3
New Haven, CT  06510
(203) 624-9500
jfaxon@faxonlawgroup.com
bcates@faxonlawgroup.com

*Liaison Counsel for Lead Plaintiff and the*
Settlement *Class*

Brian Schall
Schall Law Firm
2049 Century Park E #2460
Los Angeles, CA  90067
(310) 301-3335
brian@schallfirm.com

*Additional Counsel*

_Jonathan Richman_
Jonathan E. Richman
Julia D. Alonzo
Proskauer Rose LLP
Eleven Times Square
New York, New York  10036-8299
(212) 969-3000
jerichman@proskauer.com
jalonzo@proskauer.com

*Counsel for Defendants*

## **EXHIBITS**

A:    Preliminary Approval Order

B:    Approval Order

C:    Judgment

D:    Postcard Notice

E.    Long Notice

F:    Summary Notice

G:    Claim Form

H:    Confidentiality Agreement

EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ALBERT GUTKNECHT,** individually and on behalf of all others similarly situated,<br><br>**Plaintiff,**<br><br>v.<br><br>**THE LOVESAC COMPANY,** *et al.*,<br><br>**Defendants.** | **No. 3:23-cv-01640-KAD** |

## [PROPOSED] ORDER PRELIMINARILY APPROVING PROPOSED SETTLEMENT

WHEREAS Lead Plaintiff Susan Cooke Peña, on behalf of herself and the Settlement Class (as defined below), and Defendants The Lovesac Company, Shawn Nelson, and Donna Dellomo have entered into a Settlement Agreement, which, if approved by the Court, would settle all Claims[1] that have been, could have been, or could be asserted in this Action; and

WHEREAS Lead Plaintiff filed a motion pursuant to Fed. R. Civ. P. 23(e)(1) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA") asking the Court to approve the proposed Settlement preliminarily, direct that notice of the proposed Settlement be provided to potential Settlement Class Members, and schedule a hearing to consider final approval of the proposed Settlement; and

WHEREAS Lead Plaintiff attached to the motion the Settlement Agreement, including its annexed exhibits; and

---

[1]     Capitalized terms used herein have the same meanings as defined in the Settlement Agreement dated as of July 30, 2024.

WHEREAS the Court has read and considered the Settlement Agreement and the Settling Parties' submissions, and finding that substantial and sufficient grounds exist for entering this Order; and the Settling Parties having consented to the entry of this Order; and

WHEREAS the proposed Settlement is subject to the Court's final approval at the Fairness Hearing to be held as discussed below;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1.      **Preliminary Findings on Proposed Settlement.**  The Court hereby finds, pursuant to Rule 23(e)(1)(B)(i) of the Federal Rules of Civil Procedure, that it will likely be able to finally approve the proposed Settlement evidenced by the Settlement Agreement as fair, reasonable, and adequate to the Settlement Class under Rule 23(e)(2), and thus the proposed Settlement is sufficiently fair, reasonable, and adequate to warrant providing notice of it to the Settlement Class and scheduling a Fairness Hearing for further review of the proposed Settlement.  In making these findings, the Court considered a number of factors, including the nature of the Settling Parties' respective claims and defenses, the potential damages available if Lead Plaintiff were to prevail on her claims, the amount of consideration to be paid in settlement, the information available to the Settling Parties, and the proposed allocation of the settlement relief.  Based on those considerations, the Court preliminarily concludes that (*i*) the proposed Settlement resulted from serious, informed, non-collusive negotiations conducted at arm's length by the Settling Parties and their counsel and appears likely to be approved, and (*ii*) the terms and conditions of the Settlement Agreement do not have any obvious deficiencies and do not improperly grant preferential treatment to any individual Settlement Class Members.

2.    **Proposed Certification of Settlement Class Solely for Settlement Purposes.**
Solely for purposes of the proposed Settlement, the Settling Parties have stipulated to the
certification of the following Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3):  all persons
and entities who purchased or otherwise acquired Lovesac common stock during the period from
June 8, 2022, through August 16, 2023, inclusive.  Excluded from the Settlement Class are:

        a.    such persons or entities who submit valid and timely requests for exclusion
from the Settlement Class;

        b.    such persons or entities who, while represented by counsel, settled an actual
or threatened lawsuit or other proceeding against one or more of the Releasees arising out of or
related to the Released Class Claims; and

        c.    Lovesac and (*i*) all officers and directors of Lovesac during the Class Period
(including Shawn Nelson and Donna Dellomo), (*ii*) Lovesac's Affiliates, subsidiaries, successors,
and predecessors, (*iii*) any entity in which Lovesac or any other Defendant has or had during the
Class Period a Controlling Interest, and (*iv*) for the individuals identified in subpart(s) (*i*), (*ii*),
and/or (*iii*), their Family Members, legal representatives, heirs, successors, and assigns.

3.    **Class Findings.**  The Court finds, pursuant to Rule 23(e)(1)(B)(ii) of the Federal
Rules of Civil Procedure, that it will likely be able to certify the Settlement Class solely for
purposes of the proposed Settlement.  Specifically, the Court finds that, preliminarily and for
purposes of this Settlement only, the prerequisites for a class action under Rules 23(a) and 23(b)(3)
of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of Settlement
Class Members is so numerous that joinder of all members of the Settlement Class is impracticable;
(b) there are questions of law and fact common to the Settlement Class; (c) Lead Plaintiff's claims
are typical of the claims of the Settlement Class she seeks to represent; (d) Lead Plaintiff fairly

and adequately represents the interests of the Settlement Class; (e) questions of law and fact common to the Settlement Class predominate over any questions affecting only individual members of the Settlement Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the Action.

4.     **Preliminary Certification of Settlement Class for Settlement Purposes.**  Based on the above findings, the Court preliminarily certifies the Settlement Class solely for purposes of the proposed Settlement pursuant to Fed. R. Civ. P. 23(b)(3).  This preliminary certification is made for the sole purpose of the potential consummation of the proposed settlement of the Action in accordance with the Settlement Agreement.  If the Court does not grant final approval of the proposed Settlement, or if the Court's approval of the Settlement does not become Final for any reason whatsoever or is modified in any material respect that is unacceptable to a Settling Party, this preliminary class certification shall be deemed void *ab initio*, shall be of no force or effect whatsoever, and shall not be referred to or used for any purpose whatsoever, including in any later attempt by or on behalf of Lead Plaintiff or anyone else to seek class certification in this or any other matter arising out of the facts and circumstances that give rise to the Action.

5.     **Preliminary Certification of Lead Plaintiff as Settlement Class Representative and Appointment of Lead Counsel for Settlement Purposes.**  Pursuant to Rule 23(e)(1)(B)(ii) of the Federal Rules of Civil Procedure, preliminarily and for the purposes of this Settlement only, the Court also certifies Lead Plaintiff as the class representative on behalf of the Settlement Class ("Class Representative") and Lead Counsel, previously selected by Lead Plaintiff and appointed by the Court, as Lead Counsel for the Settlement Class.

6.     Lead Counsel has the authority to enter into the proposed Settlement on behalf of the Settlement Class and is authorized to act on behalf of the Settlement Class Members as to all

acts or consents that are required by or may be given pursuant to the Settlement Agreement or such other acts as are reasonably necessary to consummate the Settlement.

7.      **Fairness Hearing**.  Pursuant to Fed. R. Civ. P. 23(e), the Court will hold a Fairness Hearing on _____, 202_, at ___ _.m. ET (a date no fewer than one hundred twenty-five (125) calendar days following the Preliminary Approval Date), before the Honorable Kari A. Dooley, United States District Judge for the District of Connecticut, at the United States Courthouse, 915 Lafayette Boulevard, Courtroom 2, Bridgeport, CT 06604.  The Court may approve the proposed Settlement at or after the Fairness Hearing with such modifications as may be consented to by the Settling Parties and without further notice to the Settlement Class.

8.      At the Fairness Hearing, the Court will consider, among other things:

a.      whether the Court should grant final certification of the Action as a class action for settlement purposes and grant final appointment of Lead Plaintiff as class representative and Lead Counsel as counsel for the Settlement Class;

b.      whether the Court should approve the proposed Settlement as fair, reasonable, and adequate;

c.      whether the Court should approve the proposed Plan of Allocation as fair and reasonable;

d.      whether an Approval Order and a Judgment, substantially in the forms attached to the Settlement Agreement as Exhibits B and C, respectively, should be entered dismissing the Action on the merits and with prejudice, and whether the Releases in the Settlement Agreement should be provided to the Releasees and Releasors;

e.    whether the Court should enter a permanent injunction and bar orders as requested in the Settlement Agreement in the forms set out in the Approval Order, which is attached as Exhibit B to the Settlement Agreement;

f.    whether the Court should approve Lead Counsel's application for an Attorneys' Fees and Expenses Award;

g.    whether the Court should approve Lead Plaintiff's application for a PSLRA Award;

h.    Settlement Class Members' objections to the Settlement, if any, whether submitted previously in writing or presented orally at the Fairness Hearing by Settlement Class Members (or by counsel on their behalf), provided that they gave proper notice that they intend to appear at the Fairness Hearing and otherwise comply with the terms of this Order; and

i.    any other matters relating to the approval and implementation of the Settlement Agreement that the Court may deem appropriate.

9.    **<u>Claims Administrator and Escrow Agent</u>.**   For settlement purposes only, Strategic Claims Services is appointed and approved as the Claims Administrator and Escrow Agent to supervise and administer the notice procedures as well as the processing of claims.  The costs incurred by or attributed to the Claims Administrator shall be paid out of the Settlement Amount in the Escrow Account, subject to the terms of the Settlement Agreement.  The Escrow Agent may, at any time after entry of this Order and without further approval from Defendants or the Court, disburse at the direction of Lead Counsel up to $125,000 (one hundred twenty-five thousand dollars) from the Settlement Fund before the Effective Date to pay for notice to potential Settlement Class members and related administrative costs.

10.     **Notice to Settlement Class Members.**  The Court hereby approves, as to form and content, the Postcard Notice, Long Notice, Claim Form, and Summary Notice annexed to the Settlement Agreement as Exhibits D, E, G, and F, respectively.  The Court finds that the Postcard Notice, Long Notice, Claim Form, and Summary Notice will sufficiently inform potential Settlement Class Members of all material elements of the proposed Settlement, of their right to be excluded from the Settlement Class, and of each Settlement Class Member's right and opportunity to object to the proposed Settlement.  The Court further finds that the mailing, emailing, and other distribution of the Postcard Notice, Long Notice, and Claim Form and the publication of the Summary Notice substantially in the manner and form set forth in this Order will meet the requirements of due process, Fed. R. Civ. P. 23, and Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the PSLRA, and any other applicable law, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all persons and entities entitled to such notice.  The Court expressly concludes that use of the Postcard Notice satisfies the requirements of due process, Fed. R. Civ. P. 23, the PSLRA, and any other applicable law because the Postcard Notice includes the key elements required by the PSLRA (15 U.S.C. § 78u-4(a)(7)) and because, in the particular circumstances of this Settlement, the cost of mailing a longer notice (such as the Long Notice) to each potential Settlement Class Member would unduly erode the Settlement Amount.  The Court is aware from the Settling Parties' submissions that numerous other courts have approved the use of postcard notices such as the one proposed here.  No Settlement Class Member will be relieved from the terms and conditions of the Settlement, including the releases provided for therein, based upon the contention or proof that such Settlement Class Member failed to receive actual or adequate notice.

11.     Within five (5) Business Days following the entry of this Order, Lovesac and/or its transfer agent(s), to the extent they have not already done so, shall provide or cause to be provided to the Claims Administrator, at Lovesac's own cost, lists of all persons and entities that purchased Lovesac common stock during the Class Period, so that the Claims Administrator can provide notice to such potential Settlement Class Members.  To the extent practicable, the shareholder lists shall be in electronic form (such as Excel) and shall contain the names and addresses (and email addresses, if available) of all potential Settlement Class Members who can be identified through reasonable efforts from Lovesac's and/or its transfer agents' records.

12.     By no later than the Notice Date, which date shall be at least sixty (60) calendar days before the deadline for objecting to or opting out of the proposed Settlement as set forth in this Order, the Claims Administrator shall:

a.      Mail, email, or cause to be mailed or emailed the Postcard Notice, substantially in the form annexed to the Settlement Agreement as Exhibit D, by first-class mail, postage prepaid, or by email, to all potential Settlement Class Members known to Lead Counsel or the Claims Administrator as of that date, at the addresses set forth in the records that Lovesac provided or caused to be provided or otherwise known to the Claims Administrator, and

b.      Notify Nominees about the proposed Settlement so that the Nominees can either mail or email Postcard Notices to beneficial owners who are potential Settlement Class Members or provide the names of those beneficial owners to the Claims Administrator, which will then mail or email Postcard Notices to those potential Settlement Class Members, as more fully provided in paragraph 17 below.

13.     Lead Counsel, through the Claims Administrator, shall cause the Summary Notice to be published once over a newswire that distributes nationally in the United States (*e.g.*, *GlobeNewswire*, *PR Newswire*) within ten (10) calendar days after the Notice Date.

14.     The Claims Administrator shall also cause copies of the Long Notice and Claim Form (collectively, the "Notice Packet") to be mailed or emailed promptly to persons who request copies of the Notice Packet and who assert, in response to the Postcard Notice, Summary Notice, or otherwise, that they are potential Settlement Class Members.

15.     If any Postcard Notices or Notice Packets are returned to the Claims Administrator with updated addresses, or if updated addresses are otherwise reasonably available, the Claims Administrator shall promptly remail or re-email such Postcard Notices or Notice Packets to the updated addresses.

16.     The Claims Administrator shall cause a website to be established so that potential Settlement Class Members can find information relating to the Action and the proposed Settlement.  The website shall contain, among other things, copies of (*i*) the Postcard Notice and the Long Notice, including the Plan of Allocation, (*ii*) the Claim Form, (*iii*) the Summary Notice, (*iv*) the Settlement Agreement (including the exhibits), (*v*) motions for approval of the proposed Settlement, and any responsive papers, (*vi*) Lead Counsel's motion for an Attorneys' Fees and Expenses Award, and any responsive papers, (*vii*) Lead Plaintiff's motion for a PSLRA Award, and any responsive papers, (*viii*) the Complaint, (*ix*) this Order and any subsequent Orders concerning the proposed Settlement and the Fairness Hearing, and (*x*) such other materials as Lead Counsel determines should be posted.  The Claims Administrator shall post at least the Long Notice and the Claim Form on the website by no later than the Notice Date.

17.    **Nominee Procedures.**  Within seven (7) calendar days after receipt of notice of the proposed Settlement by Postcard Notice or Long Notice (whichever is earlier), Nominees who purchased or otherwise acquired Lovesac Securities during the Class Period for the benefit of another person or entity shall either (*i*) request from the Claims Administrator additional copies of the Postcard Notice for distribution to those beneficial owners or (*ii*) send a list of the names and addresses (and email addresses, if available) of such beneficial owners to the Claims Administrator.  If a Nominee elects to send Postcard Notices to beneficial owners, such Nominee shall send the Postcard Notices by first-class mail or email within seven (7) calendar days after receiving copies of those documents from the Claims Administrator.  Upon making such mailing or emailing, the Nominee shall send a statement to the Claims Administrator confirming that the mailing or emailing was done as directed, and the Nominee shall retain the list of names and addresses for use in connection with any possible future notice to the Settlement Class.  Upon full compliance with this Order, including the timely mailing or emailing of the Postcard Notice to beneficial owners if the Nominee undertakes that responsibility, such Nominee may seek reimbursement of its reasonable expenses actually incurred in complying with this Order, up to either (*x*) $0.03 per Postcard Notice actually mailed or emailed plus postage for mailings at the rate used by the Claims Administrator or (*y*) $0.03 per name, address, and email address provided to the Claims Administrator.  Nominees may claim such reimbursement by providing the Claims Administrator with proper documentation supporting the reasonable expenses for which reimbursement is sought and reflecting compliance with these instructions, including timely mailing or emailing of the Postcard Notice if applicable.  Such properly documented reasonable expenses incurred by Nominees in compliance with the terms of this Order shall be treated as Notice and Administrative Expenses and paid consistent with paragraph 9 above and paragraph 21

10

below.  The Court will review and decide any disputes as to the reasonableness or documentation of expenses for which Nominees seek reimbursement.

18.  **CAFA Notice.**  As provided in the Settlement Agreement, Defendants shall serve any notice required under the Class Action Fairness Act, 28 U.S.C. §§ 1715 *et seq.* ("CAFA"), no later than ten (10) calendar days after the Settlement Agreement has been filed with the Court. Lovesac shall be solely responsible for the costs of the CAFA notice and administering the CAFA notice.  No later than seven (7) calendar days before the Fairness Hearing, Defendants shall cause to be served on Lead Counsel and filed with the Court proof, by affidavit or declaration, regarding compliance with 28 U.S.C. § 1715(b).

19.  The Settling Parties and their counsel may by agreement effect any amendments to or modifications of the proposed Postcard Notice, Long Notice, Summary Notice, Claim Form, and Plan of Allocation without notice to or approval by the Court if such changes are not materially inconsistent with this Order and do not materially limit the rights of potential Settlement Class Members.

20.  At least seven (7) calendar days before the Fairness Hearing, Lead Counsel and/or the Claims Administrator shall serve and file with the Court proof by affidavit or declaration of the mailing or emailing of the Postcard Notice, the publication of the Summary Notice, and the posting of the various materials on the Claims Administrator's website, all as required by this Order.

21.  **Notice and Administrative Expenses and Taxes.**  Without further order of the Court, (*i*) as set out above, Notice and Administrative Expenses (other than the CAFA notice expenses) will be paid, consistent with the terms of the Settlement Agreement, out of the Escrow Account, and (*ii*) Lead Counsel or its agents are authorized and directed to prepare any tax returns

required to be filed on behalf of or concerning the Settlement Amount and other monies in the Escrow Account, to cause any Tax Expenses due and owing to be paid from the funds in the Escrow Account, and to otherwise perform all obligations as to Tax Expenses and any reporting or filings relating to them as contemplated by the Settlement Agreement.

22.    **Filing of Claims.**  To be entitled to participate in recovery from the Net Settlement Amount, each Settlement Class Member shall take the following actions and be subject to the following conditions:

a.    A properly completed and executed Claim Form must be submitted to the Claims Administrator: (a) electronically through the Claims Administrator's website, www.strategicclaims.net, by 11:59 p.m. EST on _____, 202_; or (b) at the Post Office Box given in the Notice, postmarked no later than _____, 202_.  Such deadline (which shall be thirty (30) calendar days before the date initially scheduled for the Fairness Hearing) may be further extended by Order of the Court.  Each Claim Form shall be deemed to have been submitted when (a) the claimant receives a confirmation notice from Strategic Claims Services for electronic submissions or (b) legibly postmarked (if properly addressed and mailed by first-class mail), provided such Claim Form is actually received before the filing of a motion for an Order of the Court approving distribution of the Net Settlement Fund.  Any Claim Form submitted in any other manner shall be deemed to have been submitted on the date that the Claims Administrator actually receives it at the address designated in the Notice.

b.    The Claim Form submitted by each Settlement Class Member must satisfy the following conditions:  (*i*) it must be properly filled out, signed, and submitted in a timely manner in accordance with the provisions of the preceding subparagraph; (*ii*) it must be accompanied by adequate supporting documentation for the reported transactions, in the form of

12

broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip, or such other documentation that the Claims Administrator or Lead Counsel deems adequate; (*iii*) if the person executing the Claim Form is acting in a representative capacity, such person must provide with the Claim Form a certification of his, her, or its current authority to act on behalf of the Settlement Class Member; and (*iv*) the Claim Form must be complete and contain no material deletions or modifications of any of the matter printed in the form and must be signed under penalty of perjury.

c.       Upon receipt of a timely submitted Claim Form, the Claims Administrator shall determine whether such claim is valid, deficient, or rejected.  For each claim determined to be either deficient or rejected, the Claims Administrator shall send a deficiency or rejection letter, as appropriate, describing the basis for the determination and giving the claimant an opportunity to remedy any potentially curable deficiencies.  Claimants who timely submit Claim Forms that are deficient or otherwise rejected shall be afforded a reasonable time to cure any deficiency that appears to be potentially curable.  If any Claimant whose claim has been rejected in whole or in part wishes to contest such rejection, the Claimant must, within twenty (20) calendar days after the date of mailing of the rejection notice, serve upon the Claims Administrator a notice and statement providing the Claimant's reasons for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If an issue concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

d.       All claimants shall submit to the jurisdiction of the Court for all matters concerning the filing of and determinations concerning their Claim Forms.  No discovery shall be allowed on the merits of the Action or the Settlement in connection with processing of Claim Forms.

23. **Exclusion from Settlement Class.**  All potential Settlement Class Members who wish to exclude themselves from the Settlement Class must submit timely, written requests for exclusion to the Claims Administrator at the address set out in the Postcard Notice and Long Notice.  The exclusion request must include the following information:  (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) e-mail address, if available, (*v*) a statement that the potential Settlement Class Member wishes to request exclusion from the Settlement Class in *Gutknecht v. The Lovesac Company*, No. 3:23-cv-01640-KAD (D. Conn.), (*vi*) the number of shares of Lovesac Securities held as of opening of trading on June 8, 2022, and purchased or otherwise acquired and/or sold during the Class Period, (*vii*) price(s) paid or value at receipt, and, if sold, the sales price(s), (*viii*) the date of each such transaction involving each such security, and (*ix*) the signature of the person or entity requesting exclusion or of an authorized representative.

