**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ALBERT GUTKNECHT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE LOVESAC COMPANY, SHAWN NELSON, and DONNA DELLOMO,<br><br>Defendants. | Case No. 3:23-cv-01640-KAD |

**DECLARATION OF LEAH HEIFETZ-LI IN SUPPORT OF (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND (2) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO PLAINTIFF**

I, Leah Heifetz-Li, declare the following to the best of my knowledge pursuant to 28 U.S.C. §1746: [1]

1.      I am an attorney admitted *pro hac vice* before this Court (ECF No. 36). I am an associate of the law firm of The Rosen Law Firm, P.A. ("Rosen Law"), court-appointed Lead Counsel for Lead Plaintiff Susan Cooke Peña ("Lead Plaintiff" or "Plaintiff") and the Settlement Class in this litigation ("Action"). I have personal knowledge of the matters set forth herein, and, if called upon, I could and would completely testify thereto.

2.      I submit this Declaration in support of Plaintiff's Motions, filed concurrently herewith, for: (1) Final Approval of Proposed Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiff. I set forth herein relevant

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement dated July 30, 2024 and filed July 31, 2024. (ECF No. 45-3.)

facts supporting both that the Settlement is fair, reasonable, and adequate and that Plaintiff's request for attorneys' fees, reimbursement of expenses, and service awards are reasonable.

3.      The Settlement provides for a cash payment by and on behalf of Defendants[2] in the amount of $615,000 in exchange for full releases of Plaintiff's claims, completely resolving the Action.

4.      On August 1, 2024, the Court entered an order preliminarily approving the Settlement, preliminarily certifying the Settlement Class for the purposes of settlement, and approving the form and manner of providing notice to potential Settlement Class Members ("Preliminary Approval Order," ECF No. 46).

5.      Plaintiffs now seek final approval of the Settlement, as well as an award of attorneys' fees to The Rosen Law Firm, P.A. of one-third of the Settlement Fund (or $205,000), and reimbursement of counsel's out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $37,798.28, and a service award to Plaintiff of $3,500.

6.      Attached hereto as <u>Exhibit 1</u> is a true and correct copy of the Declaration of Sarah Evans Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Evans Decl.").

7.      Attached hereto as <u>Exhibit 2</u> is a true and correct copy of the Declaration of Leah Heifetz-Li on behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Heifetz-Li Fee Decl.").

---

[2] "Defendants" are The Lovesac Company ("Lovesac" or "Company"), Shawn Nelson, and Donna Dellomo (together, "Defendants").

8.      Attached hereto as <u>Exhibit 3</u> is a true and correct copy of the Declaration of Brittany Cates Concerning Attorneys' Fees and Expenses ("Cates Fee Decl.") on behalf of The Faxon Law Group.

9.      Attached hereto as <u>Exhibit 4</u> is a true and correct copy of the firm resume of The Rosen Law Firm, P.A. ("Rosen Law Firm Resume").

10.     Attached as <u>Exhibit 5</u> is a true and correct copy of peer firm billing rates ("Peer Firms Billing Rates").

11.     Attached as <u>Exhibit 6</u> is a true and correct copy of the Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review, published by NERA on January 23, 2024 ("NERA Report").

**<u>Procedural History</u>**

12.     This Action commenced on December 19, 2023, with the filing of a putative class action asserting securities fraud claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 USC §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). (ECF No. 1), in a case captioned *Gutknetcht v. Lovesac Company, et. al.*, 3:23-cv-01640 (ECF No. 1).

13.     On March 11, 2024, the Court appointed Plaintiff as Lead Plaintiff, and approved Plaintiff's selection of The Rosen Law Firm, P.A., as lead counsel and Faxon Law Group, LLC as liaison counsel. (ECF No. 27).

