UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALBERT GUTKNECHT, individually and on behalf of all others similarly situated, <br><br> **Plaintiff,** <br><br> v. <br><br> THE LOVESAC COMPANY, *et al.*, <br><br> **Defendants.** | No. 3:23-cv-01640-KAD |

DECLARATION OF SARAH EVANS CONCERNING THE RESULTS OF THE
CLAIMS ADMINISTRATION PROCESS

I, Sarah Evans, declare as follows:

1. I am a Project Manager at Strategic Claims Services ("SCS"), a nationally recognized class action administration firm. I have over eight years of experience specializing in the administration of class action cases. SCS was established in April 1999 and has administered over five hundred and fifty (550) class action cases since its inception. I have personal knowledge of the facts set forth herein, and if called on to do so, I could and would testify competently thereto.

2. Pursuant to the Court's Order Preliminarily Approving Proposed Settlement, dated August 1, 2024 (Dkt. No. 46, the "Preliminary Approval Order"), SCS was appointed and approved as the Claims Administrator and Escrow Agent to supervise and administer the notice procedures as well as the processing of claims in connection with the Settlement of the above-captioned Action.[1]

3. As noted in the Declaration of Sarah Evans Concerning: (A) Mailing and Emailing of Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation of Settlement, dated July 30, 2024 (Dkt. No. 45-3, the "Stipulation").

1

Objections, dated October 28, 2024, and the Supplemental Declaration of Sarah Evans Concerning: (A) Mailing and Emailing of Notice; (B) Report on Requests for Exclusion and Objections; and (C) Claims Received to Date, dated November 26, 2024 (Dkt. Nos. 51-1 and 56-1, the "Mailing Declarations"), SCS mailed or emailed 2,305 letters to the Nominee Account Holders and Institutional Groups contained on SCS's master mailing list.   The Mailing Declarations noted that a total of 34,177 Postcard Notices were sent to potential Settlement Class Members, of which 9,128 were mailed and 25,049 were emailed. Since the Mailing Declarations were filed, no additional Postcard Notices have been requested or sent.

<b><u>UPDATE ON TOLL-FREE PHONE LINE</u></b>

4.      The Mailing Declarations noted that SCS maintains a toll-free telephone number (1-866-274-4004) for Settlement Class Members to call and obtain information about the Settlement. SCS has promptly responded to each telephone inquiry from Settlement Class Members via the toll-free telephone number and will continue to do so through the distribution process.

<b><u>UPDATE ON SETTLEMENT WEBPAGE</u></b>

5.      The Mailing Declarations also noted that on August 26, 2024, SCS established a page for the Settlement on its website at www.strategicclaims.net/lovesac/.  The webpage is accessible 24 hours a day, 7 days a week.  It contains information related to the current status of the case, case deadlines, the online claim filing link, and important case documents. SCS will continue to maintain and update the webpage through the distribution process. To date, the settlement webpage has received 4,334 pageviews from 1,229 unique users.

**STATUS OF CLAIMS PROCESSING**

6.       Through December 10, 2024, 11,990 Claim Forms (hereafter referred to as "claims") were submitted in connection with this Settlement.[2] SCS has carefully reviewed, analyzed, and processed all of these claims and has responded to all claimant inquiries regarding the action, the Settlement, and the procedures for filling out the Claim Forms.  SCS has also been in close contact with Lead Counsel to review the administration process.  SCS's Report of Claims Administrator is annexed hereto as **Exhibit A** and described below.

7.       The annexed Report of Claims Administrator sets forth the final status of claims submitted to SCS as follows:

a.       PROPERLY DOCUMENTED CLAIMS:    SCS   has   identified   3,181[3] properly documented valid claims.  These valid claims represent Recognized Claims of $1,367,579.36.[4]   These valid claims were calculated in the manner set forth in the Court-approved Plan of Allocation of the Net Settlement Amount ("Plan of Allocation"), which was included in the Notice.  **Exhibit B-1** is a spreadsheet of the 3,178 properly documented and timely submitted claims. **Exhibit B-2** is a spreadsheet of the three claims submitted after the Court-approved claims filing deadline, November 8, 2024, and on or before December 10, 2024.

b.       INADEQUATELY DOCUMENTED CLAIMS:    SCS initially identified four inadequately documented claims.  SCS mailed or emailed inadequacy notices to each

---

[2] SCS has not processed any claims filed after December 10, 2024, or any responses to rejections received after July 7, 2025, due to extreme lateness and because their inclusion would have delayed the finalization of the administration.

[3] This number includes 3,178 timely filed, valid claims and three late but otherwise valid claims.