24. To be valid, any request for exclusion must be in writing, must contain all the information required by this Order, and must be received by the Claims Administrator no later than thirty-five (35) calendar days before the date of the Fairness Hearing as initially set by the Court in this Order.

25. If the proposed Settlement is approved, any potential Settlement Class Member who has not filed a timely and valid written request for exclusion from the Settlement Class (and all Releasors related to each such Settlement Class Member) shall be bound by the Releases in the Settlement Agreement and by all proceedings, orders, and judgments in the Action, whether favorable or unfavorable, even if he, she, or it has pending or subsequently initiates any litigation, arbitration, or other proceeding, or has any other Claim, against any or all of the Releasees relating to any of the Released Class Claims.

14

26.     At or before the Fairness Hearing, the Settling Parties shall provide to the Court a list of the persons and entities, if any, who have validly and timely requested exclusion from the Settlement Class.  Persons requesting exclusion from the Settlement Class shall not be entitled to receive any payment in connection with the proposed Settlement.

27.     **Objections.**  Any Settlement Class Member who has not filed a request for exclusion from the Settlement Class and who wishes to object to the fairness, reasonableness, or adequacy of the proposed Settlement, including to any terms of the Settlement Agreement, to the Plan of Allocation, and/or to the applications for an Attorneys' Fees and Expenses Award and/or a PSLRA Award, must serve on Lead Counsel and Defendants' Counsel and file with the Court a statement of his, her, or its objection(s), as well as the specific reason(s), if any, for each such objection, including any legal support the Settlement Class Member wishes to bring to the Court's attention and any evidence the Settlement Class Member wishes to introduce in support of such objection, and shall state whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class.

28.     Each objection must include the name and docket number of this case (as set out at the top of this Order) and, in addition to the reason(s) for the objection, must also include the following information about the Settlement Class Member:  (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) e-mail address, if available, (*v*) number of shares of Lovesac Securities held as of opening of trading on June 8, 2022, and purchased or otherwise acquired and/or sold during the Class Period, (*vi*) price(s) paid or value at receipt, and, if sold, the sales price(s), (*vii*) the date of each such transaction involving each such security, and (*viii*) account statements verifying all such transactions.

29.     All such objections must be received by the Court and by Lead Counsel and Defendants' Counsel by no later than thirty-five (35) calendar days before the date of the Fairness Hearing as initially set out by the Court in this Order.  Objections must be (*i*) sent or delivered to the following addresses:

      a.     The Court:

            Clerk of Court
            United States District Court for the District of Connecticut
            United States Courthouse
            915 Lafayette Boulevard
            Bridgeport, CT  06604

      b.     Lead Counsel:

            Jacob A. Greenberg, Esq.
            Leah Heifetz-Li, Esq.
            The Rosen Law Firm, P.A.
            101 Greenwood Avenue, Suite 440
            Jenkintown, Pennsylvania  19046

      c.     Defendants' Counsel:

            Jonathan E. Richman, Esq.
            Julia D. Alonzo, Esq.
            Proskauer Rose LLP
            11 Times Square
            New York, NY  10036-8299

***and***     (*ii*)     emailed     to     jgoldberg@rosenlegal.com,     lheifetz@rosenlegal.com, jerichman@proskauer.com, and jalonzo@proskauer.com.

30.     If a Settlement Class Member hires an attorney (at his, her, or its own expense) to represent him, her, or it for purposes of objecting, such attorney must serve a notice of appearance on Lead Counsel and Defendants' Counsel and file it with the Court (at the addresses set out above) so that it is received by no later than thirty-five (35) calendar days before the date of the Fairness Hearing as initially set by the Court in this Order.

31.     Any Settlement Class Member who does not make an objection in the time and manner specified in the Postcard Notice and Long Notice and this Order shall be deemed to have waived such objection, shall be bound by the terms of the Settlement Agreement and the Approval Order and Judgment, and shall be foreclosed forever from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement, unless otherwise allowed by the Court.

32.     Potential Settlement Class Members who exclude themselves from the proposed Settlement and the Settlement Class are not entitled to object to the proposed Settlement.

33.     **<u>Appearance at the Fairness Hearing</u>.**  Any Settlement Class Member may appear at the Fairness Hearing either directly or through counsel retained at the Settlement Class Member's expense to address the fairness, reasonableness, or adequacy of any aspect of the proposed Settlement.  Settlement Class Members or their attorneys intending to appear at the Fairness Hearing must serve a notice of intention to appear, setting forth, among other things, the name, address, telephone number, and e-mail address (if available) of the Settlement Class Member (and, if applicable, of the Settlement Class Member's attorney).  Such notice of intention to appear must be served on Lead Counsel and Defendants' Counsel and filed with the Court (at the addresses set out in paragraph 29 above) so that it is received by no later than thirty-five (35) calendar days before the date of the Fairness Hearing as initially set by the Court in this Order. Any Settlement Class Member (or attorney) who does not timely file and serve a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the Fairness Hearing, except for good cause shown.  It is within the Court's discretion to allow appearances at the Fairness Hearing in person, by telephone, or by videoconference.

34.     Any Settlement Class Member who wishes to appear at the Fairness Hearing in order to object to the proposed Settlement, proposed Plan of Allocation, Attorneys' Fee and

Expense Application, and/or PSLRA Award Application must also comply with the provisions of paragraphs 27 through 33 above. Only those Settlement Class Members who have filed and served a written objection in accordance with those provisions may appear at the Fairness Hearing, either directly or through their own counsel.

35. **Preliminary Injunction.** Pending final determination of whether the proposed Settlement should be approved, the Court orders as follows:

a. Lead Plaintiff and all other Settlement Class Members (and their attorneys, accountants, agents, heirs, executors, administrators, trustees, predecessors, successors, Affiliates, representatives, and assigns) who have not validly and timely requested exclusion from the Settlement Class – and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities – are preliminarily enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefit or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention in the Action if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating to the Released Class Claims;

b. All persons and entities are preliminarily enjoined from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) or other proceeding on behalf of any Settlement Class Members as to the Releasees, if such other lawsuit is based on or related to the Released Class Claims; and

c.      All Releasees, and anyone purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities, are preliminarily enjoined from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to the Released Releasees' Claims.

36.      **Communications with Settlement Class Members.**  Releasees shall maintain the right to communicate orally and in writing with Lovesac's shareholders (including potential Settlement Class Members) in the normal course of business.  To the extent that any such communications relate to the Action or the proposed Settlement, such communications shall be limited to the following:

a.      Communications between potential Settlement Class Members and those Releasees' representatives whose responsibilities include investor relations;

b.      Communications as may be necessary to implement the terms of the Settlement; and

c.      Such communications as may be made in the conduct of the Releasees' business, including to comply with any applicable regulatory or listing requirements.

37.      **Filing of Papers.**  All papers in support of the proposed Settlement shall be filed and served as set forth below:

a.      Any motions for final approval of the proposed Settlement and Plan of Allocation and/or any motions for an Attorneys' Fees and Expenses Award and/or a PSLRA Award must be filed by no later than forty-two (42) calendar days before the date of the Fairness Hearing as initially set by the Court in this Order.

b.      Any oppositions to any motions for final approval of the proposed Settlement or the Plan of Allocation, and/or for an Attorneys' Fees and Expenses Award and/or a

19

PSLRA Award, must be filed with the Court and received by Lead Counsel and Defendants' Counsel, at the addresses and email addresses set out in paragraph 29, by no later than thirty-five (35) calendar days before the date of the Fairness Hearing as initially set by the Court in this Order.

        c.     Any reply papers in support of final approval of the proposed Settlement, the Plan of Allocation, and/or an Attorneys' Fees and Expenses Award and/or PSLRA Award, and any responses to objections submitted pursuant to paragraph 27 or oppositions submitted pursuant to paragraph 37.b, must be filed and served by no later than seven (7) calendar days before the date of the Fairness Hearing as initially set by the Court in this Order.

        38.     **Qualified Settlement Fund.**  The Escrow Account, held by Strategic Claims Services (or its appointed agent), into which account the Settlement Amount will be paid shall be considered a Qualified Settlement Fund *in custodia legis* of the Court, in accordance with Treas. Reg. §§ 1.468B-0 through 1.468B-5.  The Court approves the appointment of Strategic Claims Services (or its appointed agent) as Escrow Agent.

        39.     **Confidentiality Agreement.**  The Confidentiality Agreement annexed as Exhibit H to the Stipulation of Settlement is hereby incorporated into this Order, and any breach of the Confidentiality Agreement shall be deemed a breach of a court order.  Pursuant to Fed. R. Evid. 502(d), the Court hereby orders that any disclosures made pursuant to the Confidentiality Agreement shall not constitute a waiver of privilege or other protection in any federal or state proceeding.

        40.     **Termination of Settlement.**  This Order shall become null and void, and shall be without prejudice to the rights of the Settling Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if (*i*) the proposed

Settlement is not finally approved by the Court, or does not become Final, pursuant to the terms of the Settlement Agreement or (*ii*) the proposed Settlement is terminated in accordance with the terms of the Settlement Agreement or does not become effective as required by its terms for any other reason; *provided, however*, that paragraph 39 of this Order (concerning the Confidentiality Agreement) shall remain in effect even if the rest of this Order becomes null and void pursuant to this paragraph 40.  In such event, the Settlement Agreement shall become null and void and of no further force and effect in accordance with its terms, and it shall not be used or referred to for any purpose whatsoever except as set out in Section XV of the Settlement Agreement.

41.     **Use of Order.**  Except as to paragraph 39, this Order shall be of no force or effect if the proposed Settlement does not become Final.  This Order shall not be construed or used as an admission, concession, or declaration by or against the Releasees of any fault, wrongdoing, breach, or liability.  Nor shall this Order be construed or used as an admission, concession, or declaration by or against Lead Plaintiff or any other Settlement Class Member that his, her, or its claims lack merit or that the relief requested in the Complaint is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses or claims that he, she, or it might have.

42.     **Sharing of Papers.**  Lead Counsel and Defendants' Counsel shall promptly furnish each other with copies of any and all objections or written requests for exclusion that come into their possession.

43.     **Potential Continuance of Fairness Hearing.**  The Court reserves the right to adjourn the date of the Fairness Hearing, and any adjournment thereof, without further notice to potential Settlement Class Members.  The Court may decide to hold the Fairness Hearing telephonically or by videoconference without further notice to the Settlement Class.  Any Settlement Class Member (or his, her, or its counsel) who wishes to appear at the Fairness Hearing

21

should consult the Court's calendar and/or the Claims Administrator's website for any change in the date, time, or format of the Fairness Hearing.

44.    **Retention of Jurisdiction.**   The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

SO ORDERED this _____ day of _____, 2024.


_____
The Honorable Kari A. Dooley
United States District Judge

22

**EXHIBIT B**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **ALBERT GUTKNECHT,**<br>**individually and on behalf of all others similarly**<br>**situated,** | **No. 3:23-cv-01640-KAD** |
| **Plaintiff,** | |
| **v.** | |
| **THE LOVESAC COMPANY, *et al.*,** | |
| **Defendants.** | |

**[PROPOSED] ORDER APPROVING**
**CLASS-ACTION SETTLEMENT**

WHEREAS Lead Plaintiff Susan Cooke Peña, on behalf of herself and the Settlement Class (as defined below), and Defendants The Lovesac Company, Shawn Nelson, and Donna Dellomo have entered into a Settlement Agreement to settle the claims asserted in this Action; and

WHEREAS Lead Plaintiff and Defendants have applied to the Court pursuant to Fed. R. Civ. P. 23(e) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for an Order granting final approval of the proposed settlement in accordance with the Settlement Agreement, which sets forth the terms and conditions of the proposed settlement (the "Settlement"); and

WHEREAS, on _____, 2024, the Court entered an Order preliminarily approving the proposed Settlement, preliminarily certifying the Settlement Class for settlement purposes, directing notice to be sent and published to potential Settlement Class Members, and scheduling a hearing (the "Fairness Hearing") to consider whether to approve the proposed Settlement, the proposed Plan of Allocation, Lead Counsel's application for an Attorneys' Fees and Expenses Award, and Lead Plaintiff's application for a PSLRA Award; and

WHEREAS the Court held the Fairness Hearing on _____, 202_ to determine, among other things, (*i*) whether the terms and conditions of the proposed Settlement are fair, reasonable, and adequate and should therefore be approved; (*ii*) whether the Settlement Class should be finally certified for settlement purposes; (*iii*) whether notice to the Settlement Class was implemented pursuant to the Preliminary Approval Order and constituted due and adequate notice to potential Settlement Class Members in accordance with the Federal Rules of Civil Procedure, the PSLRA, the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law; (*iv*) whether to approve the proposed Plan of Allocation; (*v*) whether to enter an order and judgment dismissing the Action on the merits and with prejudice as to Defendants and against all Settlement Class Members, and releasing all the Released Class Claims and Released Releasees' Claims as provided in the Settlement Agreement; (*vi*) whether to enter the requested permanent injunction and bar orders as provided in the Settlement Agreement; (*vii*) whether and in what amount to grant an Attorneys' Fees and Expenses Award to Lead Counsel; and (*viii*) whether and in what amount to grant a PSLRA Award to Lead Plaintiff; and

WHEREAS the Court received submissions and heard argument at the Fairness Hearing;

NOW, THEREFORE, based on the written submissions received before the Fairness Hearing, the arguments at the Fairness Hearing, and the other materials of record in this Action, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

1. **Incorporation of Settlement Documents.** This Order incorporates and makes a part hereof the Settlement Agreement dated as of July 30, 2024, including its defined terms. To the extent capitalized terms are not defined in this Order, this Court adopts and incorporates the definitions set out in the Settlement Agreement.[1]

---

[1]    Select definitions from the Settlement Agreement are set out in the Appendix to this Order.

2.      <u>**Jurisdiction.**</u>  The Court has jurisdiction over the subject matter of the Action, the Lead Plaintiff, and all other Settlement Class Members (as defined below) and has jurisdiction to enter this Order and the Judgment.

3.      <u>**Final Class Certification**</u>.  The Court grants certification of the Settlement Class solely for purposes of the Settlement pursuant to Fed. R. Civ. P. 23(b)(3).  The Settlement Class is defined to consist of all persons and entities who purchased or otherwise acquired Lovesac common stock during the period from June 8, 2022, through August 16, 2023, inclusive.  Excluded from the Settlement Class are:

a.      such persons or entities who submitted valid and timely requests for exclusion from the Settlement Class;

b.      such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against one or more of the Releasees arising out of or related to the Released Class Claims; and

c.      Lovesac and (*i*) all officers and directors of Lovesac during the Class Period (including Shawn Nelson and Donna Dellomo), (*ii*) Lovesac's Affiliates, subsidiaries, successors, and predecessors, (*iii*) any entity in which Lovesac or any other Defendant has or had during the Class Period a Controlling Interest, and (*iv*) for the individuals identified in subpart(s) (*i*), (*ii*), and/or (*iii*), their Family Members, legal representatives, heirs, successors, and assigns.

4.      This certification of the Settlement Class is made for the sole purpose of consummating the Settlement of the Action in accordance with the Settlement Agreement.  If the Court's approval of the settlement does not become Final for any reason whatsoever, or if it is modified in any material respect deemed unacceptable by a Settling Party, this class certification shall be deemed void *ab initio*, shall be of no force or effect whatsoever, and shall not be referred

3

to or used for any purpose whatsoever, including in any later attempt by or on behalf of Lead Plaintiff or anyone else to seek class certification in this or any other matter.

5.     For purposes of the settlement of the Action, and only for those purposes, the Court finds that the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), and any other applicable laws (including the PSLRA), have been satisfied, in that:

    a.     The Settlement Class is ascertainable from business records and/or from objective criteria;

    b.     The Settlement Class is so numerous that joinder of all members would be impractical;

    c.     There are questions of fact and law common to the Settlement Class;

    d.     Lead Plaintiff's claims are typical of those of the other members of the Settlement Class she seeks to represent;

    e.     Lead Plaintiff has been and is capable of fairly and adequately protecting the interests of the members of the Settlement Class, in that (*i*) Lead Plaintiff's interests have been and are consistent with those of the other Settlement Class Members, (*ii*) Lead Counsel has been and is able and qualified to represent the Settlement Class, and (*iii*) Lead Plaintiff and Lead Counsel have fairly and adequately represented the Settlement Class Members in prosecuting this Action and in negotiating and entering into the proposed Settlement;

    f.     Questions of law and fact common to the members of the Settlement Class predominate over any questions affecting only individual members of the Settlement Class; and

    g.     A class action is superior to all other available methods for the fair and efficient resolution of this Action, considering: (*i*) the questions of law and fact pled in the Complaint, (*ii*) the Settlement Class Members' interest in the fairness, reasonableness, and

4

adequacy of the proposed Settlement, (*iii*) the Settlement Class Members' interests in individually controlling the prosecution of separate actions, (*iv*) the impracticability or inefficiency of prosecuting separate actions, (*v*) the extent and nature of any litigation concerning these claims already commenced, and (*vi*) the desirability of concentrating the litigation of the claims in a particular forum.

6.      **Final Certification of Lead Plaintiff and Appointment of Lead Counsel for Settlement Purposes.**  Solely for purposes of the proposed Settlement, the Court hereby confirms its (*i*) certification of Lead Plaintiff as representative of the Settlement Class and (*ii*) appointment of The Rosen Law Firm, P.A., as Lead Counsel for the Settlement Class pursuant to Fed. R. Civ. P. 23(g).

7.      **Notice.**  In accordance with the Court's Preliminary Approval Order, the Court hereby finds that the forms and methods of notifying the Settlement Class of the Settlement and its terms and conditions met the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 21D(a)(7) of the Exchange Act, 15 U.S.C. § 78u-4(a)(7), as amended by the PSLRA; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation, to all persons and entities entitled to such notice.  No Settlement Class Member is relieved from the terms and conditions of the Settlement, including the releases provided for in the Stipulation of Settlement, based upon the contention or proof that such Settlement Class Member failed to receive actual or adequate notice.  A full opportunity has been offered both (*i*) to the Settlement Class Members to object to the proposed Settlement (including the Plan of Allocation, the Attorneys' Fees and Expenses Application, and the PSLRA Award Application) and to participate in the hearing thereon and (*ii*) to potential Settlement Class

5

Members to exclude themselves from the Settlement.  The Court further finds that the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715, were fully discharged.  Thus, it is hereby determined that all Settlement Class Members are bound by this Order and Final Judgment except those persons listed on Exhibit A to this Order and Final Judgment.

8. **<u>Final Settlement Approval</u>.**  The Court finds that the proposed Settlement resulted from serious, informed, non-collusive negotiations conducted at arm's length by the Settling Parties and their experienced counsel and was entered into in good faith.  The terms of the Settlement Agreement do not have any material deficiencies, do not improperly grant preferential treatment to any individual Settlement Class Member, and treat Settlement Class Members equitably relative to each other.  Accordingly, the proposed Settlement as set forth in the Settlement Agreement is hereby fully and finally approved as fair, reasonable, and adequate, consistent and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the PSLRA, and the Rules of the Court, and in the best interests of the Settlement Class Members.

9. The Court hereby finds that the proposed Plan of Allocation is a fair and reasonable method to allocate the Net Settlement Amount among eligible Settlement Class Members.

10. In making these findings and in concluding that the relief provided to the Settlement Class is fair, reasonable, and adequate, the Court considered, among other factors, (*i*) the complexity, expense, and likely duration of the litigation if it were to continue, including the costs, risks, and delay from a potential, trial; (*ii*) the reaction of the potential Settlement Class Members to the proposed Settlement, including the number of exclusion requests and the number of objections; (*iii*) the stage of the proceedings and the amount of materials available to Lead Counsel, including the Due-Diligence Discovery provided to Lead Counsel; (*iv*) Lead Plaintiff's

risks of establishing liability and damages, including the nature of the claims asserted and the strength of Lead Plaintiff's claims and Defendants' defenses as to liability and damages; (*v*) Lead Plaintiff's risks of obtaining certification of a litigation class and of maintaining certification through trial; (*vi*) the ability of Defendants to withstand a greater judgment; (*vii*) the range of reasonableness of the Settlement Amount in light of the best possible recovery; (*viii*) the range of reasonableness of the Settlement Amount to a possible recovery in light of all the attendant risks of litigation; (*ix*) the availability of opt-out rights for potential Settlement Class Members who do not wish to participate in the Settlement; (*x*) the effectiveness of the procedures for processing Settlement Class Members' claims for relief from the Settlement fund and distributing such relief to eligible Settlement Class Members; (*xi*) the terms of the proposed award of attorneys' fees, including the timing of the payment; (*xii*) the terms of the Supplemental Agreement; (*xiii*) the treatment of Settlement Class Members relative to each other; (*xiv*) the experience and views of the Settling Parties' counsel; and (*xv*) the submissions and arguments made by the Settling Parties and any others throughout the proceedings, including at and in connection with the Fairness Hearing.