14.     Upon her appointment, Plaintiff, through Lead Counsel, further investigated the claims in this action by, among other things, reviewing public information about Lovesac such as United States Securities and Exchange Commission ("SEC") filings, press releases, news articles, transcripts, and other public statements issued by or concerning Defendants. We also reviewed

research reports and notes of financial analysts concerning Lovesac's business and financial performance. With the help of expert consultants, we performed economic, pricing, and damages analyses. Most importantly, we retained an investigator to locate witnesses, and spoke with witnesses who had knowledge of Lovesac's finance function.

15. On May 10, 2024, in light of findings of new evidence from continued investigation and with Defendants' consent and the Court's approval, Plaintiff filed an amended complaint. (ECF No. 38.)

16. On June 18, 2024, the Parties informed the Court that they had reached a settlement in principle. (ECF No. 43.)

17. On July 31, 2024, Plaintiff moved for preliminary approval of the Parties' proposed settlement and notice program. (ECF No. 45.)

18. On August 1, 2024, the Court preliminarily approved the settlement and scheduled a final settlement hearing for December 9, 2024. (ECF No. 46.)

**Nature of the Allegations in the Complaint**

19. Lovesac designs, manufactures, and sells furniture. The Complaint alleges that, during the Class Period, Lovesac maintained a disorganized, chaotic finance function, resulting in inadequate internal controls and ultimately the restatement of its financial results for the fiscal year ended January 29, 2023 and the thirteen weeks ended April 30, 2023. Following Lovesac's August 16, 2023 disclosure that investors should no longer rely on management's report on internal control over financial reporting for the fiscal year ended January 29, 2023, and the company's previously issued financial statements reporting its results for the fiscal year ended January 29, 2023 and thirteen weeks ended April 30, 2023, the value of Lovesac's stock dropped.

**Settlement Negotiations and Terms**

4

20. In May 2024, after filing the amended complaint and while continuing to litigate the Action, the Parties engaged in arm's-length discussions concerning class-wide resolution of the action.

21. Negotiations began with an initial demand from Plaintiff. The Parties then negotiated for approximately one week before agreeing on May 20, 2024 to provide a full release of all claims against all Defendants from all Settlement Class Members that do not exclude themselves in exchange for $615,000. On May 29, 2024, the Parties executed a term sheet, broadly setting forth the terms of the Settlement.

22. On June 18, 2024, the Parties alerted the Court to the Settlement in principle (ECF No. 43), and, on June 20, 2024, the Court ordered a stay of the Action pending its consideration of Plaintiffs' anticipated motion for preliminary approval of the Settlement (ECF No. 44). The Parties then finalized Settlement terms in the July 30, 2024, Stipulation of Agreement of Settlement ("Stipulation") (ECF No. 45-3).

23. On July 31, 2024, Plaintiff moved the Court for the entry of an order preliminarily approving the proposed settlement and authorizing notice to the Settlement Class. (ECF No. 45.) On August 1, 2024, the Court entered the Preliminary Approval Order. (ECF No. 46.)

24. The Settlement provides for a cash payment of $615,000 to pay the Settlement Class's claims. Under the best-case scenario—assuming Plaintiff overcome all the obstacles noted below and Defendants do not prevail on any of their arguments—Plaintiff's economic expert concluded that the maximum potentially recoverable class wide statutory damages are $1.38 million. The $615,000 Settlement therefore represents 44.6% of the Settlement Class's best-case,

maximum recoverable damages.[3] If the Court grants final approval of the Settlement, Plaintiff and all Settlement Class Members who remain in the Class will forever release Defendants from all claims that were alleged or could have been alleged in this Action.