[4] This amount includes Recognized Claims for timely filed, valid claims of $1,339,015.18 as well as Recognized Claims for late (but otherwise valid) claims of $28,564.18.

3

of these claimants, advising them of the nature of their inadequacy and providing them an opportunity to cure. A sample inadequacy notice is annexed hereto as **Exhibit C**. The four inadequate claimants either did not respond to the inadequacy notice or responded with inadequate documentation and were sent a rejection notice setting forth the reason for their inadequacy. To date, none of the four inadequate claimants has objected to or contested this determination. *See* **Exhibit D** for a list of the inadequate, rejected claims.

c.    INELIGIBLE CLAIMS: In addition to the four claims discussed above in paragraph 7.b., SCS has identified 8,805 claims which we recommend for complete rejection. Included in this category are: (i) claims with no Recognized Claim; (ii) claims with shares of The Lovesac Company ("Lovesac") common stock that were purchased outside of the Class Period; (iii) claims with Lovesac shares that were sold short; (iv) claims with Lovesac common stock that was not purchased but were received, granted by gift, inheritance, or operation of law; and (v) duplicate claims filed. *See* **Exhibit E** for a list of these ineligible claims. We have communicated with these 8,805 claimants and advised them of our determination. A sample ineligibility notice is annexed hereto as **Exhibit F**. To date, none of these ineligible claimants has contested their determination.

8.    In anticipation of completing this administration, SCS respectfully requests that the Court reject as untimely any claims received after December 10, 2024, and any responses to deficiency and/or rejection notices received after July 7, 2025.

9.    Should the Court concur with SCS's administrative determinations herein concerning the claims recommended for acceptance and rejection, SCS recommends that the Net Settlement Amount (less amounts to be withheld for potential tax liabilities and related fees and expenses) be distributed as follows:

4

a.      Per the Plan of Allocation, each Authorized Claimant's Distribution Amount shall be the Authorized Claimant's Recognized Claim divided by the Recognized Claims of all 3,178 Authorized Claimants and three late claims, if the three late claims are deemed valid by the Court, multiplied by the total amount in the Net Settlement Amount. The balance of the Net Settlement Amount (less amounts to be withheld for potential tax liabilities and related fees and expenses) shall be distributed to Authorized Claimants. No distribution will be made on a claim where the potential distribution amount is less than twenty dollars ($20.00) in cash.

b.      To encourage Authorized Claimants to cash their distribution checks promptly, and to avoid or reduce future expenses relating to unpaid distribution checks, all checks should bear the notation, "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE."  Similarly, all other checks issued in connection with subsequent distributions shall bear the same notation.

c.      If any monies remain after at least six months from the date of the initial distribution, and if Lead Counsel, in consultation with the Claims Administrator, determines that another distribution would be cost-effective, the Claims Administrator will conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including fees and expenses for the re-distribution, to Authorized Claimants who cashed their initial distributions and who would receive at least $20.00 from the re-distribution.  Additional re-distributions to Authorized Claimants who cashed their prior checks and who would receive at least $20.00 from additional re-distributions may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determines that additional re-distributions would be cost-effective

after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions.  At such time as the re-distribution of remaining funds is not cost-effective, those funds will be contributed to a nonsectarian, not-for-profit charitable organization(s) serving the public interest, designated by Lead Plaintiff, and approved by the Court.

d.      Authorized Claimants who do not cash their distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement unless good cause is shown. The funds allocated to all such stale-dated checks will be available for re-distribution to other Authorized Claimants in subsequent distributions, if such distributions are determined to be economically feasible.

e.      SCS respectfully requests the Court order that: All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Amount, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members and other claimants, whether or not they are to receive payment from the Net Settlement Amount, are barred from making any further claim against the Net Settlement Amount, Lead Plaintiff, Plaintiff's Counsel, the Claims Administrator and its agents/employees, the Escrow Agent, or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Amount, or any other person released under the Settlement beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order, provided that such released persons

6

acted in accordance with the Stipulation, the Final Judgment, and the Class Distribution Order.

f.    SCS respectfully requests the Court order that: (i) in no less than one (1) year after the distribution of the Net Settlement Amount, SCS may destroy the paper copies of the Claim Forms and all supporting documentation; and (ii) in no less than three (3) years after all funds have been distributed, SCS may destroy the electronic copies of the Claim Forms and all supporting documentation.  This is the customary document retention period SCS uses to prevent additional costs to the Settlement Class for storage expenses and related fees.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 14th day of August 2025, in Media, Pennsylvania.

_____
Sarah Evans