11.    The Settling Parties are directed to implement and consummate the Settlement Agreement in accordance with its terms and provisions.  The Court approves the documents submitted to the Court in connection with the implementation of the Settlement Agreement.

12.    **Releases.**  Pursuant to this Approval Order and the Judgment, without further action by anyone, and subject to paragraph 15 below, on and after the Final Settlement Date, Lead Plaintiff and all other Settlement Class Members (whether or not a Claim Form has been executed and/or delivered by or on behalf of any such Settlement Class Member), on behalf of themselves and all other Releasors, for good and sufficient consideration, the receipt and adequacy of which

are hereby acknowledged, shall be deemed to have, and by operation of law and of this Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged:

        a.      all Released Class Claims against each and every one of the Releasees;

        b.      all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) the Settlement Agreement or its implementation, (*iii*) the Settlement terms and their implementation, (*iv*) the provision of notice in connection with the proposed Settlement, and/or (*v*) the resolution of any Claim Forms submitted in connection with the Settlement; and

        c.      all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Plaintiff's Counsel or any other counsel representing Lead Plaintiff or any other Settlement Class Member in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its Settlement, except to the extent otherwise specified in the Settlement Agreement.

13.      Pursuant to this Order and the Judgment, without further action by anyone, and subject to paragraph 15 below, on and after the Final Settlement Date, each and every Releasee, including Defendants' Counsel, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of this Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged each and all Releasors, including Lead Counsel, from any and all Released Releasees' Claims, except to the extent otherwise specified in the Settlement Agreement.

8

14.     Pursuant to this Order and the Judgment, without further action by anyone, and subject to paragraph 15 below, on and after the Final Settlement Date, Plaintiff's Counsel and any other counsel representing Lead Plaintiff or any other Settlement Class Member in connection with or related in any manner to the Action, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, and assigns, and any person or entity claiming by, through, or on behalf of any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of this Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged Defendants, Defendants' Counsel, and all other Releasees from any and all Claims that relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) the Settlement Agreement or its implementation, or (*iii*) the Settlement terms and their implementation.

15.     Notwithstanding paragraphs 12 through 14 above, nothing in this Order or in the Judgment shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of the Settlement Agreement, this Order, or the Judgment.

16.     **Permanent Injunction.**  The Court orders as follows:

        a.      Lead Plaintiff and all other Settlement Class Members (and their attorneys, accountants, agents, heirs, executors, administrators, trustees, predecessors, successors, Affiliates, representatives, and assigns) who have not validly and timely requested exclusion from the Settlement Class – and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities – are permanently enjoined from filing, commencing,

prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefit or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention in the Action if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating to the Released Class Claims;

        b.      All persons and entities are permanently enjoined from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) or other proceeding on behalf of any Settlement Class Members as to the Releasees, if such other lawsuit is based on or related to the Released Class Claims; and

        c.      All Releasees, and anyone purporting to act on behalf of, for the benefit of, or derivatively for any such persons or entities, are permanently enjoined from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to Released Releasees' Claims.

17.      Notwithstanding paragraph 16 above, nothing in this Order or in the Judgment shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of the Settlement Agreement, this Order, or the Judgment.

18.      **Contribution Bar Order.** In accordance with 15 U.S.C. § 78u-4(f)(7)(A), any and all Claims for contribution arising out of any Released Class Claim (*i*) by any person or entity against any of the Releasees and (*ii*) by any of the Releasees against any person or entity other than as set out in 15 U.S.C. § 78u-4(f)(7)(A)(ii) are hereby permanently barred, extinguished, discharged, satisfied, and unenforceable. Accordingly, without limitation to any of the above,

(*i*) any person or entity is hereby permanently enjoined from commencing, prosecuting, or asserting against any of the Releasees any such Claim for contribution, and (*ii*) the Releasees are hereby permanently enjoined from commencing, prosecuting, or asserting against any person or entity any such Claim for contribution.  In accordance with 15 U.S.C. § 78u-4(f)(7)(B), any Final verdict or judgment that might be obtained by or on behalf of the Settlement Class or a Settlement Class Member against any person or entity for loss for which such person or entity and any Releasee are found to be jointly liable shall be reduced by the greater of (*i*) an amount that corresponds to such Releasee's or Releasees' percentage of responsibility for the loss to the Settlement Class or Settlement Class Member or (*ii*) the amount paid by or on behalf of Defendants to the Settlement Class or Settlement Class Member for common damages, unless the court entering such judgment orders otherwise.

19.    **<u>Complete Bar Order</u>.**  To effectuate the Settlement, the Court hereby enters the following Complete Bar:

a.    Any and all persons and entities are permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any Releasee arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract or for misrepresentation, where the Claim is or arises from a Released Class Claim and the alleged injury to such person or entity arises from that person's or entity's alleged liability to the Settlement Class or any Settlement Class Member, including any Claim in which a person or entity seeks to recover from any of the Releasees (*i*) any amounts that such person or entity has or might become liable to pay to the Settlement Class or any Settlement Class Member and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by the Settlement Class or any Settlement

Class Member.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable, subject to a hearing to be held by the Court, if necessary.  The provisions of this subparagraph are intended to preclude any liability of any of the Releasees to any person or entity for indemnification, contribution, or otherwise on any Claim that is or arises from a Released Class Claim and where the alleged injury to such person or entity arises from that person's or entity's alleged liability to the Settlement Class or any Settlement Class Member; *provided, however,* that, if the Settlement Class or any Settlement Class Member obtains any judgment against any such person or entity based upon, arising out of, or relating to any Released Class Claim for which such person or entity and any of the Releasees are found to be jointly liable, that person or entity shall be entitled to a judgment credit equal to an amount that is the greater of (*i*) an amount that corresponds to such Releasee's or Releasees' percentage of responsibility for the loss to the Settlement Class or Settlement Class Member or (*ii*) the amount paid by or on behalf of Defendants to the Settlement Class or Settlement Class Member for common damages, unless the court entering such judgment orders otherwise.

    b.  Each and every Releasee is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other person or entity (including any other Releasee) arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract and for misrepresentation, where the Claim is or arises from a Released Class Claim and the alleged injury to such Releasee arises from that Releasee's alleged liability to the Settlement Class or any Settlement Class Member, including any Claim in which any Releasee seeks to recover from any person or entity (including another Releasee) (*i*) any amounts that any such Releasee has or might become liable to pay to the Settlement Class or any

Settlement Class Member and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by the Settlement Class or any Settlement Class Member.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable.

c.     Notwithstanding anything stated in the Complete Bar Order, if any person or entity (for purposes of this subparagraph, a "petitioner") commences against any of the Releasees any action either (*i*) asserting a Claim that is or arises from a Released Class Claim and where the alleged injury to such petitioner arises from that petitioner's alleged liability to the Settlement Class or any Settlement Class Member or (*ii*) seeking contribution or indemnity for any liability or expenses incurred in connection with any such Claim, and if such action or Claim is not barred by a court pursuant to this paragraph 19 or is otherwise not barred by the Complete Bar Order, neither the Complete Bar Order nor the Settlement Agreement shall bar Claims by that Releasee against (*i*) such petitioner, (*ii*) any person or entity who is or was controlled by, controlling, or under common control with the petitioner, whose assets or estate are or were controlled, represented, or administered by the petitioner, or as to whose Claims the petitioner has succeeded, and (*iii*) any person or entity that participated with any of the preceding persons or entities described in items (*i*) and/or (*ii*) of this subparagraph in connection with the assertion of the Claim brought against the Releasee(s).

d.     If any term of the Complete Bar Order entered by the Court is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford all of the Releasees the fullest protection permitted by law from any Claim that is based upon, arises out of, or relates to any Released Class Claim.

e.     Nothing in the Contribution Bar Order or Complete Bar Order shall (*i*) expand the release provided by Settlement Class Members and other Releasors to the Releasees

under paragraph 12 above or (*ii*) bar any persons who are excluded from the Settlement Class by definition or by request from asserting any Released Class Claim against any Releasee. Notwithstanding the Complete Bar Order or anything else in the Settlement Agreement, (*i*) nothing shall prevent the Settling Parties from taking such steps as are necessary to enforce the terms of the Settlement Agreement, and (*ii*) nothing shall release, interfere with, limit, or bar the assertion by any Releasee of any Claim for insurance coverage under any insurance, reinsurance, or indemnity policy that provides coverage respecting the conduct and Claims at issue in the Action.

20.     **No Admissions.**  This Order and the Judgment, the Settlement Agreement, the offer of the Settlement Agreement, and compliance with the Judgment and the Settlement Agreement shall not constitute or be construed as an admission by any of the Releasees of any wrongdoing or liability, or by any of the Releasors of any infirmity in Lead Plaintiff's Claims.  This Order, the Judgment, and the Settlement Agreement are to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Complaint and of the Released Class Claims.  In no event shall this Order, the Judgment, the Settlement Agreement, any of their provisions, or any negotiations, statements, or court proceedings relating to their provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or any judicial, administrative, regulatory, or other proceeding, except a proceeding to enforce the Settlement Agreement.  Without limiting the foregoing, this Order, the Judgment, the Settlement Agreement, and any related negotiations, statements, or court proceedings shall not be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession (*i*) of any kind against the Settling Parties or the other Releasees and Releasors in the Action, any other action, or any judicial, administrative, regulatory, or other proceeding or (*ii*) of any liability or wrongdoing whatsoever on the part of any person or entity,

including Defendants, or as a waiver by Defendants of any applicable defense, or (*iii*) by Lead Plaintiff or the Settlement Class of the infirmities of any claims, causes of action, or remedies.

21.     Notwithstanding anything in paragraph 20 above, this Order, the Judgment, and/or the Settlement Agreement may be filed in any action against or by any Releasee to support a defense of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, injunction, full faith and credit, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

22.     **<u>Attorneys' Fees and Expenses Award</u>.**  Plaintiff's Counsel are hereby awarded attorneys' fees in the amount of _____% of the Settlement Amount and expenses in the amount of $_____, plus interest at the same rate and for the same periods as earned by the Settlement Fund (until paid).  Those amounts shall be paid out of the Settlement Fund (as that term is defined in the Settlement Agreement) pursuant to the terms set out in Section X of the Settlement Agreement.  The Court finds that the Attorneys' Fees and Expenses Award is fair, reasonable, and appropriate.

23.     In making this award of attorneys' fees and reimbursement of expenses, the Court has considered and found that:  (a) the Settlement has created a fund of $615,000 that has been paid into escrow pursuant to the terms of the Settlement and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement; (b) the fee sought by Lead Counsel has been reviewed and approved as fair and reasonable by Lead Plaintiff; (c) copies of the Postcard Notice, which were sent to all potential Settlement Class Members who could be identified with reasonable effort, as well as the Long Notice, which was available to any potential Settlement Class Member by request or on the Settlement website, stated that Lead Counsel would apply for attorneys' fees in an amount not to exceed one-third of the Settlement

15

Fund and reimbursement of litigation expenses in an amount not to exceed $45,000; (d) Plaintiff's Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy; (e) the Action raised complex issues; (f) the Action presented significant risks to establishing liability and damages; and (g) the amount of attorneys' fees and expenses is fair and reasonable and consistent with awards in similar cases.

24.    **PSLRA Award.**  The Court finds that the requested PSLRA Award of $_____ to the Lead Plaintiff is reasonable in the circumstances.  This amount shall be paid out of the Settlement Fund pursuant to the terms set out in Section XI of the Settlement Agreement.

25.    **Modification of Settlement Agreement.**  Without further approval from the Court, the Settling Parties are hereby authorized to agree to and adopt such amendments, modifications, and expansions of the Settlement Agreement (including its exhibits) that (*i*) are not materially inconsistent with this Order and the Judgment and (*ii*) do not materially limit the rights of Settlement Class Members under the Settlement Agreement.

26.    **Dismissal of Action.**  The Action, including all Claims that have been asserted, is hereby dismissed on the merits and with prejudice, without fees or costs to any Settling Party except as otherwise provided in the Settlement Agreement.

27.    **Retention of Jurisdiction.**  Without in any way affecting the finality of this Order and the Judgment, the Court expressly retains continuing and exclusive jurisdiction over the Settlement and all Settling Parties, the Settlement Class Members, and anyone else who appeared before this Court for all matters relating to the Action, including the administration, consummation, interpretation, implementation, or enforcement of the Settlement Agreement or of this Order and the Judgment, and for any other reasonably necessary purposes, including:

a. enforcing the terms and conditions of the Settlement Agreement, this Order, and the Judgment (including the Complete Bar Order, the PSLRA Contribution Bar Order, and the permanent injunction);

b. resolving any disputes, claims, or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order, or the Judgment (including whether a person or entity is or is not a Settlement Class Member and whether Claims or causes of action allegedly related to the Released Class Claims are or are not barred by this Order and the Judgment or the Release);

c. entering such additional orders as may be necessary or appropriate to protect or effectuate this Order and the Judgment, including whether to impose a bond on any parties who appeal from this Order or the Judgment; and

d. entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction.

28. **Rule 11 Findings.** The Court finds that all complaints filed in the Action were filed on a good-faith basis in accordance with the PSLRA and with Rule 11 of the Federal Rules of Civil Procedure. The Court finds that all Settling Parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

29. **Termination.** If the Settlement does not become Final in accordance with the terms of the Settlement Agreement, or is terminated pursuant to the Settlement Agreement (including pursuant to Section XIV), this Order and the Judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement; *provided, however,* that paragraph 39 of the Preliminary Approval Order (concerning the Confidentiality Agreement) shall remain in effect even if this Order and the Judgment are rendered null and void.

30.    **Entry of Judgment**.  There is no just reason to delay the entry of this Order and the Judgment, and immediate entry by the Clerk of Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  Any appeal from this Order or other proceeding seeking subsequent judicial review of this Order pertaining solely to (*i*) the attorneys' fees or expenses awarded to Plaintiff's Counsel or the PSLRA Award to Lead Plaintiff and/or (*ii*) the Plan of Allocation shall not in any way delay or preclude this Order from becoming Final under the terms of the Settlement Agreement.

SO ORDERED this _____ day of _____, 202_.


_____
The Honorable Kari A. Dooley
United States District Judge

18

EXHIBIT B – Appendix A

**APPENDIX OF SELECTED SETTLEMENT DEFINITIONS**

"**Action**" means the securities class action now pending in this Court and captioned *Gutknecht v. The Lovesac Company*, Case No. 3:23-cv-01640-KAD (D. Conn.).

"**Lovesac Affiliate**" means any Affiliate, holding company, or subsidiary of Lovesac, and any other person or entity affiliated with Lovesac through direct or indirect ownership of Lovesac shares.

"**Lovesac Securities**" means common stock issued by Lovesac.

"**Operative Facts**" means those facts and circumstances that provide the factual predicate for the claims asserted in the Action and shall include the following to the extent they provide the bases for the claims asserted in the Action:

a.    financial reporting and conformance (or alleged nonconformance) with GAAP, including in connection with accounting for costs of shipping and handling expenses (including last-mile freight expenses), accounting for leases, recognition of revenue, accounting for inventory and costs of goods sold, income taxes, and classification of cash flows and balance-sheet assets;

b.    statements or reports of gross profit, operating income, receivables, net sales, rebates, inventory, equity-based compensation expenses, current and deferred income taxes, net income, net income per diluted share, current assets, total assets, current liabilities, total liabilities, stockholder equity (including earnings per share), and cash flows;

c.    internal controls over accounting, financial reporting, and disclosures, including any risk warnings relating to those controls;

d.    information technology general controls in the area of user access, including any statements about the remediation of such controls;

APP-1

e.      information technology general controls in the area of segregation of duties to information technology systems that support financial reporting, including any statements about the remediation of such systems;

f.      Lovesac's accounting and finance functions and teams, including the staffing, personnel, turnover, supervision, monitoring, competence, and operations of those functions and teams, and including any alleged problems involving preparation or compiling of financial information, collection of sales information, handling and processing of payables and receivables (including commissions, utility bills, and rents), and closing out books at the end of a period;

g.      any disclosures, statements, representations, communications, or omissions – whether in SEC filings or Sarbanes-Oxley certifications, at industry or investor conferences, or in analyst meetings, earnings calls, or otherwise – about business operations, financial results, revenue recognition, business strategy, pricing, customers' needs, contingencies, legal matters, and internal controls over financial reporting, including any alleged failure to disclose that purported misconduct was materially misstating Lovesac's business, operations, and financial results;

h.      audits or reviews of Lovesac's financial statements, including communications with auditors;

i.      Lovesac's restatement, correction, or revision of previously issued financial statements;

j.      any statements or alleged omissions about the alleged conduct and/or topics described in Sections a-i above;

k.      any alleged inflation or decline in the price of Lovesac Securities during the Class Period that was related to or arose out of the alleged conduct and/or topics described in Sections a.-j above;

l.      any Claims under Exchange Act §§ 10(b) and/or 20(a) and/or SEC Rule 10b-5 arising out of the alleged conduct and/or topics described in Sections a-j above during the Class Period;

m.      any Claims related to sales of Lovesac Securities by any Releasees during the Class Period, including any Claims under Exchange Act §§ 10(b), 20(a), or 20A or SEC Rule 10b-5 relating to such sales, to the extent that such Claims are related in any way to the alleged conduct and/or topics described in Sections a-j above; and

n.      Releasees' knowledge or alleged disregard of the purported conduct described in Sections a-j above.

"**Released Class Claims**" means each and every Claim that (*i*) arises from or relates to the Action (including all Claims alleged in the Complaint) and is asserted against the Releasees or (*ii*) could have been or could be asserted against any of the Releasees in connection with or relating directly or indirectly to any of the Operative Facts or any alleged statements about, mischaracterizations of, or omissions concerning them, whether arising under any federal, state, or other statutory or common-law rule or under any foreign law, in any court, tribunal, agency, or other forum, if such Claim arises out of or relates to the purchase or other acquisition of Lovesac Securities, or to any other Investment Decision, during the Class Period; *provided, however*, that the term "Released Class Claims" does not include (and will not release or impair) any claims to enforce this Settlement Agreement.

"**Released Releasees' Claims**" means each and every Claim that has been, could have been, or could be asserted in the Action or in any other proceeding by any Releasee, including Defendants and their successors and assigns, or his, her, or its respective estates, heirs, executors, agents, attorneys (including in-house counsel, outside counsel, and Defendants' Counsel), beneficiaries, accountants, professional advisors, trusts, trustees, administrators, and assigns, against Lead Plaintiff, any other Settlement Class Members, or any of their respective attorneys (including, without limitation, Plaintiff's Counsel), including their successors and assigns, or his, her, its, or their respective estates, heirs, executors, agents, attorneys (including in-house counsel and outside counsel), beneficiaries, accountants, professional advisors, trusts, trustees, administrators, and assigns, and that arises out of or relates in any way to the initiation, prosecution, or settlement of the Action or the implementation of this Settlement Agreement; *provided, however*, that the term "Released Releasees' Claims" shall not include (and will not release or impair) any claims to enforce the Settlement Agreement.

"**Releasee**" means each and every one of, and "Releasees" means all of, (*i*) Lovesac, (*ii*) Lovesac Affiliates, (*iii*) each of Lovesac's and Lovesac Affiliates' current and former officers (including Mr. Nelson and Ms. Dellomo), directors, employees, agents, representatives, any and all in-house counsel and outside counsel (including Defendants' Counsel), advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers, and any entities in which Lovesac or any Lovesac Affiliate has or had a Controlling Interest or that has or had a Controlling Interest in Lovesac or any Lovesac Affiliate, and (*iv*) for each of the foregoing Releasees, (*y*) to the extent the Releasee is an entity, each of its

current and former officers, directors, employees, agents, representatives, any and all in-house counsel and outside counsel (including Defendants' Counsel), advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers, and any entities in which any Releasee has or had a Controlling Interest or that has or had a Controlling Interest in the Releasee and (*z*) to the extent the Releasee is an individual, each of his or her Family Members, estates, heirs, executors, beneficiaries, trusts, trustees, agents, representatives, attorneys, advisors, administrators, accountants, consultants, assigns, assignees, representatives, partners, successors-in-interest, insurance carriers, and reinsurers.

"**Releasor**" means each and every one of, and "Releasors" means all of, (*i*) Lead Plaintiff, (*ii*) all other Settlement Class Members, and (*iii*) for each of the foregoing Releasors, (*y*) to the extent the Releasor is an entity, each of its current and former officers, directors, employees, agents, representatives, any and all in-house counsel and outside counsel, advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers, and any entities in which any Releasor has or had a Controlling Interest or that has or had a Controlling Interest in the Releasor and (*z*) to the extent the Releasor is an individual, each of his or her Family Members, estates, heirs, executors, beneficiaries, trusts, trustees, agents, representatives, attorneys, advisors, administrators, accountants, consultants, assigns, assignees, representatives, partners, successors-in-interest, insurance carriers, and reinsurers.