25.     Requests for exclusion and objections to the Settlement must be received by November 4, 2024. To date, neither the Claims Administrator nor Lead Counsel has received any objections to any aspect of the Settlement, including the Settlement, itself, the Settlement Class, the Plan of Allocation, or payment of attorneys' fees and expenses from the Settlement Fund. Ex. 1 ¶13. The Claims Administrator has also not received any requests for exclusion. *Id.* ¶12. The Long Notice, as the Court approved it in the Preliminary Approval Order, describes the Plan of Allocation. *See* ECF No. 45-3; *see also* Ex. 1, Ex. A, at 10-14. With Court-appointed Claims Administrator SCS, Rosen Law formulated the Plan of Allocation for distributing the Settlement Fund fairly and reasonably to Settlement Class Members consistent with the federal securities laws. To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.*, losses from sales made prior to the alleged revelation of the truth. The Plan of Allocation establishes a formula that determines authorized claimants' recognized losses and calculates Settlement Class Members' *pro rata* share of the Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and award to Plaintiffs).

**Complexity, Expense and Likely Duration of the Litigation**

26.     Over the course of this litigation, on behalf of Plaintiff and the Settlement Class, Rosen Law devoted significant time and effort to prosecuting this action, including, among other work:

---

[3] This percentage recovery exceeds the 1.8% median settlement value in 2023 for all securities class actions. *See* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (January 23, 2024) (Exhibit 6 hereto).

- investigating and analyzing the allegations in preparing the amended complaint in the Action, including, among other means:
  - reviewing press releases, news articles, earnings call transcripts, and other public statements issued by or concerning Defendants;
  - researching reports issued by financial analysts concerning Lovesac's business and financial performance;
  - extensive review and analyses of Defendants' filings with the SEC;
  - engaging a damages consulting expert to analyze damages;
  - retaining a private investigator to locate witnesses and conduct interviews; and
  - interviewing witnesses with personal knowledge of the facts alleged in the Complaint.
- drafting the amended complaint;
- engaging in good faith, arm's-length negotiations, leading to the Settlement;
- preparing Plaintiff's Motion for Preliminary Approval of Class Action Settlement and related documents;
- conducting due-diligence discovery by reviewing internal Lovesac documents;
- working with consulting experts to prepare the Plan of Allocation;
- overseeing the notice process that the Court approved; and
- drafting Plaintiff's Motion for Final Approval of Class Action Settlement and related documents.

27.     Thus, before entering into the Settlement, Lead Counsel and Plaintiff had a thorough understanding of the strengths and weaknesses of their case.

**Risks of Continued Litigation**

28.     Without a Settlement, Plaintiff faces protracted and expensive litigation that could drag the Action on for years, with no guarantee of matching or exceeding the recovery provided by the Settlement.

29.     While Plaintiff and Lead Counsel believe that Plaintiff's claims are meritorious, they recognize the substantial challenges to establishing liability, proving damages, and achieving and collecting a greater recovery. The Settlement provides for a cash payment of $615,000. This case presents material risks that Plaintiff and the Settlement Class might recover nothing at all—or substantially less than the Settlement Amount—if the litigation proceeds.

30.     First, Defendants would argue on a motion to dismiss that, even though Lovesac restated certain of its financial results, the restated amounts were relatively small, and the Complaint failed to plead any facts creating a strong inference that the individual defendants or any other senior executives at Lovesac actually knew about or recklessly disregarded those errors. Plaintiff would face substantial risk that Defendants would convince the Court to grant their motion.

31.     Second, even if the Action survived Defendants' motion to dismiss, while Plaintiff believes that the Settlement Class meets the requirements for certification, Defendants would certainly oppose class certification for litigation purposes, and there is a risk the Court would deny such certification. Plaintiff would face risk in establishing whether the decline in Lovesac's stock price was statistically significant in light of the stock's normal trading volatility, an argument that Defendants would have raised to rebut the presumption of reliance on which a class-certification motion would depend.

32.     Third, even if the Court certified the class, Plaintiff would still face substantial challenges in developing facts to survive summary judgment.

33.     Fourth, even if Plaintiff obtained class certification and withstood summary judgment and pre-trial motions, she would have to prepare for and obtain a verdict in a lengthy jury trial on liability, litigate post-trial motions and bifurcated trials on damages, and withstand lengthy appeals.