EXHIBIT C

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ALBERT GUTKNECHT,** individually and on behalf of all others similarly situated, | **No. 3:23-cv-01640-KAD** |
| **Plaintiff,** | |
| **v.** | |
| **THE LOVESAC COMPANY, *et al.*,** | |
| **Defendants.** | |

## [PROPOSED] JUDGMENT

Consistent with the terms of the Order Approving Class-Action Settlement entered on _____ __, 202_ (the "Approval Order), the settlement of this class action on the terms set forth in the parties' Stipulation of Settlement dated as of July 30, 2024, including all exhibits (collectively, the "Settlement Agreement"), is approved as fair, reasonable, and adequate, and consistent with and in compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the Rules of this Court, and any other applicable law, and in the best interests of the Settlement Class Members. Unless otherwise defined in this Judgment, the capitalized terms in the Judgment have the same meaning as in the Settlement Agreement dated as of July 30, 2024.

1.      The Court finally certifies the following Settlement Class for settlement purposes pursuant to Fed. R. Civ. P. 23(b)(3): all persons and entities who purchased or otherwise acquired Lovesac common stock during the period from June 8, 2022, through August 16, 2023. Excluded from the Settlement Class are:

        a.      such persons or entities who submitted valid and timely requests for exclusion from the Settlement Class;

        b.      such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against one or more of the Releasees arising out of or related to the Released Class Claims; and

        c.      Lovesac and (*i*) all officers and directors of Lovesac during the Class Period (including Shawn Nelson and Donna Dellomo), (*ii*) Lovesac's Affiliates, subsidiaries, successors, and predecessors, (*iii*) any entity in which Lovesac or any other Defendant has or had during the Class Period a Controlling Interest, and (*iv*) for the individuals identified in subpart(s) (*i*), (*ii*), and/or (*iii*), their Family Members, legal representatives, heirs, successors, and assigns.

    2.     The notice materials and methodology implemented pursuant to the Court's Preliminary Approval Order entered on _____, 2024 (*i*) constituted the best practicable notice to potential Settlement Class Members, (*ii*) constituted notice that was reasonably calculated, under the circumstances, to apprise potential Settlement Class Members of the pendency of the Action, the effect of the Settlement Agreement (including the Releases), their right to object to the proposed Settlement, and their right to exclude themselves from the Settlement Class, and Settlement Class Members' right to appear at the Fairness Hearing, (*iii*) were reasonable and constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice, and (*iv*) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the PSLRA, the Rules of the Court, and any other applicable law.

3.    The claims in the Action are dismissed on the merits and with prejudice according to the terms of the Settlement Agreement and the Approval Order, without costs to any party except as provided therein.

4.    The release, permanent injunction, PSLRA Contribution Bar, and Complete Bar as set out in the Approval Order shall be effective as to all persons and entities identified in them.

5.    Neither the Approval Order nor this Judgment applies to the persons or entities who submitted timely and valid exclusion requests and are named on the list annexed as Exhibit 1.

6.    Without affecting the extent to which this Judgment and the Approval Order are final for purposes of any appeals, this Court retains continuing and exclusive jurisdiction over the Action as to all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement, the Judgment, and the Approval Order, and for any other reasonably necessary purposes.

7.    JUDGMENT in this Action is hereby entered in accordance with Federal Rule of Civil Procedure 58 this ___ day of _____, 202_.  The Clerk of Court is respectfully directed to mark this case closed.

IT IS SO ORDERED.

_____
The Honorable Kari A. Dooley
United States District Judge

3

*Please read it carefully.*

**[Exhibit D]**
Lovesac Securities Litigation
c/o Strategic Claims Services
600 North Jackson St., Suite 205
Media, PA  19063

PRESORTED
FIRST-CLASS
MAIL U.S.
POSTAGE PAID

**Court-Ordered Legal Notice**
**Forwarding Service Requested**

Case No. 3:23-cv-01640-KAD (D. Conn.)

*Important Notice about a Securities*
*Class Action Settlement*

[NAME 1]
[NAME 2]
[NAME 3]
[ADDRESS 1]
[ADDRESS 2]

*You might be entitled to a*
*payment.*
*This Notice might affect your legal*
*rights.*

*Lovesac Securities Litigation.*, Case No. 3:23-cv-01640-KAD (D. Conn.)
*THIS CARD PROVIDES ONLY LIMITED INFORMATION ABOUT THE SETTLEMENT.*
*VISIT <u>WWW.STRATEGICCLAIMS.NET/LOVESAC</u> OR CALL 1-866-274-4004 FOR MORE INFORMATION.*

The U.S. District Court for the District of Connecticut (the "Court") has preliminarily approved a proposed Settlement of claims against The Lovesac Company ("Lovesac") and two of its present or former officers (collectively, "Defendants"). The proposed Settlement would resolve a securities class action alleging that Defendants made false and/or misleading misstatements and/or omissions concerning Lovesac's financial condition and accounting. Defendants deny the allegations.

You received this notice because you might have purchased or acquired Lovesac common stock between <u>June 8, 2022, and August 16, 2023</u>, inclusive, and you might be a Settlement Class Member. The Settlement provides that, in exchange for the dismissal and release of claims against Defendants, a fund consisting of $615,000, less attorneys' fees and expenses, will be divided among Settlement Class Members who timely submit valid Claim Forms. The average recovery per share could be $.09 before deduction of fees and expenses. The actual amount disbursed to Settlement Class Members who participate in the Settlement might be more or less than that amount. Plaintiff and Defendants disagree as to the amount per share that would be recoverable if Plaintiff prevailed on each claim at trial. Plaintiff believes that the proposed Settlement is fair, reasonable, and in the best interests of the Settlement Class considering the strengths and weaknesses of the claims, the uncertainties and delays of complex litigation, and the concrete benefits provided by the Settlement. Defendants have agreed to settle to avoid the continuing burden and expense of litigation. <u>For a full description of the Settlement and your rights and to make a claim, please read the Stipulation of Settlement and obtain a copy of the Notice</u> of (I) Pendency of Class Action and Proposed Settlement, (II) Settlement Fairness Hearing, and (III) Motion for Attorneys' Fees and Litigation Expenses ("Notice") <u>and Claim Form</u> by visiting www.strategicclaims.net/lovesac (the "Website"). You may request copies of the Notice and Claim Form by: (1) mail to Lovesac Securities Litigation, c/o Strategic Claims Services, P.O. Box 230, 600 North Jackson Street, Suite 205, Media, PA 19063; (2) toll-free telephone call to (866) 274-4004; or (3) email to info@strategicclaims.net.

To qualify for payment, you must <u>submit a Claim Form</u>, which can be found on the Website. CLAIM FORMS ARE DUE BY _____, 202_ , and should be mailed to the Claims Administrator's address above or submitted electronically through the Website. If you do not want to be legally bound by the Settlement, you must <u>exclude yourself</u> by _____, 202_ . If you exclude yourself, you cannot get money from this Settlement or object to it. If you stay in the Settlement, you may <u>object</u> to it by _____, 202_. The Notice explains how to exclude yourself or to object.

*Lovesac Securities Litigation.*, Case No. 3:23-cv-01640-KAD (D. Conn.)
*THIS CARD PROVIDES ONLY LIMITED INFORMATION ABOUT THE SETTLEMENT.*
*VISIT WWW.STRATEGICCLAIMS.NET/LOVESAC OR CALL 1-866-274-4004 FOR MORE INFORMATION.*

The Court will hold a hearing on _____, 202_, at __:00 _.m. ET, at the United States Courthouse, 915 Lafayette Boulevard, Bridgeport, CT 06604, Courtroom 2, to consider whether to approve the Settlement, the Plan of Allocation, a request by Lead Counsel for no more than 33.33% (one-third) of the Settlement Fund for their attorneys' fees, plus up to $45,000 in expenses, and an award to Plaintiff of no more than $3,500 for litigating the case and negotiating the Settlement. The requests for awards of fees and expenses amount to approximately $.04 per affected share. Lead Counsel for the Settlement Class are Jacob Goldberg and Leah Heifetz-Li, of The Rosen Law Firm, P.A., 101 Greenwood Avenue, Suite 440, Jenkintown, PA 19046, (215) 600-2817. You may, but do not have to, attend the hearing and ask to be heard by the Court. The Court reserves the right to hold the Settlement Hearing telephonically or by other virtual means and to change the hearing date. Please check the Website for current information.

145566401v4

**EXHIBIT E**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ALBERT GUTKNECHT, individually and on behalf of all others similarly situated,**<br><br>                                        **Plaintiff,**<br><br>    v.<br><br>**THE LOVESAC COMPANY, *et al.*,**<br><br>                                        **Defendants.** | No. 3:23-cv-01640-KAD |

### NOTICE OF (I) PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT, (II) SETTLEMENT FAIRNESS HEARING, AND (III) MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES

*<u>A federal court authorized this Notice.  This is not a solicitation from a lawyer.</u>*

**This notice is about the proposed settlement of a securities class action against The Lovesac Company.  You might be a member of the settlement class in that lawsuit, and you might be eligible to receive money from the proposed settlement.**

**NOTICE OF PENDENCY OF CLASS ACTION:**  Your rights might be affected by the above-captioned securities class action (the "Action") pending in the United States District Court for the District of Connecticut (the "Court") if you purchased or otherwise acquired common stock of The Lovesac Company ("Lovesac") from June 8, 2022, through August 16, 2023, inclusive (the "Class Period").[1]

**NOTICE OF SETTLEMENT:**  The Court-appointed lead plaintiff, Susan Cooke Peña (the "Lead Plaintiff"), on behalf of herself and the Settlement Class (as defined in ¶ 19 below), has reached a proposed settlement of the Action for $615,000 in cash.

**PLEASE READ THIS NOTICE CAREFULLY.  It explains important rights you might have, including the possible receipt of a payment from the Settlement.  If you are a member of the Settlement Class, your legal rights will be affected whether or not you act.**

If you have any questions about this Notice, the proposed Settlement, or your eligibility to participate in it, please contact Lead Counsel or the Claims Administrator (*see* ¶ 86 below).  DO NOT contact the Court, Lovesac, the other Defendants, or their counsel about those questions.

1.    **<u>Description of the Action and the Settlement Class:</u>**  This Notice concerns a proposed settlement of claims in a pending securities class action brought by investors alleging that Lovesac and certain of its executives (collectively, "Defendants") violated the federal securities laws by

---

[1] All capitalized terms not defined in this Notice have the meanings given to them in the Settlement Agreement dated as of July 30, 2024.   The Settlement Agreement is available at www.strategicclaims.net/lovesac.

making false and misleading statements about Lovesac's financial condition and accounting.  A fuller description of the Action is in ¶¶ 11-18 below.  The proposed Settlement, if approved by the Court, will settle claims of the Settlement Class, as defined in ¶ 19 below.

2.     **Statement of the Settlement Class's Recovery:**  Subject to Court approval, Lead Plaintiff, on behalf of herself and the Settlement Class, has agreed to settle the Action in exchange for $615,000 in cash (the "Settlement Amount").  The "Net Settlement Amount" will be distributed under a Plan of Allocation that the Court approves.  (The Net Settlement Amount is the Settlement Amount plus any interest earned on it (the "Settlement Fund") less (i) any Tax Expenses, (ii) any Notice and Administrative Expenses, and (iii) any attorneys' fees and expenses awarded by the Court, including any award for the costs and expenses of Lead Plaintiff.)  The proposed Plan of Allocation is in ¶¶ 50-70 below.  The Plan of Allocation will determine how the Net Settlement Amount will be distributed to Settlement Class members.

3.     **Estimate of Average Recovery Per Share:**  Based on Lead Plaintiff's damages expert's estimate of the number of shares of Lovesac common stock that were purchased during the Class Period and might have been affected by the conduct alleged in the Action, and assuming all Settlement Class Members elect to participate in the Settlement, the estimated average recovery (before deduction of any Court-approved fees, expenses, and costs as described below) is $.09 per affected share.  If the Court approves the fee and expense applications discussed below, the average recovery would be approximately $.05 per affected share.  Those numbers, however, are only estimates.  Some Settlement Class Members might recover more or less than the estimated amount depending on, among other factors, when and at what prices they purchased or sold their shares, and the total number and value of valid Claim Forms submitted.  Distributions to Settlement Class Members will be made based on the Plan of Allocation (*see* ¶¶ 50-70 below) or such other Plan of Allocation as the Court might order.

4.     **Average Amount of Damages Per Share:**  Lead Plaintiff and Defendants (the "Parties") do not agree on the average amount of damages per share of Lovesac common stock that would be recoverable if Lead Plaintiff were to prevail at trial.  Among other things, Defendants do not agree that they violated the federal securities laws or that any Settlement Class Members suffered any damages from Defendants' alleged conduct.

5.     **Attorneys' Fees and Expenses Sought:**  Plaintiff's Counsel have been prosecuting the Action on a wholly contingent basis and have not yet received any fees for their representation of the Settlement Class.[2]  They also have advanced money to pay expenses necessarily incurred to prosecute this Action.  Lead Counsel will apply to the Court for an award of attorneys' fees for all Plaintiff's Counsel in an amount not to exceed 33.33% (one-third) of the Settlement Fund.  In addition, Lead Counsel will apply for payment of expenses paid or incurred by Plaintiff's Counsel in connection with the institution, prosecution, and resolution of the Action in an amount not to exceed $45,000, and Lead Plaintiff will apply for payment of the reasonable costs and expenses she incurred directly related to her representation of the Settlement Class, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in an amount not to exceed $3,500.  Any fees and expenses that the Court awards to Plaintiff's Counsel and Lead Plaintiff will be paid from the Settlement Fund.  Settlement Class Members will not be personally liable for any such fees or

---

[2] Plaintiff's Counsel include (i) Lead Counsel, The Rosen Law Firm, P.A., (ii) local counsel for Lead Plaintiff and the Settlement Class, Faxon Law Group, LLC, and (iii) additional counsel, Schall Law Firm.

expenses.  The estimated average cost for such fees and expenses, if the Court approves Lead Counsel's fee and expense application and Lead Plaintiff's application for a PSLRA Award, is approximately $.04 per affected share.

6.    **Identification of Attorneys' Representatives:**  Lead Plaintiff and the Settlement Class are represented by Jacob A. Goldberg and Leah Heifetz-Li of The Rosen Law Firm, P.A., 101 Greenwood Avenue, Suite 440, Jenkintown, PA 19046, (215) 600-2817, jgoldberg@rosenlegal.com and lheifetz@rosenlegal.com.

7.    **Reasons for the Settlement:**  Lead Plaintiff's main reason for entering into the Settlement is the substantial, certain, and prompt recovery for the Settlement Class without the risks and delays from further litigation, especially in complex securities actions such as this one.  Moreover, the substantial recovery provided under the Settlement must be considered against the significant risk that a smaller recovery—or perhaps no recovery at all—might be achieved after contested motions, a potential trial of the Action, and the likely appeals that would follow.  That process could last several years.  Defendants, who deny all allegations of wrongdoing, are entering into the Settlement solely to eliminate the uncertainty, burden, and expense of further protracted litigation.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
| --- | --- |
| **SUBMIT A CLAIM FORM ELECTRONICALLY OR BY FIRST-CLASS MAIL *RECEIVED OR POSTMARKED* NO LATER THAN _____, 202_.** | This is the only way to be eligible to receive a payment from the Settlement Fund.  If you are a Settlement Class Member and you remain in the Settlement Class, you will be bound by the Settlement as approved by the Court, and you will give up any Released Class Claims (defined in ¶ 34 below) you have against Defendants and the other Releasees (defined in ¶ 35 below), so it is in your interest to submit a Claim Form. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION THAT IS *RECEIVED* NO LATER THAN _____, 202_.** | If you exclude yourself from the Settlement Class, you will not be eligible to receive any payment from the Settlement Fund, and you will not be able to object to the Settlement.  This is the only option that allows you to ever be part of any other lawsuit against any of the Defendants or the other Releasees concerning the Released Class Claims. |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION THAT IS *RECEIVED* NO LATER THAN _____, 202_.** | If you do not like the proposed Settlement, the proposed Plan of Allocation, the request for attorneys' fees and expenses, or the proposed award to Lead Plaintiff, you may write to the Court and explain why you do not like them.  You cannot object to any of those matters unless you are a Settlement Class Member and do not exclude yourself from the Class. |

| | |
|---|---|
| **GO TO A HEARING ON _____, 202_, AT __:__ __.M., AND FILE A NOTICE OF INTENTION TO APPEAR THAT IS *RECEIVED* NO LATER THAN _____, 202_.** | If you file a written objection and notice of intention to appear by _____, 202_, you may speak in Court, at the Court's discretion, about the fairness of the proposed Settlement, the Plan of Allocation, and/or the request for attorneys' fees and expenses or the award to Lead Plaintiff. However, you do not need to speak at or attend the hearing to have the Court consider your objection.  The Court may change the date of the Fairness Hearing and may also order the Hearing to be held by telephone or videoconference, in which case instructions about date, time, and how to participate will be posted on www.strategicclaims.net/lovesac. |
| **DO NOTHING.** | If you are a member of the Settlement Class and do not submit a valid Claim Form, you will not be eligible to receive any payment from the Settlement Fund.  You will, however, remain a member of the Settlement Class, which means that you will give up your right to sue about the claims that are resolved by the Settlement, and you will be bound by any judgments or orders entered by the Court in the Action. |

## WHAT THIS NOTICE CONTAINS

Why Did I Get This Notice? Page [___]
What Is This Case About? Page [___]
How Do I Know If I Am Affected By The Settlement?
    Who Is Included In The Settlement Class? Page [___]
What Are Lead Plaintiff's Reasons For Settling? Page [___]
What Might Happen Without A Settlement? Page [___]
How Are Settlement Class Members Affected By The Action And The Settlement? Page [___]
How Do I Participate In The Settlement?  What Do I Need To Do? Page [___]
How Much Will My Payment Be? Page [___]
What Payment Are The Attorneys For The Settlement Class Seeking?
    How Will The Lawyers Be Paid? Page [___]
What If I Do Not Want To Be A Member Of The Settlement Class?
    How Do I Exclude Myself? Page [___]
When And Where Will The Court Decide Whether To Approve The
    Settlement?  Do I Have To Participate in The Hearing?  May I Speak At
    The Hearing If I Don't Like The Settlement? Page [___]
What If I Bought Shares On Someone Else's Behalf? Page [___]
Can I See The Court File?  Whom Should I Contact If I Have
    Questions? Page [___]

4

## WHY DID I GET THIS NOTICE?

8.    The Court directed that this Notice be made available to you because you or someone in your family or an investment account for which you serve as a custodian might have purchased or otherwise acquired Lovesac common stock during the Class Period.  You therefore might be a Settlement Class Member in this Action, so you have a right to know your options before the Court rules on the proposed Settlement.  You also have the right to understand how this class action might generally affect your legal rights.  If the Court approves the Settlement and the Plan of Allocation, the Claims Administrator selected by Lead Plaintiff and approved by the Court will make payments pursuant to the Settlement after any objections and appeals are resolved.

9.    This Notice is to inform you of the existence of this case, that it is a class action, how you might be affected, and how to exclude yourself from the Settlement Class if you wish to do so.  It is also designed to inform you of the terms of the proposed Settlement, your right to object to it, and a hearing at which the Court will consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation, Lead Counsel's motion for attorneys' fees and litigation expenses, and Lead Plaintiff's application for an award of costs (the "Fairness Hearing"). *See* ¶¶ 76-78 below for details about the Fairness Hearing.

10.    This Notice does not express the Court's opinion about the merits of the claims in the Action, and the Court has not yet decided whether to approve the Settlement.  If the Court approves the Settlement and a Plan of Allocation, payments to Authorized Claimants will be made after any appeals are resolved and after the completion of all claims processing.  Please be patient, as this process can take some time to complete.

## WHAT IS THIS CASE ABOUT?

11.    Lovesac is a furniture company.  Its common stock trades on the NASDAQ under the symbol "LOVE."  Lead Plaintiff alleges that Defendants made false and misleading statements and material omissions about Lovesac's financial condition and accounting during the Class Period.  At the end of the Class Period, Lovesac announced that investors could no longer rely on its previously issued financial statements for the 2023 fiscal year and the first quarter of the 2024 fiscal year primarily because of the way in which certain expenses had been recorded.  Lovesac also said it was evaluating the impact of the identified accounting errors and expected that the evaluation would likely result in the identification of one or more material weaknesses in its internal controls over financial reporting.  Lead Plaintiff contends that the alleged misstatements or omissions inflated the price of Lovesac common stock during the Class Period and that the stock price declined when the financial and accounting errors were disclosed.  Defendants have denied that any of the alleged conduct supports Lead Plaintiff's claims.

12.    On December 19, 2023, a Lovesac shareholder named Albert Gutknecht filed a class-action complaint in the Court asserting claims under the federal securities laws against Lovesac and two of its present or former executive officers:  Shawn Nelson, Lovesac's Chief Executive Officer, and Donna Dellomo, Lovesac's former Chief Financial Officer.

13.    By Order dated March 11, 2024, the Court appointed Susan Cooke Peña as Lead Plaintiff for the Action and approved her selection of The Rosen Law Firm, P.A., as Lead Counsel.