34.     Establishing damages in cases such as this one is always difficult, and particularly here, where Defendants would contest the statistical significance of the decline in Lovesac's stock price in light of its normal trading volatility. Disentangling the market's reaction to various pieces of news is complicated and requires intricate expert analysis and testimony. Defendants would oppose any expert Plaintiff retained with an equally well-credentialed expert expressing the opposite view, and it is impossible to predict how a jury would react to this battle of experts. If at any of these stages the Court or jury found Plaintiff's damages expert and theory legally or factually insufficient, Plaintiff would have spent much more time and money to end up with less than the $615,000 recovery, or nothing.

35.     Even if Plaintiff could recover a larger judgment after a trial, which would be far from certain given the risks discussed herein, the additional time that it would take to litigate this case through trial, post-trial motions, and the appellate process could deny the Settlement Class any recovery for years, further reducing the value of such a judgment.

36.     The Settlement eliminates the expense and delay of continued litigation and the risk that the Settlement Class could receive a lower or no recovery.

**The Settlement Resulted From Arm's-Length Negotiation Between Experienced Counsel**

37.    Lead Counsel are experienced attorneys with a track record of successfully litigating securities class actions throughout the country. *See* Ex. 4, Rosen Law Firm Resume. Lead Counsel negotiated with high caliber opposing counsel for Defendants, Proskauer Rose LLP, with deep experience defending similar actions. Given these factors, Lead Counsel believes that the Settlement is fair, adequate, and reasonable and urges this Court to approve it.

**Lead Counsel's Fee Request Is Justified**

38.    Lead Counsel have worked diligently to achieve the Settlement, expending 322.4 hours for a lodestar value of $285,585.00. Ex. 2 ¶5. Liaison Counsel the Faxon Law Group has expended 16.3 hours, for a lodestar value of $12,922.50. Ex. 3 ¶5. In total, therefore, Plaintiff's Counsel lodestar is $298,507.50. The attorneys' fee Plaintiff requests is a negative 0.68 multiplier to Plaintiff's Counsel's lodestar. The rates that Plaintiff's Counsel billed for its attorneys are comparable to those of peer plaintiff and defense firms litigating similar matters. *See* Ex. 5, Peer Firms Billing Rates.

39.    Lead Counsel spent a total of $37,398.28 in unreimbursed expenses in connection with the prosecution of this Action. Ex. 2 ¶6. The Faxon Law Group has spent $400 in unreimbursed expenses. Ex. 3 ¶7. In total, therefore, Plaintiff's Counsel have spent $37,798.28. To date, Plaintiff's Counsel have received no compensation for their efforts on behalf of Plaintiff and the Settlement Class.

40.    From the outset, Lead Counsel embarked on a complex, expensive, and potentially lengthy litigation with no guarantee of being compensated for the investment of time and resources on behalf of Plaintiff and the Settlement Class. In undertaking that responsibility, Lead Counsel

ensured that sufficient resources were dedicated to the action and that funds were available to compensate staff and to cover the expenses the case would require.

41.     The hourly rates that Lead Counsel used to arrive at its lodestar calculation are current. Ex. 2 ¶5.

42.     Lead Counsel's work will not end with the final approval of the Settlement. Lead Counsel will spend more time and resources drafting and filing the replies in support of its Motions, preparing for and appearing at the December 9, 2024, Settlement Hearing, overseeing the claims process, and distributing the Settlement Fund to Settlement Class Members.

**The Requested Award to Plaintiff Is Justified**

43.     Plaintiff herself has spent time leading this action on behalf of the Settlement Class. Plaintiff requests an amount of $3,500 to compensate her for this time and as an incentive for representative plaintiffs to come forward in cases in the future.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of October, 2024, in Guilford, Connecticut.

*/s/ Leah Heifetz-Li*
Leah Heifetz-Li