5

14.   On May 10, 2024, Lead Plaintiff filed and served her Amended Class Action Complaint (the "Complaint").  The Complaint asserts claims against Lovesac, Mr. Nelson, and Ms. Dellomo under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder, and against the individual defendants under Section 20(a) of the Exchange Act.  The Complaint alleges that Defendants made materially false and misleading statements during the Class Period about Lovesac's financial results, accounting (especially as to certain shipping expenses), and internal controls.  In addition, the Complaint charges that the price of Lovesac common stock was artificially inflated during the Class Period because of Defendants' allegedly false and misleading statements and omissions and that the price declined when Lovesac disclosed the accounting errors in August 2023.

15.   Defendants began preparing to move to dismiss the Complaint, and Lead Plaintiff and her counsel conducted further work on the potential damages that Lead Plaintiff and the Settlement Class might recover if they were to prevail on their claims.  While that work was in progress, the Parties started to discuss the possibility of resolving the case without spending further money on litigation, and they reached an agreement in principle to settle the Action.  The Parties executed a Term Sheet on May 29, 2024, setting forth their agreement in principle to settle and release all claims in return for a cash payment by Defendants of $615,000 for the benefit of the Settlement Class.  The agreement was subject to certain terms and conditions, including the execution of a full stipulation of settlement and related papers, Lead Plaintiff's satisfactory completion of Due-Diligence Discovery, and approval by the Court.

16.   On July 30, 2024, the Parties entered into the full Settlement Agreement, which contains the complete terms and conditions of the Settlement.  The Settlement Agreement is available at www.strategicclaims.net/lovesac.  You should read it if you want a full understanding of its terms.

17.   The Settlement Agreement is subject to Lead Plaintiff's completion of Due-Diligence Discovery to confirm the fairness of the Settlement.  Lead Plaintiff can withdraw from and terminate the Settlement before filing her motion in support of final approval of the Settlement if information produced during Due-Diligence Discovery causes her and Lead Counsel reasonably and in good faith to conclude that the proposed Settlement is not fair, reasonable, and adequate.

18.   On _____, 2024, the Court preliminarily approved the proposed Settlement, authorized notice of the Settlement to be given to potential Settlement Class Members, and scheduled the Fairness Hearing to consider whether to grant final approval to the Settlement.

> ## HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT?
> ## WHO IS INCLUDED IN THE SETTLEMENT CLASS?

19.   If you are a member of the Settlement Class, you are subject to the Settlement unless you timely request to be excluded from it.  The Settlement Class consists of:

   all persons and entities who purchased or otherwise acquired Lovesac Securities (meaning common stock) during the period from June 8, 2022, through August 16, 2023, inclusive (the "Class Period").

Excluded from the Settlement Class are:

a.  such persons or entities who submit valid and timely requests for exclusion from the Settlement Class (For information on how to submit a request for exclusion, *see* "What If I Do Not Want To Be A Member Of The Settlement Class?  How Do I Exclude Myself?," in ¶¶ 72-75 below);

b.  such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against one or more of the Releasees (defined below in ¶ 35) arising out of or related to the Released Class Claims (defined below in ¶ 34); and

c.  Lovesac and (*i*) all officers and directors of Lovesac during the Class Period (including Shawn Nelson and Donna Dellomo), (*ii*) Lovesac's Affiliates, subsidiaries, successors, and predecessors, (*iii*) any entity in which Lovesac or any other Defendant has or had during the Class Period a Controlling Interest, and (*iv*) for the individuals identified in subpart(s) (*i*), (*ii*), and/or (*iii*), their Family Members, legal representatives, heirs, successors, and assigns.

PLEASE NOTE:  Receipt of this Notice does *not* necessarily mean that you are a Settlement Class Member or that you will be entitled to a payment from the Settlement.

**If you are a Settlement Class Member and wish to be eligible to receive a payment, you must submit the Claim Form that is available with this Notice, as well as the required supporting documentation described in the Claim Form, *postmarked* no later than _____, 202_.**

| WHAT ARE LEAD PLAINTIFF'S REASONS FOR SETTLING? |
| --- |

20.  Lead Plaintiff and Lead Counsel believe that the claims they asserted have merit.  They recognize, however, the expense and length of continued proceedings necessary to pursue those claims through trial and appeals, as well as the very substantial risks they would face in establishing liability and damages.

21.  First, Lead Plaintiff would face substantial risks from Defendants' anticipated motion to dismiss.  Defendants would argue that, even though Lovesac restated certain of its financial results, the restated amounts were relatively small, and, in any event, the Complaint does not plead any facts creating a strong inference that the individual defendants or any other senior executives at Lovesac actually knew about or recklessly disregarded those errors.  While Lead Plaintiff believes otherwise, she recognizes the meaningful risk that Defendants could persuade the Court to dismiss the Action on the pleadings.

22.  Second, even if Lead Plaintiff survived Defendants' motion to dismiss, and even though Lead Plaintiff believes that the Settlement Class meets the requirements for certification, the class has not yet been certified, and Lead Plaintiff understands there is a risk the Court could deny certification, or could shorten the class period based on issues related to falsity, scienter, and/or loss causation.  If Lead Plaintiff failed to obtain class certification, or if the proposed class period were shortened, the benefit to the Settlement Class would be substantially reduced or eliminated

23.  Third, even if Lead Plaintiff survived Defendants' motion to dismiss and the Court certified the class, she still would face substantial challenges in developing facts to survive summary

7

judgment or establish Defendants' liability at trial.  Lead Plaintiff would face challenges in proving that Defendants' statements about Lovesac's financial results and internal controls were materially false and misleading and that Defendants made those alleged misstatements knowing that they were false or with reckless disregard for their truth or falsity.

24.    Fourth, even if Lead Plaintiff could prove falsity and knowing or reckless misconduct, she would face substantial difficulties in establishing damages, including whether the decline in Lovesac's stock price was statistically significant in light of the stock's normal trading volatility.

25.    Finally, given, among other the things, the extensive discovery necessary to prove the case and the significant expert testimony needed to establish liability, loss causation, and damages, there is no doubt that continued prosecution of this case would have been both time-intensive and costly.

26.    In light of these risks, the amount of the Settlement, and the immediacy of recovery for the Settlement Class, and subject to the satisfactory completion of Due-Diligence Discovery, Lead Plaintiff and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.  Lead Plaintiff and Lead Counsel believe that the Settlement provides a substantial benefit to the Settlement Class, namely $615,000 in cash (plus interest, and less the various deductions described in this Notice), as compared to the risk that the claims in the Action would produce a smaller recovery, or no recovery, after motions to dismiss, summary judgment, trial, and appeals, possibly years in the future.

27.    Defendants deny the claims asserted against them in the Action and deny that the Settlement Class was harmed or suffered any damages from the conduct alleged.  Defendants have agreed to the Settlement solely to eliminate the burden and expense of continued litigation. Accordingly, the Settlement cannot be construed as an admission of any wrongdoing by Defendants.

## WHAT MIGHT HAPPEN WITHOUT A SETTLEMENT?

28.    If there were no Settlement, and if Lead Plaintiff failed to establish any essential legal or factual element of her claims against Defendants, neither Lead Plaintiff nor the other members of the Settlement Class would recover anything from Defendants.  Also, if Defendants were successful in proving any of their defenses at summary judgment, at trial, or on appeal, the Settlement Class could recover substantially less than the amount provided in the Settlement, or nothing at all.

## HOW ARE SETTLEMENT CLASS MEMBERS AFFECTED BY THE ACTION AND THE SETTLEMENT?

29.    As a Settlement Class Member, you are represented by Lead Plaintiff and Lead Counsel unless you enter an appearance through counsel of your own choice at your own expense.  You do not need to retain your own counsel, but, if you choose to do so, your counsel must file a notice of appearance on your behalf and must serve copies of his or her appearance on the attorneys listed in the section entitled "When And Where Will The Court Decide Whether To Approve The Settlement?," in ¶¶ 76-84 below.

30.    If you are a Settlement Class Member and do not wish to remain in the Settlement Class, you may exclude yourself from it by following the instructions in the section entitled "What If I Do Not Want To Be A Member Of The Settlement Class?  How Do I Exclude Myself?," in ¶¶ 72-75 below.

31.    If you are a Settlement Class Member and wish to object to the Settlement, the Plan of Allocation, Lead Counsel's application for attorneys' fees and expenses, or Lead Plaintiff's application for a PSLRA Award, and if you do not exclude yourself from the Settlement Class, you may present your objections by following the instructions in the section entitled "When And Where Will The Court Decide Whether To Approve The Settlement?," in ¶¶ 76-84 below.

32.    If you are a Settlement Class Member and you do not exclude yourself from the Settlement Class, you will be bound by any orders issued by the Court even if you have pending or later file any claim or lawsuit against the Releasees (as defined in ¶ 35 below) relating to the Released Class Claims (as defined in ¶ 34 below).  If the Settlement is approved, the Court will enter a judgment (the "Judgment") and a final approval order (the "Approval Order").  The Judgment and Approval Order will dismiss with prejudice the claims against Defendants and will provide that, upon the Final Settlement Date, Lead Plaintiff and all other Settlement Class Members, on behalf of themselves and their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such ("Releasors"), or any person purporting to assert a Released Class Claim on behalf of, for the benefit of, or derivatively for any such Releasors, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged:

a.    all Released Class Claims (as defined in ¶ 34 below) against each and every one of the Releasees as (defined in ¶ 35 below);

b.    all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (i) the prosecution, defense, or settlement of the Action, (ii) the Settlement Agreement or its implementation, (iii) the Settlement terms and their implementation, (iv) the provision of notice in connection with the proposed Settlement, and/or (v) the resolution of any Claim Forms submitted in connection with the Settlement; and

c.    all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Plaintiff's Counsel or any other counsel representing Lead Plaintiff or any other Settlement Class Member in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its Settlement, except to the extent otherwise specified in the Settlement Agreement.

33.    In addition, the Judgment and Approval Order will contain an injunction providing that:

a.    all Settlement Class Members (and their attorneys, accountants, agents, heirs, executors, administrators, trustees, predecessors, successors, Affiliates, representatives, and assigns) who have not validly and timely requested exclusion from the Settlement Class – and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such

persons or entities – are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefit or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention in the Action if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating to the Released Class Claims; and

b.   all persons and entities are permanently enjoined from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) or other proceeding on behalf of any Settlement Class Members as to the Releasees, if such other lawsuit is based on or related to the Released Class Claims.

34.   "Released Class Claims" means each and every Claim that (*i*) arises from or relates to the Action (including all Claims alleged in the Complaint) and is asserted against the Releasees or (*ii*) could have been or could be asserted against any of the Releasees in connection with or relating directly or indirectly to any of the Operative Facts or any alleged statements about, mischaracterizations of, or omissions concerning them, whether arising under any federal, state, or other statutory or common-law rule or under any foreign law, in any court, tribunal, agency, or other forum, if such Claim arises out of or relates to the purchase or other acquisition of Lovesac Securities, or to any other Investment Decision, during the Class Period; *provided, however*, that the term "Released Class Claims" does not include (and will not release or impair) any claims to enforce the Settlement Agreement.

35.   "Releasees" means Lovesac, its affiliates, and their current and former officers (including Mr. Nelson and Ms. Dellomo), directors, employees, agents, representatives, counsel, advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers, and certain other persons and entities affiliated with or related to them. The full definition of Releasees is set forth in the Settlement Agreement, available at www.strategicclaims.net/lovesac.

36.   The Judgment and Approval Order will also provide that, upon the Final Settlement Date, all Releasees, and anyone purporting to act on behalf of, for the benefit of, or derivatively for any such persons or entities, are permanently enjoined from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to Released Releasees' Claims.

37.   "Released Releasees Claims" means each and every Claim that has been, could have been, or could be asserted in the Action or in any other proceeding by any Releasee against Lead Plaintiff, any other Settlement Class Members, or any of their respective attorneys, beneficiaries, accountants, professional advisors, trusts, trustees, administrators, and assigns, and that arises out of or relates in any way to the initiation, prosecution, or settlement of the Action or the implementation of this Settlement Agreement; *provided, however*, that Released Releasees' Claim shall not include any Claim to enforce the Settlement Agreement. The full definition of Released Releasees Claims is set forth in the Settlement Agreement.

## HOW DO I PARTICIPATE IN THE SETTLEMENT?  WHAT DO I NEED TO DO?

38.   To be eligible for a payment from the Settlement, you must be a member of the Settlement Class and must timely complete and return the Claim Form with adequate supporting documentation.  You must submit the Claim Form either (a) electronically through the Claims Administrator's website, www.strategicclaims.net/lovesac, by **11:59 p.m. ET on _____, 202_**, or (b) by mail to *Lovesac Securities Litigation*, c/o Strategic Claims Services, P.O. Box 230, 600 North Jackson Street, Suite 205, Media, PA 19063, ***postmarked*** **no later than _____, 202_**.  A Claim Form will be deemed to have been submitted when (a) the claimant receives a confirmation notice from Strategic Claims Services for electronic submissions or (b) legibly postmarked (if properly addressed and mailed by first-class mail), if such Claim Form is actually received before Lead Plaintiff files a motion for distribution of the Net Settlement Amount.

39.   A Claim Form is included with this Notice, or you may obtain one from the website maintained by the Claims Administrator for the Settlement, www.strategicclaims.net/lovesac. You may also request that a Claim Form be mailed to you by calling the Claims Administrator toll-free at 1-866-274-4004 or by emailing the Claims Administrator at info@strategicclaims.net. Please retain all records of your ownership of and transactions in Lovesac Securities, as they will be needed to document your Claim.  The Parties and Claims Administrator do not have information about your transactions in Lovesac Securities.

40.   If you request exclusion from the Settlement Class or do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Amount.

## HOW MUCH WILL MY PAYMENT BE?

41.   At this time, it is not possible to determine how much any individual Settlement Class Member might receive from the Settlement.

42.   Pursuant to the Settlement, Defendants have agreed to pay $615,000 in cash (the "Settlement Amount").  The Settlement Amount will be deposited into an escrow account.  The Settlement Amount plus any interest earned on it is called the "Settlement Fund."  If the Court approves the Settlement, and if the Final Settlement Date occurs, the "Net Settlement Amount" will be distributed to Settlement Class Members who submit valid Claim Forms in accordance with the proposed Plan of Allocation or such other Plan of Allocation as the Court may approve. The Net Settlement Amount is the Settlement Fund *less* (i) any Tax Expenses, (ii) any Notice and Administrative Expenses, and (iii) any attorneys' fees and expenses awarded to Plaintiff's Counsel or Lead Plaintiff by the Court.

43.   The Net Settlement Amount will not be distributed unless and until the Court has approved the Settlement and a Plan of Allocation, and the time for any petition for rehearing, appeal, or review, whether by certiorari or otherwise, has expired.

44.   Defendants are not entitled to get back any portion of the Settlement Amount once the Court's order or judgment approving the Settlement becomes Final.  Defendants will not have any liability, obligation, or responsibility for the administration of the Settlement, the disbursement of the Net Settlement Amount, or the Plan of Allocation.

45.    Approval of the Settlement is independent from approval of a Plan of Allocation.  Any determination about a Plan of Allocation will not affect the Settlement, if approved.

46.    Unless the Court otherwise orders, any Settlement Class Member who fails to submit a Claim Form electronically or postmarked on or before _____, 202_, will be fully and forever barred from receiving payments pursuant to the Settlement, but will in all other respects remain a member of the Settlement Class and be subject to the provisions of the Settlement Agreement, including the terms of any Judgment entered and the releases given.  This means that each Settlement Class Member releases the Released Class Claims (as defined in ¶ 34 above) against the Releasees (as defined in ¶ 35 above) and will be barred and enjoined from prosecuting any of the Released Class Claims against any of the Releasees whether or not such Settlement Class Member submits a Claim Form.

47.    The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Settlement Class Member.

48.    Each person or entity that submits a Claim Form will be deemed to have submitted to the jurisdiction of the Court as to his, her, or its Claim Form.

49.    Only members of the Settlement Class will be eligible to share in the distribution of the Net Settlement Amount.  Persons and entities that are excluded from the Settlement Class by definition or that request exclusion from the Settlement Class will not be eligible for a payment and should not submit Claim Forms.

## PROPOSED PLAN OF ALLOCATION OF THE NET SETTLEMENT AMOUNT

50.    The Plan of Allocation is intended to distribute the Net Settlement Amount equitably to those Settlement Class Members who suffered economic losses from the alleged violations of the securities laws.  The calculations under the Plan of Allocation are not intended to be estimates or indicators of the amounts that Settlement Class Members might have been able to recover after a trial.  Nor are those calculations intended to be estimates of the amounts that will be paid to Authorized Claimants under the Settlement.  Computations under the Plan of Allocation are only a method to weigh the claims of Claimants against one another for the purpose of making *pro rata* allocations of the Net Settlement Amount.

51.    For losses to be compensable damages under the federal securities laws, the disclosure of the allegedly misrepresented information must have caused the decline in the price of Lovesac common stock.  In this case, Lead Plaintiff alleges that Defendants made false statements and omitted material facts during the period from June 8, 2022, through August 16, 2023, inclusive, which alleged conduct artificially inflated the price of Lovesac common stock.  Lead Plaintiff further alleges that corrective information was released to the market on August 16, 2023, after the market had closed, and that the newly disclosed information removed the artificial inflation from the price of Lovesac common stock as of that time.

52.    In developing the Plan of Allocation, Lead Plaintiff's damages expert calculated the estimated amount of artificial inflation in the price of Lovesac common stock allegedly caused by Defendants' purportedly false and misleading statements and material omissions.  In calculating that estimated amount, Lead Plaintiff's expert considered price changes in the stock in reaction to the public disclosures allegedly revealing the truth about Defendants' alleged misrepresentations and omissions, adjusting for any price changes on that day that were attributable to market or industry forces.

12

53.    Recognized Loss Amounts for transactions in Lovesac common stock are calculated under the Plan of Allocation based primarily on the difference in the amount of alleged artificial inflation in the stock price at the time of purchase and the time of sale or the difference between the actual purchase price and sale price.  To have a Recognized Loss Amount, a Settlement Class Member who purchased Lovesac common stock during the Class Period must have held his, her, or its shares through the close of the trading on August 16, 2023.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

54.    Based on the formula stated below, a "Recognized Loss Amount" will be calculated for each purchase of Lovesac common stock during the Class Period that is listed on the Claim Form and for which adequate documentation is provided.  If a Recognized Loss Amount calculates to a negative number or zero under the formula below, the Recognized Loss Amount for that transaction will be zero.

55.    For each share of Lovesac common stock purchased during the period from June 8, 2022, through August 16, 2023, inclusive, and

a)    sold on or before August 16, 2023, the Recognized Loss Amount is zero;

b)    sold after August 16, 2023, through the close of trading on November 14, 2023, the Recognized Loss Amount is *the least of:* (i) $.20 per share, (ii) the purchase price per share *less* the sales price per share, or (iii) the purchase price per share *less* the average closing price per share applicable to the date of sale as found in Table A below; or

c)    held at the close of trading on November 14, 2023, the Recognized Loss Amount is *the lesser of:* (i) $.20 per share or (ii) the purchase price per share *less* $19.34 per share.[3]

56.    For each share of Lovesac Securities purchased after August 16, 2023, the Recognized Loss Amount is zero.

**Table A**

| Date | Closing Price | Average Closing Price | Date | Closing Price | Average Closing Price |
|---|---|---|---|---|---|
| 8/17/2023 | $23.06 | $23.06 | 10/3/2023 | $19.10 | $21.76 |
| 8/18/2023 | $23.84 | $23.45 | 10/4/2023 | $17.89 | $21.55 |
| 8/21/2023 | $23.33 | $23.41 | 10/5/2023 | $17.71 | $21.44 |
| 8/22/2023 | $23.12 | $23.34 | 10/6/2023 | $17.37 | $21.33 |
| 8/23/2023 | $23.02 | $23.27 | 10/9/2023 | $17.24 | $21.22 |
| 8/24/2023 | $22.36 | $23.12 | 10/10/2023 | $18.16 | $21.14 |

---

[3]  Pursuant to Section 21(D)(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market."  The average (mean) closing price of Lovesac common stock during the 90-day look-back period from August 17, 2023, through November 14, 2023, inclusive, was $19.34 per share.

| | | | | | |
|---|---|---|---|---|---|
| 8/25/2023 | $22.34 | $23.01 | 10/11/2023 | $18.28 | $21.07 |
| 8/28/2023 | $22.20 | $22.91 | 10/12/2023 | $17.15 | $20.97 |
| 8/29/2023 | $22.40 | $22.85 | 10/13/2023 | $16.76 | $20.86 |
| 8/30/2023 | $22.30 | $22.80 | 10/16/2023 | $17.15 | $20.78 |
| 8/31/2023 | $22.92 | $22.81 | 10/17/2023 | $17.54 | $20.70 |
| 9/1/2023 | $25.44 | $23.03 | 10/18/2023 | $16.50 | $20.61 |
| 9/5/2023 | $24.72 | $23.16 | 10/19/2023 | $15.83 | $20.50 |
| 9/6/2023 | $24.21 | $23.23 | 10/20/2023 | $15.76 | $20.40 |
| 9/7/2023 | $23.01 | $23.22 | 10/23/2023 | $14.84 | $20.28 |
| 9/8/2023 | $22.27 | $23.16 | 10/24/2023 | $14.93 | $20.17 |
| 9/11/2023 | $21.61 | $23.07 | 10/25/2023 | $14.45 | $20.05 |
| 9/12/2023 | $21.40 | $22.98 | 10/26/2023 | $14.44 | $19.94 |
| 9/13/2023 | $21.78 | $22.91 | 10/27/2023 | $15.09 | $19.84 |
| 9/14/2023 | $22.15 | $22.87 | 10/30/2023 | $16.72 | $19.78 |
| 9/15/2023 | $21.20 | $22.79 | 10/31/2023 | $16.46 | $19.72 |
| 9/18/2023 | $20.61 | $22.70 | 11/1/2023 | $17.12 | $19.67 |
| 9/19/2023 | $20.56 | $22.60 | 11/2/2023 | $17.75 | $19.64 |
| 9/20/2023 | $20.98 | $22.53 | 11/3/2023 | $17.56 | $19.60 |
| 9/21/2023 | $19.81 | $22.43 | 11/6/2023 | $16.96 | $19.55 |
| 9/22/2023 | $19.81 | $22.33 | 11/7/2023 | $17.50 | $19.52 |
| 9/25/2023 | $19.14 | $22.21 | 11/8/2023 | $18.05 | $19.49 |
| 9/26/2023 | $18.88 | $22.09 | 11/9/2023 | $16.97 | $19.45 |
| 9/27/2023 | $19.18 | $21.99 | 11/10/2023 | $16.71 | $19.41 |
| 9/28/2023 | $19.78 | $21.91 | 11/13/2023 | $16.30 | $19.36 |
| 9/29/2023 | $19.92 | $21.85 | 11/14/2023 | $18.05 | $19.34 |
| 10/2/2023 | $19.10 | $21.76 | | | |

## **ADDITIONAL PROVISIONS**

57.    The Net Settlement Amount will be allocated among all Authorized Claimants whose Distribution Amount (defined in ¶ 66 below) is $20.00 or greater.

58.    **Calculation of Claimant's "Recognized Claim":**  A Claimant's "Recognized Claim" will be the sum of his, her, or its Recognized Loss Amounts as calculated above for all purchases of Lovesac common stock during the Class Period.

59.    **FIFO Matching:**  If a Settlement Class Member made more than one purchase/acquisition or sale of Lovesac common stock during the Class Period, all purchases/acquisitions and sales will be matched on a First In, First Out ("FIFO") basis.  Class Period sales will be matched first against any holdings of Lovesac common stock at the beginning of the Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.

60.    **"Purchase/Sale" Dates:**  Purchases and sales of Lovesac common stock will be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  "Purchases" eligible under the Settlement and this Plan of Allocation include all purchases or other acquisitions of Lovesac common stock in exchange for value and are not limited to

14

purchases made on or through a stock exchange, as long as the purchase is adequately documented. However, the receipt or grant by gift, inheritance, or operation of law of Lovesac common stock during the Class Period shall not be deemed a purchase or sale for the calculation of a Claimant's Recognized Loss Amount; nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/sale of the stock unless (i) the donor or decedent purchased the Lovesac common stock during the Class Period; (ii) the instrument of gift or assignment specifically states that it is intended to transfer such rights; and (iii) no Claim was submitted by or on behalf of the donor, the decedent, or anyone else as to those shares.

61.   **Short Sales:**  The date of covering a "short sale" is deemed to be the date of purchase of Lovesac common stock.  The date of a "short sale" is deemed to be the date of sale of Lovesac common stock.  In accordance with the Plan of Allocation, however, the Recognized Loss Amount on "short sales" and the purchases covering "short sales" is zero.

62.   If a Claimant had an opening short position in Lovesac common stock, the earliest purchases or acquisitions of Lovesac common stock during the Class Period will be matched against such opening short position, and will not be entitled to a recovery, until that short position is fully covered.

63.   **Shares Purchased/Sold Through the Exercise of Options:**  Option contracts are not securities eligible to participate in the Settlement.  For shares of Lovesac common stock purchased or sold through the exercise of an option, the purchase/sale date of the Lovesac common stock is the exercise date of the option, and the purchase/sale price is the closing price of Lovesac common stock on the date of exercise.

64.   **Market Gains and Losses:**  The Claims Administrator will determine whether the Claimant had a "Market Gain" or a "Market Loss" on his, her, or its overall transactions in Lovesac common stock during the Class Period.  For purposes of making this calculation, the Claims Administrator will determine the difference between (i) the Claimant's Total Purchase Amount[4] and (ii) the sum of the Claimant's Total Sales Proceeds[5] and the Claimant's Holding Value.[6]  If the Claimant's Total Purchase Amount *minus* the sum of the Claimant's Total Sales Proceeds and the Holding Value is a positive number, that number will be the Claimant's Market Loss; if the number is a negative number or zero, that number will be the Claimant's Market Gain.

65.   If a Claimant had a Market Gain from his, her, or its overall transactions in Lovesac Securities, the value of the Claimant's Recognized Claim will be zero, and the Claimant will not be eligible to receive a payment in the Settlement but will nonetheless be bound by the Settlement.

---

[4]  The "Total Purchase Amount" is the total amount the Claimant paid (excluding all fees, taxes, and commissions) for all Lovesac common stock purchased or acquired during the Class Period.

[5]  The Claims Administrator will match any sales of Lovesac common stock during the Class Period first against the Claimant's opening position in Lovesac common stock (the proceeds of those sales will not be considered for purposes of calculating market gains or losses).  The total amount received (not deducting any fees, taxes, and commissions) for sales of the remaining Lovesac common stock sold during the Class Period is the "Total Sales Proceeds."

[6]  The Claims Administrator will ascribe a "Holding Value" of $23.06 per share of Lovesac common stock purchased during the Class Period that was still held as of the close of trading on August 16, 2023.

If a Claimant suffered an overall Market Loss from his, her, or its overall transactions in Lovesac Securities, but that Market Loss was less than the Claimant's Recognized Claim, then the Claimant's Recognized Claim will be limited to the amount of the Market Loss.

66.     **Determination of Distribution Amount:**    The Net Settlement Amount will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.  A "Distribution Amount" will be calculated for each Authorized Claimant. That Distribution Amount will be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Amount.

67.     If an Authorized Claimant's Distribution Amount calculates to less than $20.00, it will not be included in the calculation, and no distribution will be made to that Authorized Claimant because distribution would not be economically feasible in light of the distribution expenses.

68.     After the initial distribution of the Net Settlement Amount, the Claims Administrator will make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. If any monies remain after at least six months from the date of the initial distribution, and if Lead Counsel, in consultation with the Claims Administrator, determines that another distribution would be cost-effective, the Claims Administrator will conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including fees and expenses for the re-distribution, to Authorized Claimants who cashed their initial distributions and who would receive at least $20.00 from the re-distribution.  Additional re-distributions to Authorized Claimants who cashed their prior checks and who would receive at least $20.00 from additional re-distributions may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determines that additional re-distributions would be cost-effective after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions.  At such time as the re-distribution of remaining funds is not cost-effective, those funds will be contributed to a nonsectarian, not-for-profit charitable organization(s) serving the public interest, designated by Lead Plaintiff, and approved by the Court.

69.     Payment pursuant to the proposed Plan of Allocation, or such other Plan of Allocation as the Court might approve, will be conclusive against all Claimants.  No person or entity shall have any claim against Lead Plaintiff, Lead Counsel, the Claims Administrator, or any other agent designated by Lead Counsel, or against Defendants' Releasees and their respective counsel, arising from distributions made substantially in accordance with the Settlement Agreement, the Plan of Allocation approved by the Court, or any order of the Court.  Lead Plaintiff and Defendants, their respective counsel, and all other Releasees shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Amount, any Plan of Allocation, or the determination, administration, calculation, or payment of any claim or nonperformance of the Claims Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

70.     The Plan of Allocation set forth in this Notice is the plan that Lead Plaintiff, after consultation with her damages expert, is proposing to the Court for approval.  The Court may approve this plan as proposed, or it may modify the Plan of Allocation without further notice to the Settlement Class.  Any Orders regarding any modification of the Plan of Allocation will be posted on the case website, www.strategicclaims.net/lovesac.

**WHAT PAYMENT ARE THE ATTORNEYS FOR THE SETTLEMENT CLASS SEEKING?**
**HOW WILL THE LAWYERS BE PAID?**

71.   Plaintiff's Counsel have not received any payment for their services in pursuing claims against Defendants on behalf of the Settlement Class; nor have they been paid for their litigation expenses.  Before final approval of the Settlement, Lead Counsel will apply to the Court for an award of attorneys' fees for all Plaintiff's Counsel in an amount not to exceed 33.33% (one-third) of the Settlement Fund.  Lead Counsel have a retention agreement with Lead Plaintiff that provides for a contingency fee to be awarded to Lead Counsel after notice to the Settlement Class and approval by the Court.  When they file a motion for attorneys' fees, Lead Counsel also intend to apply for payment of litigation expenses paid or incurred by Plaintiff's Counsel in an amount not to exceed $45,000, and for the reasonable costs and expenses incurred by Lead Plaintiff directly related to her representation of the Settlement Class, pursuant to the PSLRA, in an amount not to exceed $3,500.  The Court will determine the amount of any award of attorneys' fees and expenses to Plaintiff's Counsel and any PSLRA Award to Lead Plaintiff.  Such sums as may be approved by the Court will be paid from the Settlement Fund.  Settlement Class Members will not be personally liable for any such fees or expenses.

**WHAT IF I DO NOT WANT TO BE A MEMBER OF THE SETTLEMENT CLASS?**
**HOW DO I EXCLUDE MYSELF?**

72.   Each Settlement Class Member will be bound by all determinations and judgments in this lawsuit, whether favorable or unfavorable, unless such person or entity mails or delivers a written Request for Exclusion from the Settlement Class, addressed to *Lovesac Securities Litigation*, EXCLUSIONS, c/o Strategic Claims Services, 600 North Jackson Street, P.O. Box 230, Suite 205, Media, PA 19063.  The **Request for Exclusion** must be *received* no **later than _____, 202_**.  You will not be able to exclude yourself from the Settlement Class after that date.  A potential Class Member's request for exclusion must include the following information: (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) email address, if available, (*v*) a statement that the potential Settlement Class Member wishes to request exclusion from the Settlement Class in *Gutknecht v. The Lovesac Company*, No. 3:23-cv-01640-KAD (D. Conn.), (*vi*) the number of shares of Lovesac Securities held as of opening of trading on June 8, 2022, and purchased or otherwise acquired and/or sold during the Class Period, (*vii*) price(s) paid or value at receipt, and, if sold, the sales price(s), (*viii*) the date of each such transaction involving each such security, and (*ix*) the signature of the person or entity requesting exclusion or of an authorized representative.  A Request for Exclusion will not be valid and effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

73.   If you do not want to be part of the Settlement Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Released Class Claim against any of the Releasees.

74.   If you ask to be excluded from the Settlement Class, you will not be eligible to receive any payment out of the Net Settlement Amount.

75.  Defendants have the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Settlement Class in an amount that exceeds an amount agreed to by Lead Plaintiff and Defendants.

---

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?  DO I HAVE TO PARTICIPATE IN THE HEARING?  MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?**

---

76.  **Settlement Class Members do not need to participate in the Fairness Hearing.**  The Court will consider any submission made in accordance with the provisions below even if a Settlement Class Member does not speak at or otherwise observe the hearing.  **You can participate in the Settlement without attending the Fairness Hearing.**

77.  <u>**Please Note:**</u> The date and time of the Fairness Hearing might change without further written notice to the Settlement Class.  In addition, the Court might decide to conduct the Fairness Hearing by telephonic or video conference, or otherwise allow counsel for the Parties and Settlement Class Members to appear at the hearing by phone or video, without further written notice to the Settlement Class.  To find out whether the date and time of the Fairness Hearing have changed, or whether Settlement Class Members must or may participate by phone or video, you should monitor the Court's docket and the Settlement website, www.strategicclaims.net/lovesac, before making any plans to attend the Fairness Hearing in person.  Any updates regarding the Fairness Hearing, including any changes to the date or time of the hearing or updates regarding in-person, telephonic, or video appearances, will be posted to the Settlement website, www.strategicclaims.net/lovesac.  Also, if the Court requires or allows Settlement Class Members to participate in the Fairness Hearing by telephone or video, the information for accessing the conference will be posted to the website.

78.  The Fairness Hearing will be held on **_____, 202_, at __:__ _.m.**, before District Judge Kari A. Dooley, either in-person at the United States Courthouse, 915 Lafayette Boulevard, Bridgeport, CT 06604, Courtroom 2, or by telephone or video, to determine, among other things, (i) whether the proposed Settlement on the terms and conditions stated in the Settlement Agreement is fair, reasonable, and adequate to the Settlement Class and should be finally approved by the Court; (ii) whether, for purposes of the Settlement only, the Action should be certified as a class action on behalf of the Settlement Class, Lead Plaintiff should be certified as class representative for the Settlement Class, and Lead Counsel should be appointed as class counsel for the Settlement Class; (iii) whether the Action should be dismissed with prejudice against Defendants and whether the Releases specified and described in the Settlement Agreement (and in this Notice) should be granted; (iv) whether the proposed Plan of Allocation should be approved as fair and reasonable; (v) whether Lead Counsel's motion for attorneys' fees and litigation expenses and Lead Plaintiff's motion for costs and expenses should be approved; (vi) any objections that Settlement Class Members have raised; and (vii) any other matters that may properly be brought before the Court in connection with the Settlement.  The Court reserves the right to certify the Settlement Class; approve the Settlement, the Plan of Allocation, and Lead Counsel's motion for attorneys' fees and litigation expenses; and/or consider any other matter related to the Settlement at or after the Fairness Hearing without further notice to the members of the Settlement Class.

79.   Any Settlement Class Member who does not request exclusion from the Settlement Class may **object** to the Settlement, the proposed Plan of Allocation, Lead Counsel's motion for attorneys' fees and expenses, or Lead Plaintiff's application for expenses.  Objections must be in writing.  You must file any **written objection**, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office at the address set forth below **on or before _____, 202_**.  You must also serve the papers on Lead Counsel and Defendants' Counsel at the addresses set forth below so that the papers are *received* **on or before _____, 202_**.

| **Clerk's Office** | **Lead Counsel** | **Defendants' Counsel** |
|---|---|---|
| Clerk of Court | The Rosen Law Firm, P.A. | Proskauer Rose LLP |
| United States District Court | Jacob A. Goldberg, Esq. | Jonathan E. Richman, Esq. |
| District of Connecticut | Leah Heifetz-Li, Esq. | Julia D. Alonzo, Esq. |
| 915 Lafayette Boulevard | 101 Greenwood Ave., Suite 440 | Eleven Times Square |
| Bridgeport, CT  06604 | Jenkintown, PA  19046 | New York, NY 10036-8299 |

You must also *email* the objection and any supporting papers on or before _____, 202_, to jgoldberg@rosenlegal.com, lheifetz@rosenlegal.com, jerichman@proskauer.com, and jalonzo@proskauer.com.

80.   Any objection must state the specific reason(s), if any, for each objection, including any legal support the Settlement Class Member wishes to bring to the Court's attention and any evidence the Settlement Class Member wishes to introduce in support of such objection, and must state whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class.  In addition to the reason(s) for the objection, an objection must also include the name and docket number of this case (*Gutknecht v. The Lovesac Company*, No. 3:23-cv-01640-KAD  (D. Conn.)) and the following information about the objecting Settlement Class Member:  (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) email address, if available, (*v*) number of shares of Lovesac Securities held as of opening of trading on June 8, 2022, and purchased or otherwise acquired and/or sold during the Class Period, (*vi*) price(s) paid or value at receipt, and, if sold, the sales price(s), (*vii*) the date of each such transaction involving each such security, and (*viii*) account statements verifying all such transactions.  You may not object to the Settlement, the Plan of Allocation, or Lead Counsel's motion for attorneys' fees and expenses if you exclude yourself from the Settlement Class or if you are not a member of the Settlement Class.

81.   You may file a written objection without having to speak at the Fairness Hearing.  You may not, however, speak at the Fairness Hearing to present your objection unless you first file and serve a written objection in accordance with the procedures described above, unless the Court orders otherwise.

82.   If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and expenses, and if you have timely filed and served a written objection as described above, you must also file a **notice of appearance** with the Clerk's Office and serve it on Lead Counsel and Defendants' Counsel at the addresses set forth in ¶ 79 above so that it is *received* **on or before _____, 202_**.  Persons who intend to object and present evidence at the Fairness Hearing must include in their written objection or notice of appearance the identity of any witnesses they

might call to testify and any exhibits they intend to introduce into evidence at the hearing.  Such persons may be heard orally at the discretion of the Court.

83.   You are not required to hire an attorney to represent you in making written objections or in appearing at the Fairness Hearing.  However, if you decide to hire an attorney, you may do so at your own expense, and that attorney must file a **notice of appearance** with the Court and serve it on Lead Counsel and Defendants' Counsel at the addresses set forth in ¶ 79 above so that the notice is ***received*** **on or before _____, 202_.**

84.   **Unless the Court orders otherwise, any Settlement Class Member who does not object in the manner described above will be deemed to have waived any objection and will be forever foreclosed from objecting to the proposed Settlement, the proposed Plan of Allocation, Lead Counsel's motion for an award of attorneys' fees and expenses, and Lead Plaintiff's motion for expenses.  Settlement Class Members do not need to appear at the Fairness Hearing or take any other action to indicate their approval of the proposed Settlement.**

## WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF?

85.   If you purchased or otherwise acquired Lovesac Securities during the period from June 8, 2022, through August 16, 2023, inclusive, for the beneficial interest of persons or entities other than yourself, you must, within seven (7) calendar days after receipt of this Notice or the short-form Postcard Notice (whichever is earlier), either (i) request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and then, within seven (7) calendar days after receipt of those Postcard Notices, forward them to all such beneficial owners or (ii) provide a list of the names, addresses, and email addresses (if available) of all such beneficial owners to *Lovesac Securities Litigation*, c/o Strategic Claims Services, 600 North Jackson Street, Suite 205, Media, PA 19063, or info@strategicclaims.net.  If you choose the second option, the Claims Administrator will send a copy of the Postcard Notice to the beneficial owners you have identified.  Upon full compliance with these directions, such nominees may seek reimbursement of their reasonable expenses actually incurred, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought.  Copies of this Notice and the Claim Form may also be obtained from the Settlement website, www.strategicclaims.net/lovesac, by calling the Claims Administrator toll-free at 1-866-274-4004, or by emailing the Claims Administrator at info@strategicclaims.net.

## CAN I SEE THE COURT FILE?
## WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

86.   This Notice contains only a summary of the terms of the proposed Settlement.  For more detailed information about the matters involved in this Action, you should review the papers on file in the Action, including the Settlement Agreement, which may be inspected during regular office hours at the Office of the Clerk, United States District Court for the District of Connecticut, 915 Lafayette Boulevard, Bridgeport, CT 06604.  The Court file also is available online if you have access to the Court's PACER system.  Additionally, copies of the Complaint, the Settlement Agreement, and any related orders entered by the Court will be posted on the Settlement website, www.strategicclaims.net/lovesac.

All inquiries concerning this Notice and the Claim Form should be directed to:

| *Lovesac Securities Litigation* | and/or | Jacob A Goldberg, Esq. |
|---|---|---|
| c/o Strategic Claims Services | | Leah Heifetz-Li, Esq. |
| 600 North Jackson Street | | The Rosen Law Firm, P.A. |
| Suite 205 | | 101 Greenwood Avenue, Suite 440 |
| Media, PA  19063 | | Jenkintown, PA  19046 |
| 1 (866) 274-4004 | | (215) 600-2817 |
| info@strategicclaims.net | | jgoldberg@rosenlegal.com |
| www.strategicclaims.net/lovesac | | lheifetz@rosenlegal.com |

**DO NOT CALL OR WRITE THE COURT, THE OFFICE OF THE CLERK OF THE COURT, DEFENDANTS, OR THEIR COUNSEL ABOUT THIS NOTICE.**

Dated: _____, 202_

By Order of the Court
United States District Court
District of Connecticut

21

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ALBERT GUTKNECHT, individually and on behalf of all others similarly situated,** | |
| | No. 3:23-cv-01640-KAD |
| **Plaintiff,** | |
| **v.** | |
| **THE LOVESAC COMPANY, *et al.*,** | |
| **Defendants.** | |

## SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT, (II) SETTLEMENT FAIRNESS HEARING, AND (III) MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES

**TO:** All persons and entities who purchased or otherwise acquired common stock of The Lovesac Company ("Lovesac") during the period from June 8, 2022, through August 16, 2023, inclusive (the "Class Period") (the "Settlement Class").[1]

**PLEASE READ THIS NOTICE CAREFULLY.  YOUR RIGHTS WILL BE AFFECTED BY A CLASS-ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the District of Connecticut (the "Court"), that the above-captioned securities class action (the "Action") is pending in the Court.

YOU ARE ALSO NOTIFIED that Lead Plaintiff in the Action, Susan Cooke Peña, has reached a proposed settlement of the Action for $615,000 in cash (the "Settlement"), which, if approved, will resolve all claims in the Action.

A hearing will be held on _____, 202_, at __:__ _.m., before Judge Kari A. Dooley, either in-person at the United States Courthouse, 915 Lafayette Boulevard, Bridgeport, CT 06604, in Courtroom 2, or by telephone or videoconference, to determine (i) whether the proposed Settlement should be approved as fair, reasonable, and adequate; (ii) whether, solely for purposes of the proposed Settlement, the Action should be certified as a class action on behalf of the Settlement Class, Lead Plaintiff should be certified as class representative for the Settlement Class, and Lead Counsel should be appointed as class counsel for the Settlement Class; (iii) whether the Action should be dismissed with prejudice against Defendants and whether the releases specified and described in the Settlement Agreement dated as of July 30, 2024 (and in the Notice) should be granted; (iv) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (v) whether Lead Counsel's motion for an award of attorneys' fees and

---

[1] Certain persons and entities are excluded from the Settlement Class by definition as set forth in the full Notice of (I) Pendency of Class Action and Proposed Settlement, (II) Settlement Fairness Hearing, and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Notice"), available at www.strategicclaims.net/lovesac.

expenses and Lead Plaintiff's motion for costs and expenses should be approved.  If the hearing is held by telephone or videoconference, information on how to participate will be posted at www.strategicclaims.net/lovesac.

       **If you are a member of the Settlement Class, your rights will be affected by the pending Action and the Settlement, and you might be entitled to a payment from the Settlement**.  If you have not yet received the Notice and Claim Form, you may get copies of them by contacting the Claims Administrator at *Lovesac Securities Litigation*, c/o Strategic Claims Services, P.O. Box 230, 600 North Jackson Street, Suite 205, Media, PA 19063; 1-866-274-4004; or info@strategicclaims.net.  You also can download copies of the Notice and Claim Form from the Settlement website, www.strategicclaims.net/lovesac .

       If you are a member of the Settlement Class, you must submit a **Claim Form** either electronically or by first-class mail *received or postmarked* **no later than** _____, 202_, to be eligible to receive a payment from the Settlement.  If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to receive a payment, but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

       If you are a member of the Settlement Class and wish to **exclude yourself** from the Settlement Class, you must submit a request for exclusion that is *received* **no later than** _____, 202_, in accordance with the instructions in the Notice.  If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Action, and you will not be eligible to receive a payment from the Settlement.  Excluding yourself is the only option that may allow you to be part of any other current or future lawsuit against Defendants or any of the other released parties concerning the claims being resolved by the Settlement, even if you have pending or later file another lawsuit or other proceeding against the Releasees related to the claims covered by the Settlement.

       Any **objections** to the proposed Settlement, the proposed Plan of Allocation, Lead Counsel's motion for attorneys' fees and litigation expenses, or Lead Plaintiff's motion for costs and expenses must be filed with the Court and delivered to Lead Counsel and Defendants' Counsel such that they are *received* **no later than** _____, 202_, in accordance with the instructions in the Notice.

**Do not contact the Court, the Clerk's office, Defendants, or their lawyers about this notice. All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to the Claims Administrator or Lead Counsel.**

       Requests for the Notice and Claim Form should be made to:

*Lovesac Securities Litigation*
c/o Strategic Claims Services
600 North Jackson Street
Suite 205
Media, PA  19063
1-866-274-4004
info@strategicclaims.net
www.strategicclaims.net/lovesac

Inquiries, other than requests for the Notice and Claim Form, should be made to Lead Counsel for the Settlement Class:

THE ROSEN LAW FIRM, P.A.
Jacob A. Goldberg, Esq.
Leah Heifetz-Li, Esq.
101 Greenwood Avenue, Suite 440
Jenkintown, PA  19046
215-600-2817
jgoldberg@rosenlegal.com
lheifetz@rosenlegal.com

By Order of the Court

145586587v4

**EXHIBIT G**

*Lovesac Securities Litigation*
**Toll-Free Number: 1-866-274-4004**
**Email: info@strategicclaims.net**
**Website: www.strategicclaims.net/lovesac**

# PROOF OF CLAIM AND RELEASE FORM

To be eligible to receive a share of the Net Settlement Amount in connection with the Settlement of this Action, you must complete and sign this Proof of Claim and Release Form ("Claim Form") and either (*i*) file it electronically at www.strategicclaims.net/lovesac so that it ***received*** no later than _____, 202_, at 11:59 **p.m. ET**, or (*ii*) mail it by first-class mail to the address below, with supporting documentation, ***postmarked*** **no later than _____, 202_.**

**Mail to:**

> *Lovesac Securities Litigation*
> **c/o Strategic Claims Services**
> **600 North Jackson Street**
> **Suite 205**
> **Media, PA  19063**

*You need to submit this Claim Form if you want to make a claim to share in the settlement payment in this lawsuit.  If you fill out this Claim Form in accordance with the instructions below, you might be eligible to receive a cash payment if the Court approves the proposed Settlement.*

If you do not submit your Claim Form by the date specified, your claim might be rejected, and you might be precluded from being eligible to receive a payment from the Settlement.

Do not mail or deliver your Claim Form to the Court, Lead Counsel, Defendants' Counsel, or any of the Parties to the Action.  Submit your Claim Form only to the Claims Administrator at the address set forth above.

| TABLE OF CONTENTS | PAGE # |
|---|---|
| **PART I – CLAIMANT INFORMATION** | __ |
| **PART II – GENERAL INSTRUCTIONS** | __ |
| **PART III – SCHEDULE OF TRANSACTIONS IN LOVESAC COMMON STOCK** (NASDAQ TICKER: LOVE; CUSIP: 54738L109) | __ |
| **PART IV – RELEASE OF CLAIMS AND SIGNATURE** | __ |

## PART I – CLAIMANT INFORMATION

The Claims Administrator will use this information for all communications about this Claim Form.  If this information changes, you MUST notify the Claims Administrator in writing at the address above.  Complete names of all persons and entities must be provided.

Beneficial Owner's Name
First Name ☐☐☐☐☐☐☐☐☐☐☐☐☐  Last Name ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Joint Beneficial Owner's Name (*if applicable*)
First Name ☐☐☐☐☐☐☐☐☐☐☐☐☐  Last Name ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

If this claim is submitted for an IRA, and if you would like any check that you might be eligible to receive to be made payable to the IRA, please include "IRA" in the "Last Name" box above (*e.g.*, Jones IRA).

Entity Name (if the Beneficial Owner is not an individual)
☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Name of Representative, if applicable (*executor, administrator, trustee, c/o, etc.*), if different from Beneficial Owner
☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Last 4 digits of Social Security Number or Taxpayer Identification Number
☐☐☐☐

Street Address
☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

City ☐☐☐☐☐☐☐☐☐☐☐☐  State/Province ☐☐  Zip Code ☐☐☐☐☐☐

Foreign Postal Code (if applicable) ☐☐☐☐☐☐☐☐☐  Foreign Country (if applicable) ☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Telephone Number (Day) ☐☐☐☐ ☐☐☐ ☐☐☐☐  Telephone Number (Evening) ☐☐☐☐ ☐☐☐ ☐☐☐☐

Email Address (email address is not required, but, if you provide it, you authorize the Claims Administrator to use it in providing you with information relevant to this claim)
☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

**Type of Beneficial Owner:**

Specify one of the following:

☐ Individual(s)    ☐ Corporation    ☐ UGMA Custodian    ☐ IRA

☐ Partnership    ☐ Estate    ☐ Trust    ☐ Other (describe: _____)

## PART II – GENERAL INSTRUCTIONS

1.      You should completely read and understand the Notice of (I) Pendency of Class Action and Proposed Settlement, (II) Settlement Fairness Hearing, and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Notice") that accompanies this Claim Form, including the Plan of Allocation of the Net Settlement Amount set forth in the Notice.  That Notice describes the proposed Settlement, how Settlement Class Members are affected by it, and how the Net Settlement Amount will be distributed if the Court approves the Settlement and Plan of Allocation.  The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form.  By signing and submitting this Claim Form, you will be certifying that you have read and understand the Notice, including the terms of the releases provided for in this Claim Form.

2.      By submitting this Claim Form, you will be asking to receive a payment from the Settlement described in the Notice.  **If you are not a Settlement Class Member** (*see* the definition of the Settlement Class on page [__] of the Notice, which sets forth who is included in and who is excluded from the Settlement Class), **or if you or someone acting on your behalf submitted a request for exclusion from the Settlement Class, do not submit a Claim Form**.  You cannot directly or indirectly participate in the Settlement if you are not a Settlement Class Member.  If you are excluded from the Settlement Class, any Claim Form that you submit, or that might be submitted on your behalf, will be rejected.

3.      **Submission of this Claim Form does not guarantee that you will receive a payment from the Settlement.  The distribution of the Net Settlement Amount will be governed by the Plan of Allocation in the Notice, if it is approved by the Court, or by such other plan of allocation as the Court approves.**

4.      Use the Schedule of Transactions in Part III of this Claim Form to supply all required details about your transaction(s) in and holdings of common stock of The Lovesac Company ("Lovesac").  On this schedule, please provide all the requested information about your holdings, purchases, acquisitions, and sales of Lovesac Securities (including free transfers and deliveries), whether such transactions resulted in a profit or a loss.  **Failure to report all transaction and holding information during the requested time period could result in the rejection of your claim.**

5.      **Please note**:  Only Lovesac Securities (meaning common stock) purchased during the Class Period (*i.e.*, from June 8, 2022, through August 16, 2023, inclusive) are eligible under the Settlement.  However, sales of Lovesac Securities during the period from August 17, 2023, through and including the close of trading on November 14, 2023, will be used to calculate your claim under the Plan of Allocation.  Although purchases and acquisitions during the period from August 17, 2023, through November 14, 2023, are not eligible for payment, you must provide information about them so that the Claims Administrator can balance your claim – *i.e.*, confirm that all transactions have been included by checking whether (a) the number of shares you held at the opening of trading on June 8, 2022, *plus* the number of shares you purchased/acquired from June 8, 2022, through November 14, 2023, *is equal to* (b) the number of shares you sold from June 8, 2022, through November 14, 2023, *plus* the number of shares you held at the close of trading on November 14, 2023.

6.      You must submit genuine and sufficient documentation for all your transactions in and holdings of Lovesac Securities as set forth in the Schedule of Transactions in Part III of this Claim Form.  Documentation may consist of copies of brokerage confirmation slips or monthly brokerage account statements, or an authorized statement from your broker containing the transactional and holding information found in a broker confirmation slip or account statement.  The Parties and the Claims Administrator do not independently have information about your investments in Lovesac Securities.  IF SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN COPIES OF THE DOCUMENTS OR EQUIVALENT DOCUMENTS FROM YOUR

BROKER.  FAILURE TO SUPPLY THIS DOCUMENTATION MIGHT RESULT IN THE REJECTION OF YOUR CLAIM.  DO NOT SEND ORIGINAL DOCUMENTS.  **Please keep a copy of all documents that you send to the Claims Administrator.  Also, do not mark or highlight any portion of the Claim Form or any supporting documents.**

7.    Use Part I of this Claim Form entitled "CLAIMANT INFORMATION" to identify the beneficial owner(s) of the Lovesac Securities.  The complete name(s) of the beneficial owner(s) must be entered.  If you held the Lovesac Securities in your own name, you were the beneficial owner as well as the record owner.  If, however, your Lovesac Securities were registered in the name of a third party, such as a nominee or brokerage firm, you were the beneficial owner of the stock, but the third party was the record owner.  The beneficial owner, not the record owner, must sign this Claim Form to be eligible to participate in the Settlement.  If there were joint beneficial owners, each must sign this Claim Form, and their names must appear as "Claimants" in Part I of this Claim Form.

8.    **One Claim should be submitted for each separate legal entity.**  Separate Claim Forms should be submitted for each separate legal entity (*e.g.*, a claim from joint owners should not include separate transactions of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made solely in the individual's name).  Conversely, a single Claim Form should be submitted on behalf of one legal entity including all transactions made by that entity, no matter how many separate accounts that entity has (*e.g.*, a person or corporation with multiple brokerage accounts should include on one Claim Form all transactions made in all accounts).

9.    Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons represented by them, and they must:

(a)    expressly state the capacity in which they are acting;

(b)    identify the name, account number, last four digits of the Social Security Number (or taxpayer identification number), address, and telephone number of the beneficial owner of (or other person or entity on whose behalf they are acting as to) the Lovesac Securities; and

(c)    furnish evidence of their authority to bind to the Claim Form the person or entity on whose behalf they are acting.  (Authority to complete and sign a Claim Form cannot be established by stockbrokers' demonstrating only that they have discretionary authority to trade securities in another person's accounts.)

10.    By submitting a signed Claim Form, you will be swearing that you:

(a)    own(ed) the Lovesac Securities you listed in the Claim Form; or

(b)    are expressly authorized to act on behalf of the owner of that stock.

11.    By submitting a signed Claim Form, you will be swearing to the truth of the statements it contains and the genuineness of the documents attached to it, subject to penalties of perjury under the laws of the United States of America.  Making false statements or submitting forged or fraudulent documentation will result in the rejection of your claim and could subject you to civil liability or criminal prosecution.

12.    If the Court approves the Settlement, payments to eligible Authorized Claimants pursuant to the Plan of Allocation (or such other plan of allocation as the Court approves) will be made after any appeals are resolved, and after the completion of all claims processing.  The claims process will take substantial time to complete fully and fairly.  Please be patient.

13.     **PLEASE NOTE:**  As set forth in the Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Amount.  If the prorated payment to any Authorized Claimant calculates to less than $20.00, it will not be included in the calculation, and no distribution will be made to that Authorized Claimant.

14.     If you have questions about the Claim Form, or need additional copies of the Claim Form or the Notice, you may contact the Claims Administrator, Strategic Claims Services, at the above address, by email at info@strategicclaims.net, or by toll-free phone at 1-866-274-4004, or you can visit the Settlement website, www.strategicclaims.net, where copies of the Claim Form and Notice are available for downloading.

15.     NOTICE REGARDING INSTITUTIONAL FILERS:  Representatives with authority to file on behalf of (a) accounts of multiple Settlement Class Members and/or (b) institutional accounts with large numbers of transactions ("Representative Filers") must submit information regarding their transactions in an electronic spreadsheet format.  (This is different than the online claim portal on the Settlement website.)  To obtain the **mandatory** electronic filing requirements and file layout, you may visit the Settlement website at www.strategicclaims.net, or you may email the Claims Administrator's electronic filing department at efile@strategicclaims.net.  **Any file not in accordance with the required electronic filing format will be subject to rejection.**  All Representative Filers MUST also submit a manually signed Claim Form for each Settlement Class Member, as well as proof of authority to file, along with the electronic spreadsheet format.  Only one claim should be submitted for each separate legal entity (*see* ¶ 8 above), sub-accounts should be rolled up into a parent account if the sub-accounts contain the same tax identification number, and the **complete** name of the beneficial owner of the securities must be entered where called for (*see* ¶ 7 above).  No electronic files will be considered to have been submitted unless the Claims Administrator issues an email to that effect.  **Do not assume that your file has been received until you receive that email.  If you do not receive such an email within 10 days after your submission, you should contact the electronic filing department at efile@strategicclaims.net to inquire about your file and confirm it was received.**

16.     NOTICE REGARDING ONLINE FILING: Claimants who are not Representative Filers may submit their claims online using the electronic version of the Claim Form hosted at www.strategicclaims.net/Astec/.  If you are not acting as a Representative Filer, you do not need to contact the Claims Administrator before filing.  You will receive an automated e-mail confirming receipt once your Claim Form has been submitted.  If you are unsure whether you should submit your claim as a Representative Filer, please contact the Claims Administrator at info@strategicclaims.net or (866) 274-4004.  If you are not a Representative Filer but your claim contains a large number of transactions, the Claims Administrator may request that you also submit an electronic spreadsheet showing your transactions to accompany your Claim Form

### IMPORTANT:  PLEASE NOTE

**If you file your claim electronically, your claim will be deemed filed when you receive a confirmation notice from the Claims Administrator.  If you file your claim by first-class mail, your claim will be deemed filed when it is postmarked, but the Claim Form must actually be received by the Claims Administrator before Lead Counsel moves for a court order allowing distribution of the Net Settlement Fund.  If you submit your claim by first-class mail, you must send it Certified, Return Receipt Requested, if you want confirmation that it has been received, or you may contact the Claims Administrator by phone or email for confirmation.**

**PART III – SCHEDULE OF TRANSACTIONS IN LOVESAC SECURITIES**

Use this section to provide information on your holdings and trading of Lovesac Securities (NASDAQ Ticker Symbol: LOVE; CUSIP: 54738L109) during the requested time periods.  Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, ¶ 6 above.

| | | |
|---|---|---|
| **1. HOLDINGS AS OF JUNE 8, 2022**– State the total number of Lovesac Securities held as of the **opening** of trading on June 8, 2022.  (Must be documented.)  If none, write "zero" or "0." _____ | Confirm Proof of Position Enclosed ○ | |

**2. PURCHASES/ACQUISITIONS FROM JUNE 8, 2022 THROUGH AUGUST 16, 2023** – Separately list each and every purchase or acquisition (including free receipts) of Lovesac Securities from after the opening of trading on June 8, 2022 through the close of trading on August 16, 2023.  (Must be documented.)

| Date of Purchase/ Acquisition (List Chronologically) (Month/Day/Year) | Number of Shares Purchased/ Acquired | Purchase Price Per Share | Total Purchase Price (excluding any fees, commissions, and taxes) | Result of an Option Transaction? (Yes/No) | Confirm Proof of Purchase Enclosed |
|---|---|---|---|---|---|
| /   / | | $ | $ | | ○ |
| /   / | | $ | $ | | ○ |
| /   / | | $ | $ | | ○ |
| /   / | | $ | $ | | ○ |

**3. PURCHASES/ACQUISITIONS FROM AUGUST 17, 2023 THROUGH NOVEMBER 14, 2023** – State the total number of Lovesac Securities purchased or acquired (including free receipts) from August 17, 2023 through the close of trading on November 14, 2023.  If none, write "zero" or "0." _____

| | | |
|---|---|---|
| **4. SALES FROM JUNE 8, 2022 THROUGH NOVEMEBER 14, 2023** – Separately list each and every sale or disposition (including free deliveries) of Lovesac Securities from after the opening of trading on June 8, 2022 through and including the close of trading on November 14, 2023.  (Must be documented.) | **IF NONE, CHECK HERE** ○ | |

| Date of Sale (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (not deducting any fees, commissions, and taxes) | Result of an Option Transaction? (Yes/No) | Confirm Proof of Sale Enclosed |
|---|---|---|---|---|---|
| /   / | | $ | $ | | ○ |
| /   / | | $ | $ | | ○ |
| /   / | | $ | $ | | ○ |
| /   / | | $ | $ | | ○ |

| | | |
|---|---|---|
| **4. HOLDINGS AS OF NOVEMBER 14, 2023** – State the total number of Lovesac Securities held as of the close of trading on November 14, 2023.  (Must be documented.)  If none, write "zero" or "0." _____ | Confirm Proof of Position Enclosed ○ | |

**IF YOU NEED ADDITIONAL SPACE FOR THE SCHEDULE ABOVE, ATTACH EXTRA SCHEDULES IN THE SAME FORMAT.  PRINT THE BENEFICIAL OWNER'S FULL NAME AND LAST FOUR DIGITS OF SOCIAL SECURITY/TAXPAYER IDENTIFICATION NUMBER ON EACH ADDITIONAL PAGE.  IF YOU DO ATTACH EXTRA SCHEDULES, CHECK THIS BOX.** ☐

## PART IV - RELEASE OF CLAIMS AND SIGNATURE

### YOU MUST ALSO READ THE RELEASE AND CERTIFICATION BELOW
### AND SIGN ON PAGE __ OF THIS CLAIM FORM.

1.  I (we) hereby acknowledge that, pursuant to the terms of the Settlement Agreement, without further action by anyone, upon the Final Settlement Date, I (we), on behalf of myself (ourselves) and my (our) (the claimant(s)') heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such ("Releasors"), or any person purporting to assert a Released Class Claim on behalf of, for the benefit of, or derivatively for any such Releasors, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged:

    a.  all Released Class Claims (as defined in the Notice) against each and every one of the Releasees (as defined in the Notice);

    b.  all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) the Settlement Agreement or its implementation, (*iii*) the Settlement terms and their implementation, (*iv*) the provision of notice in connection with the proposed Settlement, and/or (*v*) the resolution of any Claim Forms submitted in connection with the Settlement; and

    c.  all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Plaintiff's Counsel or any other counsel representing Lead Plaintiff or any other Settlement Class Member in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its Settlement, except to the extent otherwise specified in the Settlement Agreement.

2.  In addition, the Judgment and Approval Order will provide that:

    a.  all Settlement Class Members (and their attorneys, accountants, agents, heirs, executors, administrators, trustees, predecessors, Affiliates, representatives, and assigns) who have not validly and timely requested exclusion from the Settlement Class – and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities – are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefit or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention in the Action if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating to the Released Class Claims; and

    b.  all persons and entities are permanently enjoined from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) or other proceeding on behalf of

any Settlement Class Members as to the Releasees, if such other lawsuit is based on or related to the Released Class Claims.

**CERTIFICATION**

By signing and submitting this Claim Form, the claimant(s) or the person(s) who represent(s) the claimant(s) agree(s) to the release above and certifies (certify) as follows:

1.      I (we) have read and understand the contents of the Notice and this Claim Form, including the releases provided for in the Settlement and the terms of the Plan of Allocation;

2.      The claimant(s) is a (are) Settlement Class Member(s), as defined in the Notice, and is (are) not excluded by definition from the Settlement Class as set forth in the Notice;

3.      The claimant(s) did ***not*** submit a request for exclusion from the Settlement Class;

4.      I (we) own(ed) the Lovesac Securities identified in the Claim Form and have not assigned the claim against any of the Defendants or any other Releasees to another person or entity, or that, in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the owner(s) thereof;

5.      The claimant(s) has (have) not submitted any other claim covering the same purchases of Lovesac Securities and knows (know) of no other person having done so on the claimant's (claimants') behalf;

6.      The claimant(s) submit(s) to the jurisdiction of the Court with respect to claimant's (claimants') claim and for purposes of enforcing the releases set forth herein;

7.      I (we) agree to furnish such additional information with respect to this Claim Form as Lead Counsel, the Claims Administrator, or the Court might require;

8.      The claimant(s) waive(s) the right to trial by jury, to the extent it exists, and agree(s) to the determination by the Court of the validity or amount of this claim, and waives any right of appeal or review with respect to such determination;

9.      I (we) acknowledge that the claimant(s) will be bound by and subject to the terms of any judgment(s) that may be entered in the Action; and

10.     The claimant(s) is (are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because (i) the claimant(s) is (are) exempt from backup withholding or (ii) the claimant(s) has (have) not been notified by the IRS that he, she, it, or they is (are) subject to backup withholding as a result of a failure to report all interest or dividends or (iii) the IRS has notified the claimant(s) that he, she, it, or they is (are) no longer subject to backup withholding. **If the IRS has notified the claimant(s) that he, she, it, or they is (are) subject to backup withholding, please strike out the language in the preceding sentence stating that the claim is not subject to backup withholding in the certification above.**

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT ALL OF THE INFORMATION PROVIDED BY ME (US) ON THIS CLAIM FORM IS TRUE, CORRECT, AND COMPLETE, AND THAT THE DOCUMENTS SUBMITTED HEREWITH ARE TRUE AND CORRECT COPIES OF WHAT THEY PURPORT TO BE.

_____                                      _____
Signature of claimant                                                                                              Date

_____

Print claimant name here

_____

Signature of joint claimant, if any                                                              Date

_____

Print joint claimant name here

***If the claimant is other than an individual, or is not the person completing this form, the following also must be provided:***

_____

Signature of person signing on behalf of claimant                                    Date

_____

Print name of person signing on behalf of claimant here

_____

Capacity of person signing on behalf of claimant, if other than an individual, *e.g.*, executor, president, trustee, custodian, etc.  (Must provide evidence of authority to act on behalf of claimant – see ¶ 9 on page [__] of this Claim Form.)

# **REMINDER CHECKLIST**

1. Sign the above release and certification.  If this Claim Form is being made on behalf of joint claimants, **both** must sign.

2. Attach only *copies* of acceptable supporting documentation, as these documents will not be returned to you. Keep the original documents.

3. Do not mark or highlight any portion of the Claim Form or any supporting documents.

4. Keep copies of the completed Claim Form and documentation for your own records.

5. If you file your claim electronically, the Claims Administrator will send you a notice confirming receipt.  If you file your claim by first-class mail, **you must send it Certified, Return Receipt Requested, for confirmation of delivery, or you may call or email the Claims Administrator at (866) 274-4004, info@strategicclaims.net for confirmation**.

6. If your address changes in the future, or if this Claim Form was sent to an old or incorrect address, you must send the Claims Administrator written notification of your new address.  If you change your name, inform the Claims Administrator.

7. If you have any questions or concerns about your claim, contact the Claims Administrator at the address below, by email at info@strategicclaims.net, or by toll-free phone at 1-866-274-4004, or you may visit www.strategicclaims.net/lovesac.  DO NOT call Lovesac or its counsel with questions regarding your claim.

THIS CLAIM FORM MUST EITHER BE FILED ELECTRONICALLY AT WWW.STRATEGICCLAIMS.NET/LOVESAC NO LATER THAN _____, 202_, AT 11:59 P.M. ET, OR BE MAILED TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL, *POSTMARKED* NO LATER THAN _____, 202_, ADDRESSED AS FOLLOWS:

*Lovesac Securities Litigation*
c/o Strategic Claims Services
P.O. Box 230
600 North Jackson Street
Suite 205
Media, PA  19063

A Claim Form filed electronically will be deemed to have been submitted when you receive a confirmation notice from the Claims Administrator.  A Claim Form sent by first-class mail will be deemed to have been submitted when postmarked.

The Claims Administrator will need a significant amount of time to fully process all Claim Forms.  Please be patient and notify the Claims Administrator of any change of address.

145587043v4

EXHIBIT H

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALBERT GUTKNECHT, individually and on behalf of all others similarly situated,<br><br>                                 **Plaintiff,**<br><br>      **v.**<br><br>THE LOVESAC COMPANY, *et al.*,<br><br>                                  **Defendants.** | No. 3:23-cv-01640-KAD |

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (the "Agreement") is entered into in this putative class action (the "Action") as of July 30, 2024, between and among lead plaintiff Susan Cooke Peña ("Lead Plaintiff"), The Rosen Law Firm, P.A. ("Lead Counsel"), defendants The Lovesac Company ("Lovesac"), Shawn Nelson, and Donna Dellomo (collectively, "Defendants"), and Proskauer Rose LLP ("Proskauer").[1]

WHEREAS, on December 19, 2023, the Action was filed on behalf of certain purchasers of Lovesac Securities against Defendants; and

WHEREAS, on March 11, 2024, the Court appointed Lead Plaintiff as the lead plaintiff and Lead Counsel as the lead counsel in the Action pursuant to the provisions of the Private Securities Litigation Reform Act of 1995; and

WHEREAS, on May 10, 2024, Lead Plaintiff filed her Complaint in the Action; and

WHEREAS Lead Plaintiff and Defendants (collectively, the "Settling Parties") have agreed to a proposed settlement of the Action, subject to various conditions, including Lead Plaintiff's conducting Due-Diligence Discovery concerning the proposed Settlement; and

---

[1]      Unless otherwise specified, all capitalized terms shall have the definitions specified in the Stipulation of Settlement dated as of July 30, 2024.

WHEREAS, solely for purposes of conducting Due-Diligence Discovery, Lead Plaintiff has asked that Lead Counsel be given access to documents and information relating to the issues raised in the Complaint; and

WHEREAS Defendants seek and intend to preserve all objections to discovery in the Action and in any other actions or proceedings in any forum and to protect all applicable privileges and protections – including the attorney-client privilege and the attorney work-product protection – that might apply to such discovery materials;

NOW, THEREFORE, solely to facilitate Lead Plaintiff's Due-Diligence Discovery in evaluating the proposed Settlement, and in consideration of the mutual promises and covenants made in this Agreement and in the Settlement Agreement, with the intent to be legally bound by the terms of this Agreement, and understanding that the Court may enforce the terms of this Agreement, Lead Plaintiff, Lead Counsel, Defendants, and Proskauer agree as follows:

1.      All non-public documents, facts, opinions, estimates, and other information that are in or come into the possession of Lead Plaintiff or Lead Counsel solely from Defendants for purposes of Due-Diligence Discovery – including, without limitation, writings, drawings, graphs, charts, photographs, microfilm, microfiche, drafts, transcripts, non-identical copies of documents, and data compilations (including, without limitation, electronic or computerized data compilations) from which information can be obtained – and all non-public information (whether oral or written) that is contained in those materials or is otherwise provided to Lead Plaintiff or Lead Counsel under the terms of this Agreement, or otherwise becomes known to Lead Plaintiff or Lead Counsel solely from Defendants, shall be deemed to be "Settlement Information." Any notes or other writings relating to any information obtained in connection with Due-Diligence Discovery shall also be deemed to be Settlement Information that is subject to the terms of this

Agreement, but shall remain in the possession, custody, or control of the Party or his, her, or its counsel who created such work product or privileged material.

2.      Due-Diligence Discovery shall proceed for a period of 45 days from commencement, subject to reasonable extensions of time if necessary and agreed to by the Settling Parties.  Documents will be made available to Lead Counsel in electronic form or on physical media (*e.g.*, a hard drive).

3.      Only the following individuals ("Eligible Persons") shall be allowed access to Settlement Information:

a.      Lead Plaintiff;

b.      attorneys who are either partners in, or members or employees of, Lead Counsel, as well as non-attorney employees of Lead Counsel;

c.      any other attorneys whom Lead Counsel designates solely for purposes of reviewing the proposed Settlement, and for no other purposes whatsoever;

d.      non-attorney employees of any other attorneys designated pursuant to paragraph 3.c above, necessary to assist Lead Counsel or any of those other attorneys in reviewing Settlement Information solely for purposes of assessing the proposed Settlement; and

e.      consultants or experts retained by Lead Counsel, or by any other attorneys designated pursuant to paragraph 3.c above, necessary to assist those attorneys in reviewing Settlement Information solely for purposes of assessing the proposed Settlement, and whose identities need not be disclosed to Defendants; *provided, however*, that, if the Action does not ultimately settle, and if litigation continues, the disclosure and discovery provisions of the Federal Rules of Civil Procedure and any Local Rules of Court governing experts will apply.

4.    Except for Lead Counsel and its employees, as provided in paragraph 3.b above, any and all individuals given access to Settlement Information pursuant to paragraph 3 above shall, before being granted such access, be given a copy of this Agreement and agree, by executing the undertaking in the form attached as Exhibit A, to be subject to all of its terms.  Lead Counsel and its employees agree to the terms of this Confidentiality Agreement without having to sign Exhibit A.

5.    Settlement Information shall be used solely for the purpose of conducting Due-Diligence Discovery and evaluating the proposed Settlement, and for no other purpose whatsoever (including pursuing claims in the Action or in any other proceeding).  All Eligible Persons allowed access to Settlement Information pursuant to paragraph 3 above shall keep all Settlement Information strictly confidential and shall not disclose, disseminate, discuss, or otherwise publish such material or information in whole or in part, directly or indirectly, by any manner, method, or means whatsoever, to any other person, firm, or entity, including any media organization; nor shall they use any Settlement Information in connection with any purchase or sale of, or any other investment decision relating to, Lovesac Securities; *provided, however*, that:

a.    Eligible Persons may discuss Settlement Information among themselves to the extent they deem appropriate and consistent with the terms of this Agreement;

b.    Eligible Persons may generally discuss the due diligence undertaken with other counsel representing potential Settlement Class Members in the Action solely for the purposes of allowing those other counsel to evaluate the proposed Settlement and to advise or decide whether their clients should participate in it, object to it, or opt out of it; *provided, however*, that such discussions shall not include identification or descriptions of specific Settlement Information or specific documents in Settlement Information;

4

       c.      Before any discussions take place regarding Settlement Information as provided in this paragraph 5, all prospective recipients of Settlement Information must be given a copy of this Agreement and agree, by executing the undertaking in the form attached as Exhibit A, to be bound by to its terms (except to the extent otherwise provided in paragraph 4 above); and

       d.      Nothing in this Agreement prevents Defendants or (with Defendants' consent) Proskauer from using or sharing Defendants' own Settlement Information as they deem appropriate.

6.      Lead Counsel shall ensure that the undertakings required pursuant to paragraphs 4 and 5 above have been obtained and shall retain those undertakings (except to the extent that this Agreement otherwise requires).

7.      If any Settlement Information is in a language other than English and Lead Counsel wishes to translate that material, Proskauer will make reasonable efforts to work with Lead Counsel to devise a method for obtaining translations at Lead Counsel's expense; *provided, however*, that Defendants and Proskauer shall not otherwise have any obligation to provide translations of Settlement Information.

8.      If any Eligible Person or any other person or entity given access to Settlement Information pursuant to this Agreement (collectively, the "Recipients") receives a request to produce Settlement Information by any means, including by subpoena, written interrogatories, or deposition, the recipient of such request (the "Receiving Party") shall give Proskauer immediate written notice of such request as provided in this Agreement so that Defendants may take any appropriate measures (including seeking a protective order or attempting to quash such request) to oppose or limit disclosures, to require that disclosure be made under seal, or to seek any other available remedy. Any Receiving Party shall not oppose any efforts by Defendants and/or their

5

counsel to take whatever measures they deem appropriate to protect Settlement Information from disclosure; *provided, however*, that such Receiving Party (*i*) shall not be required to bring any motion, or join in any motion filed by Defendants or their counsel, to prevent disclosure of Settlement Information and (*ii*) shall be able to make any other arguments he, she, or it deems appropriate to the extent such arguments are not contrary to Defendants' or Defendants' counsel's arguments regarding disclosure. If a protective order cannot be obtained, and if a Receiving Party is compelled by a court order to disclose Settlement Information, such entity or individual shall disclose only such portion of such information that the court requires to be disclosed. Any Receiving Party so compelled shall give Proskauer immediate written notice of the information to be disclosed as far in advance of its disclosure as is practicable and shall also give Proskauer a duplicate production of all documents that are required to be disclosed; *provided, however*, that the Receiving Party need not include in that duplicate production any materials protected by the attorney work-product privilege or other applicable legal privilege. If Defendants seek to have the disclosed information filed under seal, the Receiving Party will cooperate with Defendants' efforts to do so.

9.    If (*i*) after conducting her due diligence of the Settlement Information, Lead Plaintiff decides to terminate the proposed Settlement, (*ii*) the proposed Settlement is terminated for any other reason before being finally approved by the Court, or (*iii*) the proposed Settlement is not approved by the Court (or by any appellate court), then Lead Plaintiff, Lead Counsel, and any other Recipient shall, within ten business days after being notified by Proskauer to do so, certify to Proskauer that such person or entity has destroyed all Settlement Information that has been provided, including copies of any such Settlement Information. In any of the circumstances described in this paragraph, Proskauer shall be deemed to have custody and control of all

6

Settlement Information, including all Settlement Information duplicated for any reviewer; *provided, however*, that Proskauer will not be deemed to have custody or control over any attorney work product or other legally privileged material generated by any Recipient. If any Recipient creates any documents of any kind based on or related to Settlement Information, he, she, or it will collect and destroy all such documents and so certify in writing to Proskauer; *provided, however*, that such Recipient may keep copies of attorney work product or other legally privileged material that he, she, or it generated, provided that such materials do not explicitly quote from or verbatim reflect Settlement Information.

10.    If the Court approves the proposed Settlement and the Court's approval becomes Final, the provisions of paragraph 9 concerning destruction of Settlement Information shall apply within ten business days after the Settlement becomes Final; *provided, however*, that any person or entity subject to paragraphs 9 and 10 may choose to destroy any and all Settlement Information (and copies of such information) instead of returning it to Proskauer, in which event such person or entity shall provide Proskauer with a certification attesting to the destruction of such Settlement Information.

11.    Production of Settlement Information shall not be deemed to be, and neither Lead Plaintiff nor Lead Counsel (nor any other Recipient) will argue that such production is, (*i*) a general waiver of the attorney-client privilege, the attorney work-product doctrine, or any other potentially applicable privilege or protection (including for trade secrets or proprietary information), (*ii*) a specific waiver of any privilege or protection applicable to the documents or information being produced, or (*iii*) an admission or indication that the documents or information are relevant to, or would or should be discoverable in, the Action or in any other litigation or proceeding in any forum.

12.     Pursuant to Federal Rule of Evidence 502(d), the parties to this Agreement agree, and, in signing this Agreement, the Court so orders, that the attorney-client privilege and attorney work-product protection are not waived in this Court, any other federal court, or any state court by production of Settlement Information in connection with Due-Diligence Discovery in this Action.

13.     If Defendants inadvertently make available as Settlement Information any materials that are privileged or otherwise protected, in whole or in part, under the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, immunity, or protection, such production shall in no way prejudice or otherwise constitute a waiver of any claim of privilege, immunity, or other protection.  Defendants may retrieve such inadvertently produced Settlement Information by giving Lead Counsel written notice of the privilege claim and the identity of the inadvertently produced materials promptly after learning or discovering that such inadvertent production has been made.  Upon receipt of such notice, Lead Counsel and any other Eligible Person who has received such Settlement Information shall promptly return or destroy any and all copies of the inadvertently produced materials.  Any Eligible Person who has received inadvertently produced Settlement Information may not use it, or any information gleaned from it, for any purpose.

14.     If the proposed Settlement is not approved, nothing in this Agreement shall preclude Lead Plaintiff from seeking the production of documents and information from Defendants pursuant to the Federal Rules of Civil Procedure and the Local Rules of this Court; *provided, however*, that, (*i*) without Defendants' express written agreement to the contrary, Lead Plaintiff shall not make discovery requests that refer directly to Settlement Information in any such request or in any proceeding relating to this Action or any other action or proceeding in any forum; (*ii*) Lead Plaintiff, Lead Counsel, and any other Recipients shall not use any Settlement

Information in any proceeding relating to this Action or any other action or proceeding in any forum, or in any other manner except to the extent such information is properly obtained through discovery in the course of the Action or any other action or proceeding and is used only to the extent permitted by the applicable court and rules; and (*iii*) Lead Plaintiff and any other Recipient shall not be able to use the fact that Lead Counsel or anyone else was allowed access to Settlement Information to argue that any such documents or information exist or should or must be disclosed.

15.    If any Party needs to include Settlement Information in any filing with the Court, such Party will file such information under seal; *provided, however*, that Defendants are not required to do so, as stated in paragraph 5.d above.

16.    Defendants reserve all rights in this Action, and in any other pending or future proceeding, to object on any ground whatsoever to the production of any document included within Settlement Information.

17.    Any violation of this Agreement shall entitle Defendants to injunctive or other equitable relief as a remedy for the violation without proof of actual damages and without limiting any other remedies that Defendants might have.

18.    In agreeing to be subject to the terms of this Agreement, Lead Plaintiff, Lead Counsel, and any other individuals allowed access to Settlement Information agree to submit to the jurisdiction of the Court in which this Action is pending for all matters concerning the enforcement of the terms of this Agreement.

19.     Any notice to Defendants required by this Agreement shall be addressed to the following:

> Jonathan E. Richman, Esq.
> Julia D. Alonzo, Esq.
> Proskauer Rose LLP
> Eleven Times Square
> New York, New York  10036-8299
> Telephone:  (212) 969-3000
> Email:  jerichman@proskauer.com
>            jalonzo@proskauer.com

20.     This Agreement may not be altered or modified except by a written instrument executed by all Parties or their counsel.

21.     Unless modified by the parties, this Agreement shall survive the final determination of, and shall remain in full force and effect after the conclusion of, all proceedings in the Action. The Court in which the Action is pending shall have continuing jurisdiction to enforce and ensure compliance with its terms.

22.     Any waiver of or failure to enforce any term of this Agreement shall not constitute a waiver of any other term or a waiver in any other circumstance.

23.     This Agreement shall be governed by and construed in accordance with the laws of the State of New York, excluding its conflict-of-laws provisions.

24.     This Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile shall be fully and legally binding.


_____          _____
Jacob A. Goldberg                         Jonathan E. Richman
Leah Heifetz-Li                           Julia D. Alonzo
The Rosen Law Firm, P.A.                  Proskauer Rose LLP
101 Greenwood Avenue, Suite 440           Eleven Times Square
Jenkintown, PA  19046                     New York, New York  10036-8299
(215) 600-2817                            (212) 969-3000
jgoldberg@rosenlegal.com                  jerichman@proskauer.com
lheifetz@rosenlegal.com                   jalonzo@proskauer.com

*On Behalf of Lead Plaintiff, the Settlement*     *On Behalf of Defendants and Proskauer*
*Class, and Lead Counsel*                         *Rose LLP*


SO ORDERED this ____ day of _____, 202_.



                              _____
                              The Honorable Kari A. Dooley
                              United States District Judge

11

**EXHIBIT A**

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ALBERT GUTKNECHT, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | No. 3:23-cv-01640-KAD |
| **v.** | |
| **THE LOVESAC COMPANY,** *et al.*, | |
| **Defendants.** | |

## <u>UNDERTAKING REGARDING SETTLEMENT INFORMATION</u>

I hereby attest that I have been provided with a copy of the attached Confidentiality Agreement (the "Agreement") and that I understand that Settlement Information (as that term is defined in the Agreement) will be provided to me pursuant to all of the terms, conditions, and restrictions in the Agreement. Those terms, conditions, and restrictions include, among others, the requirement that Settlement Information be used only for purposes of evaluating the proposed settlement of the Action and for no other purpose, including in connection with litigating the Action or in connection with any other action or proceeding pending in any other court or forum (including arbitration).

I further attest that I have read the Agreement and that I understand that, by signing this Undertaking, I have agreed, as a condition to my receipt of Settlement Information, to be bound by the Agreement and all of its terms, including, without limitation, the Agreement's confidentiality provisions and the provisions stating that the Court in which the Action is pending shall have personal jurisdiction over me to enforce the terms of the Agreement.

I further agree and attest to my understanding that, if I should fail to abide by the terms of the Agreement, I may be subject to claims for damages and sanctions, including monetary sanctions and/or sanctions by way of contempt of court, for such failure.

_____
Date

_____
Name

12

145587204v2